**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE SHELDON ABEND REVOCABLE TRUST, | : **Case No.: 08-CIV-7810 (LTS)(JCF)** |
| Plaintiff, | : ECF Case |
| vs. | : |
| STEVEN SPIELBERG; DREAMWORKS, LLC; PARAMOUNT PICTURES CORPORATION; VIACOM, INC.; NBC UNIVERSAL, INC.;  UNIVERSAL CITY STUDIOS, LLLP, and UNITED INTERNATIONAL PICTURES, B.V., and DOES 1-10, | : **ORAL ARGUMENT REQUESTED** |
| Defendants. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**FILED BY PARAMOUNT PICTURES CORPORATION, DW STUDIOS L.L.C. (formerly**
**DREAMWORKS, L.L.C.), VIACOM, INC., UNITED INTERNATIONAL PICTURES, B.V.,**
**AND STEVEN SPIELBERG**

CLAY M. TOWNSEND (FBN: 363375)
KEITH R. MITNIK (FBN: 436127)
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, 16th Floor
Orlando, Florida 32802-4979
Ph: (407) 420-1414
Fax:    (407) 425-8171
Email:  ctownsend@forthepeople.com
          kmitnik@forthepeople.com
and

STEVEN M. HAYES, ESQ. (NYBN: 2926)
**HANLY, CONROY, BIERSTEIN,**
**SHERIDAN, FISHER, HAYES, LLP**
112 Madison Avenue
New York, NY 10016-7416
Ph: (212) 784-6414
Fax:    (212) 784-6420
Email:  shayes@hanlyconroy.com

*Attorneys for Plaintiff*
*The Sheldon Abend Revocable Trust*

# **TABLE OF CONTENTS**

**Page**

**TABLE OF AUTHORITIES** ....................................................................................... iv.

**I.     PRELIMINARYSTATEMENT** ................................................................ 1

    **A.** Materials .................................................................................................. 2

    **B.** Paramount's Burden of Proof for Summary Judgment ......................... 3

    **C.** Plaintiff's Lessened Burden of Proof .................................................... 4

**II.    STATEMENT OF FACTS** ....................................................................... 5

    **A.** Plaintiff's Claim For Copyright Infringement ...................................... 5

    **B.** Paramount's Prior Works / Lack of Woolrich's Originality Argument Fails ........ 7

    **C.** The *Rear Window Story* ......................................................................... 7

    **D.** The *Rear Window Film* .......................................................................... 8

    **E.** The *Disturbia* Film ................................................................................ 9

**III.   ARGUMENT** ........................................................................................... 9

    **A.** Standards For Copyright Infringement ................................................. 9

        1. Actual Copying .................................................................................. 9

            a). Direct Evidence ...................................................................... 9

            b). Indirect or Circumstantial Evidence ..................................... 10

                i). Access and Probative Similarity ..................................... 10

                ii). Dissimilarity: 1) Calculated To Target A Different Audience, and 2) Should Not Detract From Similarities ............................... 11

    **B.** Actionable Copying ................................................................................ 13

        1. Substantial Similarity ......................................................................... 13

            a). The Quantitative / Qualitative Test ........................................ 13

            b). The Ordinary Observer Test ................................................... 15

            c). The More Discerning Observer Test ....................................... 15

        2. There Is Evidence of Substantial Similarity Between Protecible Elements in the *Rear Window* and *Disturbia* ........................................ 16

            a). Reactions of the Ordinary Observer, Film Critics, and Paramount Principals ....... 16

            b). Expert Reports ....................................................................... 18

            c). Idea v. Expression .................................................................. 19

            d). Choice: The Heart of Protectable Expression ....................... 20

e). Alleged Scenes A Faire ................................................................ 21

f). There is Substantial Similarity In Plot & Sequence, Theme, Characters, Dialogue, Pace, Mood, Setting, and Total Concept And Feel ........................... 22

**C.** Plaintiff's List of Similarities Throughout the Work Is Accurate And Can Support a Finding of Substantial Similarity ..................................................... 26

1. The Rear Window Story Has Protectible Combinations .......................... 27

2. The Rear Window Story Has Sufficient Originality For Copyright Protection ........... 27

**D.** Estoppel And/Or Judicial Notice ................................................... 29

**E.** Acquiescence of Originality ....................................................... 30

**CONCLUSION** ............................................................................ 30

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

A Slice of Pie Productions, LLC v. Wayans Bros. Ent.,
    487 F.Supp.2d 41 (D.Conn. 2007) ............................................. 4, 18

Abend v. MCA,
    863 F.2d 1465 (9th Cir. 1988) ................................................ 3

Aldon Accessories Ltd. v. Spiegel, Inc.,
    738 F.2d 548 (2d Cir. 1984) ................................................. 5

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242, 106 S. Ct. 2505 (1986) .......................................... 4

Arden v. Columbia Industries, Inc.
    908 F.Supp. 1248 (S.D.N.Y. 1995) ............................................ 25

Arica Institute, Inc. v. Palmer
    970 F.2d 1067 (2d Cir. 1992) ................................................ 14

Arnstein v. Porter,
    154 F.2d 464 (2d Cir. 1946) ................................................ 11

Berkic v. Crichton,
    761 F.2d 1289 (9th Cir. 1985) ............................................... 22

Bleistein v. Donaldson Lithographing Co.,
    188 U.S. 239, 23 S. Ct. 298 (1903) ........................................... 28

Boisson v. Banian, Ltd.,
    273 F.3d 262 (2d Cir. 2001) ................................................ 17, 23

Boucher v. U.S. Suzuki Motor Corp.,
    73 F.3d 18 (2d Cir. 1996) .................................................. 11

Business Management International, Inc. v. Labyrinth Business Solutions, LLC,
    2009 WL 790048 (S.D.N.Y.) ................................................ 18

Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,
    150 F.3d 132 (2d Cir. 1998) ................................................ 10, 13, 27

Clonus Associates v. DreamWorks, LLC,
    417 F.Supp.2d 248 (S.D.N.Y. 2005) ........................................... 3, 13

Clonus Associates v. DreamWorks, LLC,
    457 F.Supp. 2d 432 (S.D.N.Y. 2006) .......................................... 23

Colon v. BIC USA, Inc.
    199 F.Supp.2d 53 (S.D.N.Y. 2001) ................................................................ 11

Computer Associates International, Inc. v. Altai, Inc.,*
    982 F.2d 693 (2d Cir. 1992) ........................................................................ 10

Crane v. Poetic Products Limited,
    593 F. Supp.2d 585 (S.D.N.Y. 2009) ............................................................ 4

D'Amico v. City of New York,
    132 F.3d 145 (2d Cir. 1998) .......................................................................... 4

Dak East USA, Inc. v. Epyx, Inc.,
    862 F.2d 204 (9th Cir. 1988) ........................................................................ 12

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579, 113 S. Ct. 2786 (1993) .......................................................... 7

Davis v. United Artists, Inc.,
    547 F. Supp. 722 (S.D.N.Y. 1982) ................................................................ 22

Denker v. Uhry,
    820 F. Supp. 722 (S.D.N.Y. 1992) ................................................................ 11

Donahue v. Windsor Locks Bd. Of Fire Comm'rs,
    834 F.2d 54 (2d Cir. 1987) ............................................................................ 3

eScholar, LLC v. Otis Educational Systems, Inc.,
    2005 WL 2977569 (S.D.N.Y.) ................................................................ 4, 21

Eyal R.D. Corp. v. Jeweled New York, Ltd.,
    576 F.Supp.2d 626 (E.D.N.Y. 2008) ............................................................ 16

Federal Savings and Loan Insurance Corporation v. Szarabajka
330 F.Supp. 1202 (N.D. (Ill.) 1971) .............................................................. 29

Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.,
    499 U.S. 340, 111 S.Ct. 1282 (U.S. 1991) .................................... 16, 17, 20, 27

Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,
    25 F.3d 119 (2d Cir.1994) ............................................................................ 10

Fitch v. Shubert,
    20 F.Supp. 314 (S.D.N.Y. 1937) .................................................................. 29

Flaherty v. Filardi,
    2009 WL 749570 (S.D.N.Y. March 20, 2009) ................................................ 4,

Folio Impressions, Inc. v. Byer California
    937 F.2d 759 (2d Cir. 1991) ................................................................. 23

Gaste v. Kaiserman,
    863 F.2d 1061 (2d Cir. 1988) ............................................................... 9

Gates Rubber Co. v. Bando Chemical Industries, Ltd.
    9 F.3d 823 (10th Cir. 1993) ................................................................. 10

Giangrasso v. CBS, Inc.,
    534 F.Supp. 472 (E.D.N.Y. 1982) ....................................................... 22

Gund v. Applause,
    809 F.Supp. 1013 (S.D.N.Y. 1988) ..................................................... 15

Historical Truth Prods., Inc. v. Sony Pictures Entm't., Inc.,
    1995 WL 693189 (S.D.N.Y.  November 22, 1995) ............................. 26

Hoehling v. Universal City Studios, Inc.,
    618 F.2d 972 (2d Cir. 1980) ................................................................. 4

Hogan v. DC Comics,
    48 F. Supp. 2d 298 (S.D.N.Y. 1999) ................................................... 16

In Design v. Lynch Knitting Mills, Inc.,
    689 F.Supp. 176 (S.D.N.Y. 1988), aff'd, 863 F.2d 45 (2d Cir. 1988) ................. 28

Insull v. New York, World-Telegram Corp.,
    273 F.2d 166 (7th Cir. 1959) ............................................................... 29

Johnson Controls, Inc. v. Phoenix Controls Systems, Inc.,
    886 F.2d 1173 (9th Cir. 1989) ............................................................. 28

Knitwaves, Inc. v. Lollytags Ltd.,
    71 F.3d 996 (2d Cir. 1995) ....................................................... 16, 20, 27

Kregos v. Associated Press,
    937 F.2d 700 (2d Cir. 1991) ................................................................. 4

Laureyssens v. Idea Group, Inc.,
    964 F.2d 131 (2d Cir. 1992) ................................................................. 11

Levine v. McDonald's Corp.,
    735 F. Supp. 92 (S.D.N.Y. 1990) ............................................... 16, 18, 27

Lipton v. The Nature Co.,
    71 F.3d 464 (2d Cir. 1995) ................................................................. 26

Litchfield v. Spielberg,
    736 F.2d 1352 (9th Cir. 1984) ................................................................. 27

Lone Wolf Mcquade Associates, V. CBS Inc.,
    961 F.Supp. 587 (S.D.N.Y. 1997) ........................................................ 20, 25

Mallery v. NBC Universal, Inc.,
    2007 W.L. 4258196 (S.D.N.Y.) ............................................................... 27

Matthew Bender & Co., Inc. v. West Publishing Co.,
    158 F.3d 674 (2d Cir.1998) ....................................................................... 20

MCA, Inc. v. Wilson,
    425 F.Supp. 443 (S.D.N.Y. 1976) ............................................................ 17

Metcalf v. Bochco,
    294 F.3d 1069 (9th Cir. 2002) .................................................................. 19

Midwood v. Paramount Picture Corp.,
    1981 WL 1373 (S.D.N.Y. 1981) ............................................................... 22

Morris v. Wilson,
    189 F. Supp. 565 (S.D.N.Y. 1960) ........................................................... 26

Mowry v. Viacom, Inc.,
    2005 WL 179377 (S.D.N.Y. July 29, 2005) ............................................ 20

MyWebGrocer, LLC v. Hometown Info., Inc.,
    375 F.3d 190 (2d Cir. 2004) ................................................................... 4, 7

Nichols v. Universal Pictures Corp.,
    45 F. 2d 119 (2d Cir. 1930) .................................................................. 14, 22

Nihon Keizer Samsun, Inc. v. Combine Bus. Data, Inc.,
    166 F.3d 65 (2d Cir. 1999) ................................................................... 16, 27

Novelty Textile Mills, Inc. v. Joan Fabrics, Corp.,
    558 F.2d 1090 (2d Cir. 1997) ................................................................... 15

O.P. Solutions v. Intellectual Property,
    1999 WL 47191 (S.D.N.Y.) ...................................................................... 11

Paramount Pictures Corporation v. Carol Publishing Group,
    11 F.Supp.2d 329 (S.D.N.Y. 1998) .......................................................... 29

Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,
    274 F.2d 487 (2d Cir. 1960) ..................................................................... 12

Price v. Fox Entertainment Group, Inc.,
    2007 WL 241389 (S.D.N.Y.) .................................................................. 3, 23

Repp v. Webber,
    132 F.3d at 882 (2d Cir. 1997) ................................................................ 11

Ringgold v. Black Entm't Television, Inc.,
    126 F.3d 70 (2d Cir. 1997) ..................................................................... 13

Rogers v. Koon's,
    960 F.2d 301, 308 (2d Cir. 1992) ........................................................... 13, 26

Shaw v. Lindheim,
    919 F.2d 1353 (9th Cir.1990) ................................................................. 24

Sheldon v. Metro-Goldwyn Pictures Corp.,
    81 F.2d 49 (2d Cir. 1936) ...................................................................... 28

Sid & Mary Krofft, Television v. McDonalds, Corp.,
    562 F.2d 1157 (9th Cir. 1977) ............................................................... 12

Softie, Inc. v. Dragon Med. and Scent. Commons, Inc.,
    118 F.3d 955 (1997) .............................................................................. 16

Steinberg v. Columbia Pictures Industries, Inc.,
    663 F.Supp. 706 (S.D.N.Y. 1987) .......................................................... 5

Stewart v.  Abend,*
    495 U.S. 207, 110 S. Ct. 1750 (1990) ..................................................... 2, 6, 19, 23, 29

Tiesham, Inc v. C.C.A. International (NJ), Inc.,
    895 F.Supp. 651 (S.D.N.Y. 1995) .......................................................... 5, 18

Tin Pan Apple, Inc. v. Miller Brewing Co.,
    30 U.S.P.Q.2d (BNA) 1791, (S.D.N.Y. 1994) ........................................ 17

Trek Leasing Inc., v. United States,
    66 F.Cl. 8 (2005) .................................................................................. 10

Tufenkian Import/Export Ventures, Inc. Einstein Moomjy, Inc.,
    338 F.3d 127 (2d Cir. 2003) ................................................................... 14, 20

Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.,
    996 F.2d 1366 (2d Cir. 1993) ................................................................. 14

Uneeda Doll Co. Inc. v. Regent Baby Products Corp.,
    355 F.Supp. 438, 450 (E.D.N.Y. 1972) .................................................. 11

Walker v. Time Life Films, Inc.,
    784 F.2d 44 (2d Cir. 1986) .................................................................... 3, 11, 21

Warner Bros. Inc., v. American Broadcasting Co., Inc.,
    654 F.2d 204 (2d Cir. 1981) ................................................................... 13

Williams v. Crichton,
    84 F.3d 581 (2d Cir. 1996) .................................................................... 3, 13, 26

Yurman Design, Inc. v. PAJ, Inc.,
    93 F.Supp.2d 449 (S.D.N.Y. 2000) ....................................................... 16, 28

Yurman Design, Inc. v. Golden Treasure Imports, Inc.,
    275 F.Supp.2d 506 (S.D.N.Y. 2003) ..................................................... 28

## RULES

Fed. R. Civ. P. 702 ..................................................................................... 7

Federal Rules of Evidence 803(1) and 803(3) ........................................... 17

Fed. R. Evid. 201(b) ................................................................................... 29

## TREATISES

1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 2.01[A][1] 2008 ........................ 14, 28

1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.01[B] ............................ 9, 10

1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.02 [B][b] ...................... 14, 23

1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.03 [B][b] ...................... 5

## MISCELLANEOUS

Chafee, Reflections on the Law of Copyright, 45 Columbia Law Rev. 503, 513 (1945) ......... 14

Moore's Federal Practice §132.02[2][c] at 132-25 (3rd ed. 2007) ................................. 29

# I. PRELIMINARY STATEMENT

*"…the movie [Rear Window] was a voyeur's paradise…this guy…is stuck in a room and he gets himself in a lot of trouble by snooping out of sheer boredom… when Grace Kelly goes over there to investigate…nothing beats that for suspense."  Steven Spielberg's commentary on the American Film Institute's 2001 "100 Years 100 Thrills" (Townsend Decl. Ex. Q(b) Spielberg Excerpt)*

*"The creation of this movie [Disturbia] came about from a conversation between [Director D.J.] Caruso and [Steven] Spielberg… Spielberg wanted to revamp 'Rear Window.'"*
*Disturbia Actor, Shia LaBoeuf Interview April 13, 2007 (Statement of Facts "SOF" ¶72)*

*"They're blatantly ripping off Rear Window! ...Not inspired by…*
*ripped off, beat by beat, moment by moment."*
*Jacob Hal1, Independentcritics.com (SOF ¶69)*

The resolution of this case has the most profound implications for the scope of protection of the rights of authors.  This case arises out of Paramount's[1] production of the motion picture entitled *Disturbia*, which is derived from one of the most iconic film adaptations of a literary work in history – *"Rear Window,"* which is based upon Plaintiff's copyrighted work, an original short story by Cornell Woolrich ("Woolrich") entitled *"Rear Window"*.  *Disturbia* is admittedly "inspired by," and a "revamp" of, the *Rear Window Film*, which embodies and is itself derivative of *Rear Window*.  The *Rear Window Film* was originally released and distributed by Paramount (it is currently distributed by Universal pursuant to a license granted by Plaintiff).  Plaintiff, in its Complaint, asserted a beneficial interest in the *Rear Window Film* arising from its exclusive controls and rights in the *Rear Window Film* pursuant to a license.[2]

Paramount has made numerous legal and creative choices from 1950 to 2007 regarding exploitation of *Rear Window*.  In 1954, Paramount released and distributed the *Rear Window Film* after Alfred Hitchcock ("Hitchcock") and James Stewart ("Stewart") purchased the movie rights to *Rear Window* and the copyright

---

[1] "Paramount" includes Defendants Steven Spielberg, DreamWorks, LLC, Paramount Pictures Corporation, and United International Pictures, B.V. (a joint venture between Paramount and Universal).

[2] The parties stipulated, for the purpose of Paramount's Motion, to voluntarily dismiss without prejudice the beneficial ownership in the *Rear Window Film* pending resolution of the present Motion ("MOL").  Plaintiff respectfully submits that analysis of the similarities between *Disturbia* and the *Rear Window* film are unavoidable and essential.

was held in trust for Paramount as a beneficial owner.[3]  In 2007, Paramount principals publicly admitted to "updating" or "revamping" "*Rear Window*" for the *Disturbia* film, however Paramount did not license, or pay for, the rights to *Rear Window* as they did when they made the *Rear Window Film*.  SOF ¶¶72, 80.

Ironically, Paramount, now, a half a century later, asserts Woolrich's story is unoriginal.  Paramount asserts that *Rear Window* is a "'situation' <u>allegedly</u> conceived by Cornell Woolrich," and that elements in *Rear Window* have no copyright protectibility because they are "not original" as its plot ideas allegedly appear in "Prior Works" (MOL p. 1).  Paramount should be estopped from making this assertion, as it is negated by the holdings of United States Supreme Court in *Stewart v. Abend*, 495 U.S. 207, 110 S. Ct. 1750 (1990), which expressly acknowledged *Rear Window's* "unique setting, characters, plot, and sequence of events," and that "the Court of Appeals determined that the story was a substantial portion of the motion picture", was "incorporated" therein, and that *Rear Window* was infringed upon by the *Rear Window Film*. *Id.,* 495 U.S. 207-210; Complaint "FAC" ¶32.  It is further negated by Paramount's acquiescence to the story's originality, evidenced by documents from the 1940's and 1950's, wherein Woolrich warrants the story is "wholly original with him, has not been copied in whole or in part from any other work," and that "Hitchcock's" *Rear Window Film* is "Based on a Short Story by Cornell Woolrich." Stewart Decl., Exs. A ¶1(a), B ¶1(a), C, D.

## A.  Materials

Plaintiff has submitted, and incorporates herein, the works at issue, and other evidence probative of actual copying, probative and substantial similarity, and originality, including the expert declarations of UCLA Professor Emeritus Dr. Lewis Hunter as to substantial similarity; New York University Film Professor Kenneth Dancyger as to dissimilarity of the Prior Works and substantial similarity; Woolrich biographer and St. Louis University Professor Francis M. Nevins as to Woolrich's originality; and Dr. Thomas C. Renzi of Buffalo State

---

[3]  The 1950 Paramount Distribution Agreement for the *Rear Window Film* states that "The producer agrees to produce… a photoplay based upon  the Short Story by Cornell Woolrich entitled 'Rear Window'…,"Producer… is sole owner of all the right, title, and interest (in)… warranties… and documents… described in… assignments," Stewart Decl. Ex. B ¶1(a) and that "copyright shall be held in trust for the joint interests of the Producer (Hitchcock, et al.) and the Distributor (Paramount) under this agreement."  *Id.* at p. 25, ¶ 11(d).

College, author of *"Woolrich: From Pulp Noir to Film Noir,"* as to the similar aesthetic appeal of the works at issue and alleged influence of H.G. Wells.[4] Plaintiff also submits a "Similarities Analysis" and DVD's, wherein the substantial similarities between *Rear Window* and *Disturbia* may be seen.  Townsend Decl., Exs. A, B, BB, CC.  Because *Rear Window* finds expression in both short story and film, some of these exhibits include screen captures from the *Rear Window Film* correlative to scenes in *Rear Window* and *Disturbia*.  Plaintiff asserts *Disturbia* is substantially similar to both *Rear Window* and the *Rear Window Film* which incorporates, embodies and is derivative of the story.  The Ninth Circuit Court, referring to *Rear Window* as embodied in the *Rear Window Film,* stated that "defendants could not possibly separate out the "new matter" from the underlying work." *Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988).  Plaintiff also submits DVD's highlighting similarities by comparing *Rear Window* and *Disturbia*. Townsend Decl., Exs. BB, CC.

**B.  Paramount's Burden of Proof for Summary Judgment**

To avoid jury trial, Paramount has the burden to demonstrate that none of Plaintiff's alleged similarities are copyrightable, or that no reasonable observer could possibly find the works substantially similar.  "A district court may determine noninfringement as a matter of law on a motion for summary judgment either when the similarity concerns only noncopyrightable elements of plaintiff's work, or when no reasonable trier of fact could find the works substantially similar."(emphasis added) *Mallery v. NBC Universal, Inc.*, 2007 W.L. 4258196 (S.D.N.Y.) at *2, citing *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986); see also *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996).  A "'fundamental maxim' is that the 'court cannot try issues of fact;' it can only determine whether there are issues to be tried." *Levine v. McDonald's Corp.*, 735 F. Supp. 92, 95 (S.D.N.Y. 1990), *quoting Donahue v. Windsor Locks Bd. Of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987).  Paramount bears the burden of identifying evidence that demonstrates the absence of a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256,106 S. Ct. 2505 (1986).  In

---

[4] Second Circuit district courts have previously considered the reports of Hunter and Dancyger in *Clonus v. DreamWorks*, (Case No. 05-Civ-7043) 417 F.Supp.2d 248, 251 (S.D.N.Y. 2005); *Price v. Fox Entertainment Group, Inc.* (Case No. 05-Civ-5259)

determining if summary judgment is appropriate, the court resolves all ambiguities and draws all reasonable inferences against the moving party. *D'Amico v. City of New York*, 132 F.3d 145, 148 (2d Cir. 1998), *cert.* *denied*, 141 L. Ed.2d 151, 118 S. Ct. 2075 (1998).

The "sole ground" stated for Paramount's Motion is lack of substantial similarity between *Rear Window* and *Disturbia*. PSOF ¶7 (Dkt. No. 51).  "In general the question of substantial similarity is a close question of fact; therefore, 'summary judgment has traditionally been frowned upon in copyright litigation.'" *Crane v. Poetic Products Limited*, 593 F. Supp.2d 585 (S.D.N.Y. 2009), *quoting Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir. 1980).  Paramount also frames a central defense around *Rear Window's* purported lack of originality, which itself makes summary judgment inappropriate as in the Second Circuit the question of whether compilations are unprotectible due to lack of originality present triable issues of fact for the fact finder.  *eScholar, LLC v. Otis Educational Systems, Inc.*, 2005 WL 2977569 (S.D.N.Y.) at *17, citing *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991); *MyWebGrocer, LLC v. Hometown Info., Inc.*, 375 F.3d 190, 193 (2d Cir. 2004).  Paramount's only evidence is counsel's declaration and statement of facts, which cannot meet their burden on this issue.  Paramount concedes access to *Rear Window*, and valid copyright (PSOF ¶6), but neither actual copying, nor actionable copying.  All facts must be viewed in a light most favorable to the party opposing the Motion and all reasonable inferences will be drawn in the non-movant's favor.  *Flaherty v. Filardi*, 2009 WL 749570 (S.D.N.Y. March 20, 2009) at *3.  Therefore, summary judgment should not be granted given Paramount's conceding access and copyright validity, especially considering the direct evidence of actual copying.

## C.  Plaintiff's Lessened Burden of Proof

Paramount's concession of access and direct evidence of actual copying justify a lessened standard of proof of probative and substantial similarity. Townsend Decl., Exs. R1-R7 (interviews of Paramount's director,

---

2007 WL 241389 (S.D.N.Y.); *A Slice of Pie Productions, LLC v. Wayans Bros. Ent.,* (3:04-Civ-1034) 487 F.Supp.2d 41, 48 (D.Conn. 2007) fn. 5.

actors, and screenwriter); SOF ¶¶72, 80   Paramount publicly admitted to intentionally copying the *Rear Window Film,* which is undisputedly incorporates and is based on *Rear Window.*   The *Rear Window Film* DVD package states (and is contractually required to state) "Based on the Short Story by Cornell Woolrich," and gives equal billing to Woolrich in the same bold type as "Alfred Hitchcock" and "Grace Kelly." Townsend Decl., Ex. D; SOF ¶33.  This district has held that where "access has been conceded, the level of probative similarity necessary to show physical copying is diminished." *Tiesham, Inc v. C.C.A. International (NJ), Inc.* 895 F.Supp. 651 (S.D.N.Y. 1995)  citing *Aldon Accessories Ltd. V. Spiegel, Inc.*, 738 F.2d 548, 553-54 (2d Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984); *Steinberg v. Columbia Pictures Industries, Inc.*, 663 F.Supp. 706, 714 (S.D.N.Y. 1987). *See* also Nimmer § 13.03 [B][b], stating "[p]roof of access can logically aid in showing copying as a factual matter – added to the probative similarity that exists between two works, it can bolster the proof that one was in fact derived from the other."

## II.  <u>STATEMENT OF FACTS</u>

**A.**    <u>Plaintiff's Claim For Copyright Infringement</u>

Plaintiff has submitted, and incorporates herein, Plaintiff's Statement of Material Facts ("SOF") which includes a detailed chain of title of *Rear Window,* which evidences its copyright validity and a presumption of its originality (SOF ¶¶3 – 19), and Plaintiff's Opposition to Paramount's Statement of Facts ("POPSOF").

Cornell Woolrich wrote the original short story entitled *Rear Window,* also known as "Murder from a Fixed Viewpoint," and "It Had To Be Murder." SOF ¶3; Townsend Decl. Ex. C.  Woolrich is still widely published.  The *Rear Window* exhibit submitted by Paramount states in the introduction, "Perhaps that's why the stories of Cornell Woolrich, like the films of Hitchcock, have aged well.  They touch a contemporary nerve. They are also written in a style that is easy and colloquial with characters that are always believable and plots that hurtle forward like a runaway lorry."  Brenner Decl. Ex. A, p. xi.

On January 17, 1942, *Rear Window* copyright registration was issued to Popular Publications on behalf of Woolrich. Townsend Decl., Ex. X; Stewart Decl., Ex. R.   *Rear Window* was first published in <u>Dime Detective Magazine</u> in 1942; SOF ¶ 5; *Stewart v. Abend*, 495 U.S. at 211.

The *Rear Window Film* screenwriter John Michael Hayes stated that 65% of the *Rear Window* screenplay (no less than 40%) and 50% of the value of the *Rear Window Film* is attributable to *Rear Window,* and that "As much of every element of the story that I could was put into my treatment and screenplay," and "I used everything I could from the story.   After all, that's what we had bought and paid for, and I picked the bones of it as clean as I could."   FAC 33 (a)-(d), Stewart Decl. Ex. Q - Hayes Deposition pp. 28, 29, 34.

The *Rear Window Film*, since 1990, has been distributed pursuant to a License Agreement from Plaintiff providing that each public display of the *Rear Window Film* and every DVD manufactured of the *Rear Window Film* displays a notice that it is "Based on the Short Story by Cornell Woolrich." FAC ¶ 42(h); Stewart Decl., Ex. J, License Agreement, Ex. D, p. 5.   Plaintiff also licensed the right to use *Rear Window Film* clips to Universal Studios Theme Park at the Hitchcock exhibit.   Stewart Decl. Ex. W.

Paramount, when making *Disturbia* (along with the DreamWorks Defendants and Spielberg), conducted 800 test screenings of the *Rear Window Film* for people under the age of 25.   SOF ¶ 72.   The filming of *Disturbia* was conducted by Paramount utilizing Paramount's Stage 19, the same stage utilized in 1954 for the filming of the *Rear Window Film*.   Id.   Paramount commercially advertised *Disturbia* utilizing ads and posters similar to the advertising for the *Rear Window Film* which depict the protagonist spying on neighbors through binoculars, and also employed Protagonist points of view similar to *Rear Window* and to the *Rear Window Film* throughout *Disturbia*. Townsend Decl., Ex. S.

The immediate and spontaneous reaction of film critics and lay observers was that *Disturbia* "ripped-off" *Rear Window* and the *Rear Window Film*, that it was a "remake for the Youtube generation," was "remade for 12-25 year olds," and was "Rear Window transported to a suburban house." SOF ¶¶ 47-85.

**B.**   **Paramount's Prior Works / Lack of Originality Argument Fails**

Paramount has submitted so-called "Prior Works" and asserts that a few random similar elements undermine the originality of *Rear Window*, and provides no evidence that Woolrich had access to these works, or that *Rear Window* is substantially similar to them as to pattern and sequence, much less plot. POPSOF ¶¶ 39-54. Plaintiff proffers expert reports as to technical literary and historical issues such as access, origins of Woolrich's story, and dissimilarity to the Prior Works. These reports are helpful, relevant, have a reliable foundation, and are material to the outcome of the issue of protectibility. *See* Rule 702 Fed. R. Evid. and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). They conclude that *Rear Window* is unique and original as to plot and sequence, and there is no substantial similarity to, or evidence of Woolrich's access to, the Prior Works. Nevins Decl.; Dancyger Decl., pp. 7-13; Renzi Decl., pp. 4-5. Paramount has the burden to demonstrate that Woolrich's work was not independently created, but was copied from a Prior Work by providing evidence that Woolrich had access to the Prior Works, and that *Rear Window* is substantially similar.[5] The proffered Prior Works provide "meager evidence" of lack of originality. They are 1) substantially dissimilar in expression from *Rear Window*; 2) similar as to only a few scenes at the most abstract level and, more importantly, 3) irrelevant to the issue of the low level of originality required by the Copyright Act. POPSOF ¶¶ 39-54; Dancyger Decl., ¶¶ 1, 2, 3; Nevins Decl.; Renzi[6] Decl., pp. 4-5. Even if Woolrich employed some generic premises (as most authors do), "[t]he selection or arrangement of otherwise unprotectible material may be protected if such selection or arrangement is 'sufficiently creative to be original.'" *MyWebGrocer, LLC v. Hometown Info., Inc.,* at 194. Paramount has offered not one Prior Work in film or literature which is similar to the sequential pattern of *Rear Window*.

## C.   Plaintiff's *Rear Window Story*

*Rear Window* is described and analyzed in several exhibits, including Paramount's Statement of Facts

---

[5] Lack of originality is proven in much the same manner as infringement is proven (i.e., access and substantial similarity). *In Design v. Lynch Knitting Mills, Inc.,* 689 F.Supp. 176, 179 (S.D.N.Y. 1988), *aff'd*, 863 F.2d 45 (2d Cir. 1988)(holding that a defendant's expert opinion provided "meager evidence" that the copyrighted work was a mere variation of a standard pattern sufficient to show lack of originality and invalidity).

(PSOF, ¶¶8-20).  Plaintiff disputes numerous alleged "facts" as to omissions, characterization of sequence and elements.  POPSOF ¶¶8-20.  *Rear Window* is described in Plaintiff's Similarity Analysis and DVD's.  Townsend Decl., A, B, BB, CC.  Plaintiff also submits a chart of the key sequences and phrases extracted directly from Paramount's exhibit which further demonstrates the substantial similarity in plot, sequence, theme, setting and total concept and feel between *Rear Window*, the *Rear Window Film*, and *Disturbia*. SOF ¶49.  Plaintiff's experts also describe *Rear Window*, its plot/sequence, theme and characterization in detail, as well as its origins.  Hunter Decl.; Dancyger Decl.; Renzi Decl; Nevins Decl.

**D.      The *Rear Window Film***

    *Rear Window* finds expression in short story form and in the *Rear Window Film*.  Hunter Decl., p. 4.  The *Rear Window Film* is, as a matter of law, derivative of, and substantially similar to, *Rear Window,* which it "incorporates."  As such, it provides additional direct evidence of actual copying by the makers of *Disturbia*.  *Stewart v. Abend* 495 U.S. at 207.  Woolrich's narrative is easily recognizable in the shots captured on Plaintiff's DVD's from the *Rear Window Film* and *Disturbia*, and Paramount has "admitted" in the media to copying the *Rear Window Film*.  Townsend Decl., Exs. A, B, BB, CC, R1-R7; SOF ¶¶72-73.  Additionally, *Rear Window* is a written work in a different media than *Disturbia*, and it is helpful to a qualitative analysis to consider its expression in a film medium.  See *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 139 (2d Cir. 1998); (finding a trivia book and a TV show (i.e. the original and secondary works) "of different genres, and to lesser extent because they are in different media," have no "equivalent nature" and cannot be compared "conventionally because they are in different media.")

    Given Paramount's admission of copying the *Rear Window Film*, if an ordinary observer concludes that *Disturbia* is substantially similar to the *Rear Window Film*, a reasonable juror could find that *Disturbia* is substantially similar to *Rear Window*.  See *Lipton v. The Nature Co.*, 71 F.3d 464 (2d Cir. 1995)(the court examined a derivative work (a scarf) containing substantially similar elements to an underlying work because

---

[6] Dr. Renzi has authored books on film adaptation of both Cornell Woolrich and H.G. Wells.

defendants admitted to copying the infringing scarf but not the underlying work: "By copying the scarf – an unauthorized copy that infringed upon Lipton's protected compilation [defendants] also infringed.") *Id.* at 470-471.

**E.**      **The *Disturbia* Film**

*Disturbia* is probatively and substantially similar to *Rear Window*.  Townsend Decl., A, B, BB, CC; Hunter Decl., p. 4; Dancyger Decl., p. 4, 28; Renzi Decl., p. 1.  Paramount's analysis (PSOF, Dkt. No. 51) and Motion, in an effort to demonstrate dissimilarity and unprotectibility, omit themes, sequence, and the pattern of the works.  For example, Paramount asserts "*Disturbia* begins with a sequence set a year before the main events of the film." MOL, p. 6.  Paramount fails to mention that the first words in the first scene convey the substantially similar themes – voyeurism and stalking (Kale: "Do you think he sees us?" Father: "No.  He can't see us.  But trust me, he can feel us watching." Townsend Decl., Ex. A, ¶29, Ex. CC #1).  This theme is expressed in *Rear Window*.  Townsend Decl., Exs. A #29, B #29, BB #29, CC #1.

**III.  ARGUMENT**

**A.**      **Standards For Copyright Infringement**

A plaintiff may prove copying (1) with direct evidence, <u>OR</u> (2) indirectly by showing "probative similarity," a reasonable possibility of access, and unlawful appropriation pursuant to an "ordinary observer" test.  *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d at 137; *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).  See also *Paramount Pictures Corporation v. Carol Publishing Group*, 11 F.Supp.2d 329, 332 (S.D.N.Y. 1998).

**1.**  **Actual Copying:**

**a)**      **Direct Evidence**

To demonstrate copying "first, there is the factual question whether the defendant in creating its work, used the plaintiff's material as a mode, template, or even inspiration." (citations omitted).  If the answer is "yes," then one can conclude as a factual proposition that copying may  have occurred."  Nimmer § 13.01[B], citing

*Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d at 264; *Trek Leasing Inc., v. United States*, 66 F.Cl. 8, 11 (2005). "To the extent Romeo and Juliet inspired 'West Side Story,' there was copying as a factual matter." *Id.,* Nimmer FN 25.6.  Here, there is direct evidence of actual copying sufficient to defeat summary judgment – "inspiration," "homage," etc. SOF ¶¶11, 18, 27, 29, 31, 32, 35, 36, 40; Townsend Decl., Exs. J9-J10, R1-R7.  In addition to Paramount's long history with *Rear Window*, Spielberg was solicited by Sheldon Abend about remaking the *Rear Window Film*.  Spielberg provided commentary at AFI's nationally televised program which recognized the *Rear Window Film* as one of the 100 greatest films ever made (Stewart Decl., Exs. F, Q, R), he also conducted "800 screenings" of the *Rear Window Film* during development of the *Disturbia* film and found "our own version of an old story," and he visited the set of *Disturbia* according to its star, Shia LaBouef. SOF ¶72.  Director D.J. Caruso stated that "Rear Window" was "a big inspiration," and "a jumping off point" (*Id.*, Ex. R7) and that Spielberg called *Disturbia* a "contemporary sort of voyeuristic approach" and "an homage." *Id.*, R6.

      **b)  Indirect or Circumstantial Evidence of Copying**

          **i)  <u>Access and Probative Similarity</u>**

Paramount has only conceded access, but not probative similarity or actual copying.[7] The Second Circuit cautions that "'probative,' rather than 'substantial' similarity is the correct term in referring to the plaintiff's initial burden of proving actual copying by indirect evidence." *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d at 137 (quotation marks and citations omitted).  When evaluating probative similarity, a court should compare the works in their entirety, including both protectable and unprotectible elements. *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,* 25 F.3d 119, 123 (2d Cir.1994); *Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993) fn. 7 (explaining that failure to consider nonprotectable elements when evaluating question of actual copying deprives court of "probative, and

---

[7] Paramount addresses substantial similarity broadly as the "sole ground" to defeat Plaintiff's claims, presumably for purposes of both probative and substantial similarity although this is not made clear in their MOL.

potentially essential, information on the factual issue of copying"). *O.P. Solutions v. Intellectual Property,* 1999 WL 47191 (S.D.N.Y.) at *4-6.

Plaintiff's expert reports are appropriately used "to assist…in ascertaining whether Paramount had copied any part of the Plaintiff's work." *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992); *Walker v. Time Life Films*, 784 F.2d at 51. *citing Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946). The expert reports are directed to, and admissible regarding, probative similarity. *Id.* "The Second Circuit espouses a particularly broad standard for the admissibility of expert testimony." *Colon v. BIC USA, Inc.*, 199 F.Supp.2d 53 (S.D.N.Y. 2001), *citing Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (testimony is to be admitted unless purely conjectural or based on totally unfounded assumptions); *see also Denker v. Uhry*, 820 F. Supp. 722, 729 (S.D.N.Y. 1992); *Repp v. Webber,* 132 F.3d 882, 889 (2d Cir. 1997) ("actual copying must first be shown, either by direct evidence or by indirect evidence which 'includes access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony'") (int'l cites omitted); *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir. 1992).

### ii) <u>Dissimilarity: 1) Calculated To Target A Different Audience; and 2) Should Not Detract From Similarities</u>

Dissimilarities may provide evidence of copying.  In "updating" *Disturbia*, Paramount employed immaterial variations or transparent re-phrasing to produce essentially the same story as *Rear Window* for today's youth[8].  Public statements about Paramount's "update" and "revamp" provide evidence of copying rather than independent creation.  Actor Shia LaBoeuf even describes "test-screening Rear Window for everyone 25 and under." SOF ¶72.  Where the aesthetic impression is not the same, and the "differences were calculated ones introduced to conceal infringement," or intentional and intended to improve sales appeal, then the  copier "is an infringer although he has not copied the whole, has not copied it slightly and has not sought by its differences to disguise or hide the fact of copying.  The fact of copying is plain" *Uneeda Doll Co. Inc. v.*

*Regent Baby Products Corp.,* 355 F.Supp. 438, 450 (E.D.N.Y. 1972)(where a change in doll's gender to improve market appeal was not accidental and the dolls were still substantially similar), citing *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487 (2d Cir. 1960). *Disturbia* was described in the media as "*Rear Window* for the YouTube generation" and a "remake… with teenagers," as well as "*Rear Window*, only...y'know, for kids!", and "a *Rear Window* rip-off for the MySpace generation." SOF ¶¶ 57, 67, 76. Differences between the works that arise from efforts to target different audiences (i.e., making the Protagonist young and a techno geek – "a high tech remake" Id. ¶72) are dissimarilities not to be considered in the ordinary observer test. The group to which the copyrighted work is directed must be considered in determining the proper "audience." *Sid & Mary Krofft, Television v. McDonalds, Corp.,* 562 F.2d 1157 (9th Cir. 1977); see also *Dak East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204 (9th Cir. 1988).

*Disturbia* resulted from changes to the original 2005 screenplay which illustrate artistic choices probative of originality and substantial similarity. Director D.J. Caruso stated that "[t]he initial screenplay was not all from Kale's point of view. It jumped from newsrooms to this room to this room. The one thing I said was, I want to embrace that challenge of doing this all from his point of view… as a director, I feel like a voyeur… [and even with the cameras and cell phones] we're still actually coming from Kale's point of view because he's the anchor of that scene." Townsend Decl., Exs. A #6-7; B #6-7; BB #6-7; CC #3, 6; R4. This choice copied the "fixed point of view" of *Rear Window*. Id., Exs. A #2, 6; B #2, 6; BB #2, 6. In the *Disturbia* screenplay (2005), unlike the finished film, the Antagonist is expressed at the climax as "twins." Townsend Decl., Ex. AA, p. 119. And, unlike in the finished film, the Protagonist in the *Disturbia* screenplay draft (2005) is helpful to his mother, offering to cook dinner and even "breaks down sobbing like a little boy." *Id.*, Ex. Z, pp. 82, 94. The Assistant (Ronnie) in the *Disturbia* screenplay (2005) is hanged from a noose by the Antagonist - a far different choice from the finished film. *Id.*, p. 88. Ultimately, Paramount made creative choices in *Disturbia*

---

[8] Paramount points out the "youthful feel" of *Disturbia's* mood and dialogue. PSOF ¶38. The Director wanted to "skew [it] toward a young audience." SOF ¶72.

substantially similar in pattern and sequence to *Rear Window* choices that are not scenes a faire.  Townsend Decl., Exs. A, B, BB, CC; Hunter Decl., p.15.

## B.   ACTIONABLE COPYING

### 1.  Substantial Similarity

#### a)  The Quantitative / Qualitative Test

An appropriate analysis of similarity in this case is the "qualitative/quantitative test."  Woolrich wrote a short story for Dime Detective Magazine, not a screenplay intended from the start to be made into a film by a major motion picture studio.  Under this approach, after establishing that copying has occurred, a court must examine whether the "copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred.  *Ringgold v. Black Entm't Television, Inc.,* 126 F.3d 70, 75 (2d Cir. 1997).[9]  For the quantitative/qualitative analysis the classic categories of analysis (i.e. setting and dialogue) may be irrelevant when comparing works in different genres and/or media (i.e., a 1942 short story versus a film made 65 years later for a different audience).  Paramount asserts the works are in different genres and that *Disturbia* is a "teen angst melodrama… along with genres of a thriller, teen romance, and teen comedy," in contrast to *Rear Window's* "unplugged and catastrophic world."  MOL, p. 22.  In *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d at 139-140, the works were incomparable in conventional terms such as plot, sequence, themes, pace, and setting (i.e., the notions of plot and pace do not appear in certain works).  Indeed, many "derivative" works of different genres, in which copyright owners have exclusive rights, *see* 17 U.S.C. § 106, may have a different total concept and feel from the original work.  The *Castle Rock* court found that "plaintiff has a plausible claim that there is a common aesthetic appeal between the two works based on

---

[9] "In determining whether the similarities between two works constitute 'more than mere generalized ideas or themes,' (*Warner Bros. v. ABC*, 654 F.2d 204, 208 (2d Cir. 1981) courts should be aware that dissimilarity between some aspects of the works will not automatically relieve the infringer of liability, for 'no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated.' It is only when the similarities between the protected elements of plaintiff's work and the allegedly infringing work are of 'small import quantitatively or qualitatively' that the defendant will be found innocent of infringement. *Clonus Associates,* 417 F.Supp.2d at 252-53 citing *Williams,* 84 F.3d at 588 (quoting *Rogers v. Koon's,* 960 F.2d 301, 308 (2d Cir. 1992)).

The SAT 's plain copying of Seinfeld and Glob's statement on the back cover that the book was designed to complement the aesthetic appeal of the television series." *Id.* at 140.  Here, there is evidence that the "common aesthetic appeal" of *Disturbia* and *Rear Window* is "based on plain copying" (i.e. the public statements of Paramount principals).  The "pattern," "heart" or "fundamental essence" of the works is the primary focus in this context, not a particular setting, exact dialogue, or Paramount's "skewing" to a teenage genre.  In the Second Circuit a defendant is guilty of copyright infringement if it has "appropriated the fundamental essence or structure of plaintiffs' work." *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1073 (2d Cir. 1992) *quoting* 4-13 *Nimmer on Copyright* § 13.03[A][1] (defining "comprehensive non-literal similarity"); *see also Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.,* 996 F.2d 1366, 1372 (2d Cir. 1993) (adopting the "comprehensive non-literal" taxonomy and describing infringement as "global similarities in structure and sequence").

Additionally, the Second Circuit recognizes "inexact copyright infringement." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.* 338 F.3d 127 (2d Cir. 2003), discussed by Nimmer as comprehensive non-literal similarity.  Columbia Professor of Law Zechariah Chafee, articulating the "patterns test," stated: "No doubt the line does lie somewhere between author's idea and the precise form in which he wrote it down.  I would like to say that the protection covers the "pattern" of the work… the sequence of events, and the development of the interplay of the characters."  *Chafee, Reflections on the Law of Copyright,* 45 Columbia Law Rev. 503, 513 (1945) cited by Nimmer at § 13.02 [B][b] in his well known analysis of Romeo and Juliet:

> "Assuming Shakespeare's works were not in the public domain, it is clear that no one could copy his drama concerning the star-crossed lovers of Verona merely by paraphrasing the dialogue with new (and no doubt less inspired) phrases.  It is likewise clear that anyone could borrow the "idea" of a romance between members of two hostile families.  Countless stories and plays have been based upon this abstract idea.  Among the most famous of these in the twentieth century was "Abie's Irish Rose" [discussed by Paramount's authority *Nichols v. Universal Pictures Corp*., 45 F. 2d 119 (2d Cir. 1930)].  No more of "Romeo and Juliet" is contained in "Abie's Irish Rose" than the above idea and hence, under the pattern test, there is no substantial similarity.  Contrast this with the musical play and motion picture, "West Side Story."

> Because it involved a romance between members of two warring juvenile gangs in contemporary New York City, at first glance it might appear that this would no more constitute an infringement of "Romeo and Juliet" than does "Abie's Irish Rose."  Certainly the dialogue and setting, and even much of the characterization, story line and action, are far removed from the Shakespeare play.  Yet, applying the pattern test, it will be seen that not merely the basic idea, but the essential sequence of events, as well as the interplay of the characters, are straight out of "Romeo and Juliet."

Nimmer then lays out 13 points of similarity "sufficiently concrete" to state the essence and "[b]ecause this pattern is common to both works, it may be concluded that they are substantially similar." *Id.*  Plaintiff's materials demonstrate "sufficiently concrete" points of similarity in sequence and character interplay. Townsend Decl., Exs. A, B, BB, CC; Hunter Decl., pp. 9-13, 16-17 (discussing the "quantity and quality of these combined elements"); Dancyger Decl., pp. 28-34; Renzi Decl., p. 1 (11 points of plot structure); POPSOF ¶¶57-58.

### b)   The Ordinary Observer Test

"The key to the ordinary observer test is therefore the similarities rather than the differences." *Novelty Textile Mills, Inc. v. Joan Fabrics, Corp.*, 558 F.2d 1090, 1093 (2d Cir. 1997); at n.4; *Gund v. Applause*, 809 F.Supp. 1013, 1021 (S.D.N.Y. 1988).  Dissimilarities attributable to targeting a youthful market should not detract from the key issue – the similarities.  Plaintiff's evidence demonstrates an issue of fact as to whether an ordinary observer, overlooking the dissimilarities, could find the works substantially similar.

### c)   The More Discerning Observer Test

Paramount incorrectly suggests that the more discerning observer test is relevant.  Motion, p. 11 fn. 4 and asks this Court to dissect *Rear Window* into individual elements (like the colors in a painting) as unoriginal or scenes a faire.  Even if the "discerning observer test" is proper (which it is not), the Second Circuit in *Knitwaves, Inc. v. Lollytags Ltd.*, 71 F.3d 996, 1003, (2d Cir. 1995) rejects dissection.[10]

---

[10]  The Court stated: "In applying [the 'discerning observer test,'] a court is not to dissect the works at issue into separate components and compare only the copyrightable elements. To do so would be to take the "more discerning" test to an extreme, which would result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements like letters, colors and symbols. *Id.* This outcome – affording no copyright

Because an original compilation of unprotectible individual elements is itself copyrightable, Paramount's dissecting some of *Rear Window* elements as unprotectible does not rebut copying as a matter of law. *Feist Publications v. Rural Tel. Service Co.,* 499 U.S. 340, 362, 111 S. Ct. 1282 (1991); *Knitwaves, Inc. v. Lollytags Ltd.,* 71 F.3d at 996; *Softie, Inc. v. Dragon Med. and Scent. Commons, Inc.,* 118 F.3d 955, 964 (1997); *Hogan v. DC Comics,* 48 F. Supp.2d 298, 309 (S.D.N.Y. 1999); *Nihon Keizer Samsun, Inc. v. Combine Bus. Data, Inc.,* 166 F.3d 65, 70-71 (2d Cir. 1999) (focused not on whether facts were protected but whether the structure and organization of facts were substantially similar). Regardless, substantial similarity under the "ordinary observer" or "discerning ordinary observer" is normally a jury question. *Levine v. McDonald's Corp.,* 735 F.Supp. 92, 96 (S.D.N.Y. 1990). "'As the district court noted, if we took this argument [that court was required to dissect copyrighted designs into separate components] to its logical conclusion we might have to decide that 'there can be no originality in a painting because all colors or paint have been used somewhere in the past.'" *Yurman Design, Inc. v. PAJ, Inc.,* 93 F.Supp.2d 449, 458 (S.D.N.Y. 2000) citing *Knitwaves, Inc. v. Lollytags Ltd.,* 71 F.3d at 1003; See also *Eyal R.D. Corp. v. Jeweled New York, Ltd.,* 576 F.Supp.2d 626, 643 (E.D.N.Y. 2008); POPSOF ¶¶ 57, 58, 64, 68, 70.

2. **There Is Evidence of Substantial Similarity Between Protectable Elements In *Rear Window* and *Disturbia***

a) **Evidence of Reactions of Ordinary Observers, Film Critics, and Paramount Principals**

The spontaneous reactions of ordinary lay observers and film critics to the similarities between *Rear Window*, the *Rear Window Film* and *Disturbia* are probative of a jury's reaction under the "ordinary observer" test and evidence of actual copying. Townsend Decl., Exs. I1-I14, J1-J22:

| | |
|---|---|
| (1) "… basically an uncredited remake of the 1954 Alfred Hitchcock classic Rear Window (which was in turn based on a 1942 Cornell Woolrich story)." Id., Ex. I10; SOF ¶58. | Dennis Lim<br>Los Angeles Times<br>'Disturbia' is no 'Rear Window' |

protection to an original compilation of unprotectible elements – would be contrary to the Supreme Court's holding in *Feist Publications*." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001).

(2) "Writers Christopher Landon and Carl Ellsworth receive sole credit for the movie Disturbia, which is surprising, as the film clearly is based on both a previously published work (a 1942 short story by Cornell Woolrich titled It Had to Be Murder) and the John Michael Hayes-penned, Alfred Hitchcock-directed, Academy Award-nominated screenplay of Woolrich's tale." Id., Ex. I1.; SOF ¶49.

Robert Wilonsky
<u>River Front Times</u>
*Peeping Bomb – Bland voyeur thriller does its best*

(3) "Disturbia is so clearly a remake of Rear Window that it's appalling to see it released without at least a nod to the people who actually created it. Perhaps, the legal issues are blurred because both Rear Window and Disturbia have business ties to Paramount Pictures… For the record, Rear Window, and effectively, Disturbia, were written by Cornell Woolrich and John Michael Hayes." Id., Ex. I2; SOF ¶50.

Forrest Hartman
<u>Army Times</u>
*'Disturbia' comes off without Hitchcock*

Plaintiff's evidence of media quotes by ordinary lay observers is relevant to the standard cited by Paramount that summary judgment is appropriate as a matter of law only where "no reasonable trier of fact could find the work substantially similar." *Walker v. Time Life Films, Inc.,* 784 F.2d at 44.  In *MCA, Inc. v. Wilson*, 425 F.Supp. 443, 450 (S.D.N.Y. 1976), the court held "[s]ince one of the crucial tests in a copyright infringement case is whether the allegedly infringing work is recognizable by ordinary observation as having been pirated from the copyrighted source, any evidence directly bearing on the observations of the audience…is clearly relevant.  See also *Tin Pan Apple, Inc. v. Miller Brewing Co.,* 30 U.S.P.Q.2d (BNA) 1791, (S.D.N.Y. 1994) (band manager's statement that fans thought an infringing commercial included the band's music was not hearsay, as "a witness is entitled to describe an out-of-court declarant's statement of a 'then existing state of mind'").  Therefore, such observations may be offered under Federal Rules of Evidence 803(1) and 803(3).  Additionally, first-person interview statements from *Disturbia* actors, producers and directors stating that *Disturbia* producer, Spielberg, wanted to "revamp" the *Rear Window Film*, and "we definitely are paying homage to Hitchcock," and that the director wanted to "contemporize the film" are material.  Townsend Decl. Exs. J9-J10 (R1-R7 for additional quotes). These statements should be admitted, if not for the truth of the matter asserted, as evidence both the reaction of the ordinary observer and of actual copying.  Such are not inadmissible hearsay for these purposes.

### b) Expert Reports

Plaintiff's expert reports relate to both probative and substantial similarity as "for while the terms "probative similarity" and "substantial similarity" relate to different elements of a claim of copyright infringement, the analyses that the two terms implicate will often be very similar." *Tiesham, Inc v. C.C.A. International (NJ), Inc.* 895 F.Supp. 651, 658 (S.D.N.Y. 1995). Plaintiff's expert reports should be considered for substantial similarity for actionable copying because 1) Plaintiff relies on them to identify similarities a lay observer would detect, even if the Court gives no additional weight to the reports because of their sources. *See A Slice of Pie Productions, LLC v. Wayans Bros. Ent.,* 487 F.Supp.2d 41, 48 (D.Conn. 2007) fn. 5; and 2) expert testimony is helpful where the similarities are not obvious to a lay observer who has no knowledge of film adaption, and thus require more technical analysis (i.e. musical compositions). *Levine v. McDonald's Corporation*, 935 F.Supp. 92, 97 (S.D.N.Y. 1990) (plaintiff's expert opined as to musical note combinations "that may not be apparent to the common listener."); *Business Management International, Inc. v. Labyrinth Business Solutions, LLC,* 2009 WL 790048 (S.D.N.Y.) (applying the ordinary observer test in a software context, expert opined on similarities and as to creativity (*Id.* at 11), with the court, denying summary judgment, stating "most crucially the parties' experts disagree about the key issue of which parts … are functional or otherwise exempt from copyright protection by the merger or scenes a faire doctrine," and there are "genuine issues of material fact as to"… whether work was "stock," "scenes a faire" and "protectibility." *Id.* at 18). Here, there are nuances of film noir, comparisons of arcane Prior Works (i.e. *The Sand Man*) in different genres, scenes a faire concepts, and the adaptation of a 60 year old literary work to film. Expert analysis is helpful (indeed essential) to the ordinary observer (i.e., Dr. Renzi is experienced in the adaptation of "noir" literary works to film, specifically H.G. Wells and Cornell Woolrich. Renzi Decl., Ex. A, Curriculum Vitae).[11]

### c) Idea vs. Expression

Paramount's predictable assertion that <u>none</u> of the alleged similar elements are protectable itself presents triable factual issues as to whether each and every one of Plaintiff's similarities are unprotectible ideas or scenes a faire, and whether Plaintiff's Complaint "fails to distinguish between protectable and nonprotectible elements of the Short Story." MOL, p. 25. (such a distinction is not necessary for probative similarity). There is conflicting evidence of which elements are original and protectable, and as to whether the pattern or sequence of or, the compilation of, numerous elements is itself protectable. POPSOF ¶¶64, 68; SOF ¶¶86-89, 94-97. Paramount's dissection is not determinative, as a reasonable juror could decide the arrangement of elements concrete pattern, sequence of events or scenes are protectable. Townsend Decl., Exs. A, B, BB and CC. Hunter Decl., pp. 4, 16-17; Dancyger Decl., pp. 28-34; Renzi Decl., p. 1.

Paramount's suggestion that this Court should filter out the "basic plot premise" of *Rear Window* is erroneous. Motion, p. 15. Such an approach would delete the author's protectable organization, selection, and arrangement of even allegedly nonprotectible elements. ==*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002),== ("the particular sequence[12] in which an author strings a significant number of unprotectible elements can itself be a protectable element.").

Here, Plaintiff has satisfied the "patterns test," and has proffered a "Synopsis of Substantially Similar Sequence" with 16 concise points of similarity (Townsend Decl., Ex. A, #36), and a DVD of *Disturbia* excerpts with *Rear Window* subtitles (*Id.* Ex. CC), as well as the more detailed Similarities Analysis addressing 35 points of similarity (*Id.* Ex. A) and DVD's (*Id.*, Exs. B, BB); see also Dancyger Decl. pp 32-34 (applying the patterns test and finding 13 points in sequence); SOF ¶45. "The means of expression such as the patterns and sequence are the 'artistic' aspects of a work; the 'mechanical' or 'utilitarian' features are not protectable.... We focus on whether an ordinary lay observer would overlook the dissimilarities between the artistic

---

[11] A fact finder would indeed be helped because even *Rear Window Film* screenwriter Hayes stated that when preparing to lecture on *Rear Window* he re-read it "very slowly" for "five days", taking notes on each paragraph, and that just adapting Rear Window to a screenplay was arduous: "I spent nine months of my life on it." Stewart Decl. Ex. Q, pp 29, 45-46.

[12] It is noteworth that the Supreme Court find Woolrich's "<u>sequence of events</u>" unique in addition to the individual elements of characters and plot. *Stewart v. Abend*, 495 U.S. at 210.

(protectable) aspects of the two works and would conclude that one was copied from the other." *Lone Wolf Mcquade Associates, V. CBS Inc.,* 961 F.Supp. 587, 592-593 (S.D.N.Y. 1997).   An author's original contributions are protectable including "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Knitwaves,* 71 F.3d at 1004 (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 358, 111 S. Ct. 1282, 1294, 113 L.Ed.2d 358 (1991)).

### d) **Aesthetic Choice: The "Heart" of Protectable Expression**

Aesthetic choices which render a work original and protectable must be examined.  Hunter Decl. pp. 14-15.  In *Matthew Bender & Co., Inc. v. West Publishing Co.,* 158 F.3d 674, 682-83 (2d Cir.1998), the court stated that "when it comes to the selection or arrangement of information, creativity inheres in making non-obvious choices from among more than a few options." *Id.* at 622. "[S]election from two or three options, or of options that have been selected countless times before and have become typical, is insufficient." *Id.* In cases where originality was found in selection, "the compiler selected from among numerous choices, exercising subjective judgments relating to taste and value that were not obvious and were not dictated by industry convention." *Id.* at 689.  Here, Woolrich's "non-obvious" choices demonstrate they are not typical, scenes a faire, general ideas or stock characters. Hunter Decl., pp.14-16 ("Choices"); POPSOF ¶¶ 64, 68, 70; see *Tufenkian Import/Export Ventures*, 338 F.3d at 134 (stating "we generally have taken care to identify precisely the particular aesthetic decisions – originality of plaintiff and copied by defendant – that might be thought to make the designs similar in the aggregate.").

*Disturbia* screenplays evidence the numerous non-obvious artistic choices available to the authors. Consideration of earlier drafts of an infringing work may be proper.  *Mowry v. Viacom, Inc.*, Case No. 03 Civ. 3090, 2005 WL 179377 (S.D.N.Y. July 29, 2005) at *10 n.1, (permitting review of prior drafts as it "evolved through years of script revisions in an attempt … to remove all evidence of any connection" for the purpose of establishing actual copying).  "[P]rior drafts may be relevant in determining such issues as independent creation and the likelihood that similar elements have been copied." *Walker,*784 F.2d at 52 ("Generally such early drafts

might be useful to show that defendants had gained access to plaintiff's work, borrowed from it, and later made changes in order to conceal that borrowing…" at *Id.*, fn.4). The *Disturbia* screenplay (2005) (but not the film) utilized exactly the split level perspective found in *Rear Window* and the *Rear Window Film*.  SOF, ¶47. *Disturbia* also contains nearly identical scenes as *Rear Window* where the Protagonist sends his assistant to scramble over the fence on a mission to the Antagonist's home, even uncannily employing Woolrich's word "scramble." Townsend Decl. Ex. A #20, B #20 (*Rear Window* states Sam "scrambled over the fences." The *Disturbia* screenplay (2005) states Ronnie "hops the fence… scrambles to his feet").

### e) Alleged Scenes A Faire

Paramount is incorrect that numerous similarities are scenes a faire.  POPSOF ¶64.  "The majority of similarity points between the short story and films are not a paradigm that flows naturally as if preordained from the shared ideas."  Hunter Decl., p. 15.  They were chosen from available "options about how to order." See *eScholar, LLC v. Otis Educational Systems, Inc.,* 2005 WL 2977569 (S.D.N.Y.) at 16 (the court in denying summary judgment found a disputed question of fact as to whether *eScholar's* decisions regarding the selection, coordination, and arrangements "transcended the obvious").  The creative expression in *Rear Window* contains sequence and interplay of characterization that transcend the obvious. Hunter Decl., pp 14-16 (choices are <u>not</u> scenes a faire); Dancyger Decl. ¶¶19-21("taken together they are not scenes a faire"); Townsend Decl. Exs. A, B, BB, CC; POPSOF ¶64.  The Prior Works illustrate why Woolrich's similar elements are not a scenes a faire, and show how artistic choices make *Rear Window* original, *Disturbia* similar, and the Prior Works dissimilar.  In Doyle's *The Adventure of the Empty House*, Holmes is not confined.  He roams London, then looks through a window opposite his home – not his upstairs window. POPSOF ¶¶39-54; Dancyger Decl., pp. 7-8 (*Rear Window* has "no more than a superficial similarity" to Wells); Renzi Decl., pp. 4-5.  The *Disturbia* filmmakers could have made different choices, but did not, and these types of creative, "non-obvious" choices were made in innumerable places and constitute the "heart" of all three works at issue.

SOF ¶97; Dancyger Decl., pp. 28-34; Hunter Decl. pp 14-16.[13]

### f) There is Substantial Similarity in Plot & Sequence, Theme, Characters, Dialogue, Pace, Mood, Setting, and Total Concept and Feel

The Court is respectfully referred to Plaintiff's Similarities Analysis, DVD's, and expert reports regarding the substantial similarities of sequence, pattern, theme, characters, dialogue, pace, mood, setting, and total concept and feel and aesthetic appeal.  Townsend Decl., Exs. A, B, BB, CC; Hunter Decl.; Dancyger Decl.; Renzi Decl.; SOF ¶¶86-89, 94-97; POPSOF ¶¶55-61, 71.

Paramount abstracts the "plot" (ignoring the pattern and sequence) of *Rear Window* as involving "[t]he basic situation of a man, who is confined in some manner to his residence and while watching through his window, sees what he believes to be a murder-related activity and is then jeopardized in his residence by the murderer." MOL, p. 2.  This situation, as Paramount presents it, is more accurately described as a premise rather than a plot.  From this basic premise, an author makes numerous creative choices as to the elements of the premise to develop the plot and sequence, which are called the expression of a basic idea. Hunter Decl., pp. 14-15.  Paramount changed nothing in the plot/sequence.  *Disturbia* reflects similar choices as to sequence, plot, themes, etc. Dancyger Decl., pp. 28-34. The slightest changes illustrate the point: "the basic situation of a woman, who is confined in some manner on a train in Russia, while watching through a window sees what she believes is the kidnapping of a child, and is jeopardized on the train by assassins hired by the kidnapper."

Paramount states that "[i]n light of *Nichols, Davis, Giangrasso, Midwood* and *Berkic*, the basic plot idea of a protagonist… is nothing more than a general plot idea." MOL, p. 15.  Paramount's analogy, in reliance on this line of authority, is simply negated by the fact that *Rear Window* aggregates numerous "plot ideas" into a creative expression, and the United States Supreme Court has clearly recognized this fact (i.e. the "unique sequence"). *Stewart v. Abend*, 495 U.S. at 211.

In *Clonus Associates v. DreamWorks, LLC*, 457 F.Supp.2d 432 (S.D.N.Y. 2006), this district, in

---

[13] Scenes a faire is a misunderstood concept and this issue alone supports consideration of expert reports.

denying summary judgment, held fact issues existed as to the degree of substantial similarity of plot ideas and expression as to a film about clones, stating "the jury will have to decide whether the similarities are qualitatively substantial and therefore actionable… These questions are also fraught with fact-based disputes." *Id.* at 442.  See also *Price v. Fox Entertainment Group, Inc.,* 2007 WL 241389 (S.D.N.Y.), where a plot involving dodgeball (alleged by defendants to be mostly scenes a faire related to coaches and sports) was found sufficiently protectable to deny summary judgment, stating at *9 "After examining each work's "total concept and feel, theme, characters, plot, sequence, pace and setting" (citations omitted), I cannot find as a matter of law that each and every similar element between the two works is non-protectable.  A jury could reasonably conclude that "'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same.'" *Boisson v. Banian, Ltd.,* 273 F.3d 262, 272 (2d Cir. 2001)(quoting *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765 (2d Cir. 1991))(citations omitted)"…"The jury will have to decide whether the similarities between the two works at issue here are substantial, and therefore actionable.  This will require differentiation between similarities… or whether the similarities can be found in the prior art… [t]hese questions are quintessentially fact-based disputes and cannot be decided as a matter of law."

Paramount asserts that "the expression and development of the plot idea of *Disturbia* bears little to no resemblance to the Short Story." MOL, p. 17.  This assertion is directly countered by Plaintiff's submissions and clearly presents a factual dispute given the similarities in sequence noted by reputable film critics, Plaintiff and its experts.  Townsend Decl., Exs. A, B, BB, CC; Hunter Decl., pp. 4,7; Dancyger Decl., pp. 28-34; Renzi Decl.  "Where plot is more properly defined as "the 'sequence of events' by which the author expresses his 'theme' or 'idea,'" it constitutes a pattern that is sufficiently concrete so as to warrant a finding of substantial similarity if it is common to both plaintiff's and defendant's works." Nimmer at § 13.02 [B][b].

The characters in *Rear Window* are "unique." *Stewart v. Abend*, 495 U.S. at 211. *Rear Window's* significant character, Hal Jeffries, constitutes protectable expression (at a minimum when combined with other

elements) as the character was developed by Woolrich, the character constitutes the "story being told" and the plot unfolds from the character's visual perspective. Townsend Decl., Exs. A #30; B #30, BB #30; Hunter Decl., p. 12; Dancyger Decl. pp. 19-20, 22-23 (character population and structure protectable).   Character elements of the *Rear Window Film* and *Disturbia* are derivative of (i.e. substantially similar to) *Rear Window,* notwithstanding some differences.   The differences noted by Paramount are not differences in personality or trait but in minor details (Kale has had "problems with the law", etc.)   Any differences are tempered by Paramount's concession that in Woolrich "the characters are described only by the written word" (MOL p.19) another reason for using quantitative/qualitative analysis.   Paramount asserts there are no characters in *Rear Window* comparable to Ashley and Ronnie.   This is a disputed fact.   The characters Lisa and Stella (*Rear Window Film*) and Ashley and Ronnie *(Disturbia),* are clearly based on Lisa and Stella and are equivalent to the houseman, Sam, in *Rear Window* as they are utilized for the same purpose: 1) the "legs" of the investigation; 2) a foil to the Protagonist; and 3) the conscience of the Protagonist who admonish him for being a Peeping Tom.   Townsend Decl., Ex. A, # 30.   *Rear Window Film* screenwriter Hayes testified that Lisa and Stella did "fulfill some of the functions of Sam."   Stewart Decl. Ex. Q  p. 28, and he "had to create a part" for Grace Kelly  and Thelma Ritter (Stella) came out of the Sam character." *Id.* pp. 50, 58; see POPSOF 18, 34, 35. Paramount makes the odd assertion that the *Disturbia* protagonist (Kale) "is not physically confined to an apartment, is not constrained in his mobility…"  MOL p. 17.   The protagonist (Kale) is indeed confined and constrained and wears an ankle bracelet to keep him confined to a "100 foot radius."  Kale states he is "spatially challenged."   Townsend Decl. Ex. A # 1, 3; B #1, 3; BB #1, 3; CC #2.   There are numerous other disputes of fact as to this element.   POPSOF ¶¶31-36; SOF¶95.   Similarity in characters alone is enough to deny summary judgment. *Shaw v. Lindheim,* 919 F.2d 1353, 1363 (9th Cir.1990) (relying on similarity between plaintiff's and defendant's lead characters in determining that plaintiff had raised a triable issue of fact on substantial similarity of entire work).[14] In *Lone Wolf Mcquade Associates v. CBS, Inc.,* 961 F.Supp 587 (S.D.N.Y. 1997) the court

---

[14] Paramount's example of the protagonist is caught in a repeating day (*Arden v. Columbia Pictures Indus., Inc.,* 908

stated, "These similarities include the two characters' <u>approaches to law enforcement</u>, style, fighting technique, <u>characteristic behavior</u>, and <u>methods of operation</u> as modern-day Texas Rangers, their portrayal by Chuck Norris, their <u>attitudes toward authority and rules</u>, and their style of attire and choice of vehicle." (emphasis added). "A reasonable jury could conclude that the total combination of all the traits of Cordell Walker are substantially similar." *Id.* at 594.

Paramount erroneously asserts there is NO instance of similarity in dialogue. MOL p.21. While the cultural differences between 1942 and 2007 America are obvious, there remains more than *de minimus* similarity to Woolrich's narrative (i.e. when the Protagonist is told he has "gone too far." Townsend Decl., Exs. A #23; CC #12). The themes, mood and pace are substantially similar, especially when considering the pattern and sequence. Townsend Decl. Ex. A # 29, 34, 35; CC #1-26; Hunter Decl. pp.9-11; Dancyger Decl. pp. 31-34; Renzi Decl., p. 1; SOF ¶¶ 87-89.

Paramount asserts dissimilarities in setting, but the "setting" is actually the upstairs window of the protagonist. Townsend Decl., Ex. A, #34; Hunter Decl. p. 13; Dancyger Decl., p. 29-30. *Disturbia* extensively utilizes points of view of the protagonist ("The 2006 screenplay contains approximately 36 "KALE POV", 32 "BINOCULAR POV", and 10 "Video DVD Camera POV". These are substantially similar to the same points of view utilized in *Rear Window* and *Rear Window Film's* numerous "BINOCULAR SHOT", "LONG SHOT" directions. SOF ¶99. The "setting" is a highly significant element defining detail in both works. Director D.J. Caruso stated he wanted the challenge of doing this all from his [Protagonist's] point of view." *Id.*, Ex. S4. The geographical location – 1942 Manhattan versus 2007 suburbia is insignificant.

**C.    Plaintiff's List of Similarities Throughout The Works Is Accurate And Can Support A Finding Of Substantial Similarity**

Summary judgment cannot be granted as Paramount leaves all similarities un-rebutted as to their compilation, pattern and sequence. The Court can deny summary judgment on this alone. *Lipton v. Nature Co.,* 71 F.3d 464, 471 (2d Cir. 1995); *Rogers v. Koon*, 960 F.2d 301, 308 (2d Cir. 1992)(granting summary

judgment to plaintiff upon direct evidence of copying a photographic composition of a string of puppies; not that the idea of puppies is original, but the unique expression in posing the dogs is. *Id.* at 307).

Paramount asserts (in a quick summary) that every similarity on Plaintiff's list is either unprotectible, a scene a faire or a generalized idea (MOL p. 25), but they fail to provide a sufficient basis. Paramount never states why the 16 similarities they reference are scenes a faire, how they are inevitable or flow from other elements. Thus they have not met their burden to show how and why any of the similarities are unprotectible. Nor have they rebutted the number of similarities between the works in combination and sequence. FAC ¶87; Townsend Decl., Ex. A, B, BB, CC.[15] The proffered substantial similarities are not mere ideas or themes, and Paramount clearly misapprehends the scenes a faire concept. For example, the assistant's invasion of the antagonist's home is simply not a scene a faire. Townsend Decl., Ex. A # 20-21; FAC ¶ 89 #11. This scene is not inevitable, nor does it follow naturally from any generic idea in *Rear Window*. Indeed, it is not necessary to have an assistant at all. See also POPSOF ¶64. Paramount's other assertions are simply incorrect. (i.e. that alleged similarities do not occur in *Disturbia*). POPSOF ¶65. Paramount offers up no other work in film that has employed *Rear Window's* expression of themes in substantially the same pattern or sequence, merely an old silent film and an early "talkie" that at best share one similarity involving cut phone lines. POPSOF, ¶54. The only work with a similar sequence is the *Rear Window Film*, which is a licensed derivative work that Paramount makes no reference to it at all.

### 1.   The *Rear Window Story* Contains Protectable Combinations

Even if Paramount is correct that <u>none</u> of Plaintiff's similarities are individually protectable, a reasonable jury could find that the combination of them is protectable. *Levine v. McDonald's Corporation*, 735

---

[15] Paramount states Plaintiff's "list" has "trivial details," but is unable to rebut Plaintiff's Similarities Analysis and misconstrues three cases. In *Williams v. Crichton*, 84 F.3d 581, 590 n3 (2d Cir. 1996), the unreliable list involved only eight nondescript "random, scattered similarities" between the film *Jurassic Park* and a children's book. Plaintiffs' "list" contains a detailed sequential account of material similarities. In *Morris v. Wilson*, 189 F.Supp. 565, 567 (S.D.N.Y. 1960) the 371 page chart contained "dissimilarity so marked that there was no real basis for comparison." In *Historical Truth* 1995 WL 693189 at *9 and *13 the list contained "mischaracterizations" and the similarity was a "short list of action film and science fiction scenes a faire:

F.Supp. 92, 97 (S.D.N.Y. 1990) ("Plaintiffs' expert concludes that the differences between the two songs "are subtle and would not be apparent to the common listener," and that the various similarities "join together to give an unmistakable impression of sameness").

An original compilation of unprotectible individual elements is itself copyrightable, and thus Paramount's arbitrary filtering out *Rear Window* elements as unprotectible does not, as a matter of law, rebut infringement. *Feist*, 499 U.S. 340, 362; *Knitwaves*, 71 F.3d at 1003-1004; *Sofitel, Inc. v Dragon Med. And Scient. Commns, Inc.*, 118 F.3d 955, 964 (1997); *Nihon Keizai Simbun, Inc. v. Comline Bus.Data, Inc.*, 166 F.3d 65, 70-71 (2d Cir. 1999). In Paramount's analysis no story or painting could find protection, except in literal duplication, which is why the Court should review all of Plaintiff's evidence of the pattern, sequence and "total concept and feel" as an "ordinary observer." In *Mallery v. NBC Universal, Inc.*, 2007 WL 4258196 (S.D.N.Y.) the court stated: "It is well established that "substantial similarity" may be found where a later work appropriates the "total concept and feel, theme, characters, plot, sequence, pace, and setting" of an earlier work, even if no single instance of alleged copying is itself actionable," citing *Castle Rock*, 150 F.3d at 140.

### 2.  The *Rear Window Story* Has Sufficient Originality For Copyright Protection

Paramount's assertion as to lack of originality goes at most to only a few of the noted similarities isolated from their combination at their most abstract level (i.e. "watching through a window"). Triable issues of fact remain as to the originality of individual elements and the originality in pattern and sequence. Evidence of Paramount's willful copying ("homage" and "revamping") itself defeats the lack of originality argument, because "copying without regard to plaintiff's rights is probative on the issue of the originality of a work." See *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 252, 23 S.Ct. 298, 300, 47 L.Ed. 460 (1903) (Justice Holmes: "that works have worth is sufficiently shown by desire to copy them without regard to the plaintiff's rights"). Nimmer on Copyright § 2.01[A] 2008: states that "Originality in the copyright sense means only that

---

killing, regeneration…" In *Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984), the list contained no similarities in the "sequence of events" and "no lay observers would recognize E.T. as a dramatization…" *Id.* at 1356.

the work owes its origin to the author, i.e., is independently created, and not copied from other works.

Therefore, a work is original and may command copyright protection, even if it is completely identical with a

prior work, provided it was not copied from such prior work but is rather a product of the independent efforts of

its author.  With his characteristic felicity of phrase, Learned Hand articulated this principle as follows:

> …[I]f by some magic a man who had never known it were to compose anew
> Keats' Ode On a Grecian Urn, he would be an "author," and, if he
> copyrighted it, others might not copy that poem, though they might of course
> copy Keats.  *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir.
> 1936)"

Paramount has not rebutted the presumption with any evidence of access or substantial similarity to

relevant Prior Works.  Plaintiff provides evidence of originality.  Nevins Decl.; Dancyger Decl. p. 4 (*Rear

Window* is original).  Copyright registration (see Stewart Decl., Exs. F, G, H, K, R.) is *prima facie* evidence of

originality and such may not be rebutted by an alleged infringer's contention that the work was not original and

that there were similar works in use, <u>absent evidence that the author copied from such other works</u>.  *In Design*

*v. Lynch Knitting Mills, Inc.,* 689 F.Supp. 176 (S.D.N.Y. 1988), aff'd, 863 F.2d 45 (2d Cir. 1988); *Johnson*

*Controls, Inc. v. Phoenix Controls Systems, Inc.*, 886 F.2d 1173, 1174 (9th Cir. 1989) (emphasis added).

"The party contesting the originality of a properly registered copyright must show that 'there was such

an overwhelming amount of evidence of nonoriginality that reasonable and fair minded men could not have

found' the [works] to be original."  *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F.Supp.2d at

514 *quoting Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) (internal quotations omitted). In

*Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F.Supp.2d 514, 515 the court denied summary

judgment where "plaintiffs' copyrights are for the design combinations that result from combining those

common elements"; see also *Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F.Supp.2d 329, 333

(S.D.N.Y. 1998) ("the characters, plots and dramatic episodes… are its original elements").

**D.  <u>Estoppel And/Or Judicial Notice</u>**

The U.S. Supreme Court's recognition of the originality in *Rear Window* entitles the Plaintiff to

collateral estoppel and/or judicial notice of findings on the issue of originality and the substantial similarity of the *Rear Window Film*. Only a modicum of creativity is sufficient for protectable originality and the Supreme Court held *Rear Window* both "creative" and "unique," and that "the nature of the copyrighted work (*Rear Window*) is fictional and creative rather than factual" … "the story was a substantial portion of the film (*Rear Window Film*), which expressly used its unique setting, characters, plot, and sequence of events." *Stewart v. Abend,* 495 U.S. at 210. Paramount's argument as to the originality of *Rear Window* is not a new issue. "A new contention is not necessarily a new issue." 18 James W. Moore, Moore's Federal Practice §132.02[2][c] at 132-25 (3rd ed. 2007). "In order for a finding of fact in a previous case to have a binding effect upon a finding in a subsequent case, the fact must be material and controlling in both cases, and it must also conclusively appear that the fact in issue was necessarily determined by the first court." *Federal Savings and Loan Insurance Corporation v. Szarabajka,* 330 F.Supp. 1202, 1206 (N.D. (Ill.) 1971); citing *Insull v. New York, World-Telegram Corp.,* 273 F.2d 166, 168 (7th Cir. 1959), cert. denied, 362 U.S. 942, 80 S.Ct. 807, 4 L.Ed.2d 770 (1960). The Supreme Court's findings have a binding effect on the issues of whether sufficient minimum originality exists in the elements of sequence, plot and characters in *Rear Window* to warrant protection, and whether *Rear Window* is incorporated in (and substantially similar to) the derivative *Rear Window Film*. This Court is respectfully asked to, at a minimum, take judicial notice of the findings in *Stewart v. Abend.* Fed. R. Evid. 201(b).

**D. Acquiescence of Originality**

Paramount (who has never questioned Woolrich's originality in the past) should be estopped from attacking originality due to its long acquiescence. In *Fitch v. Shubert* 20 F.Supp. 314, 315 (S.D.N.Y. 1937), in finding presumptions of validity of copyright, the court stated: "But we have long acquiescence, which creates a presumption of the validity of the copyright sufficiently strong in the absence of proof the other way by the defendants." Paramount's involvement with *Rear Window* and the *Rear Window Film* from the 1950's evidence a long history of distribution, exploitation and copyright registration of the *Rear Window Film*, which

was based upon (and credits) *Rear Window*.  Stewart Decl., Exs. A,B, C, D, R.  Paramount literally banked on its belief in the originality of *Rear Window*.

## IV.  CONCLUSION

For Paramount to prevail, they must demonstrate that no reasonable juror could possibly agree that 1) any elements of *Rear Window* are copyright protectable (meaning, ironically, that no elements of the *Rear Window Film* are copyright protectable and that Hitchcock's opus is free for the taking), 2) any similarities are quantitatively more than *de minimus*, and 3) any similarities in the works are qualitatively similar as to sequence, pattern, and aesthetic appeal.  This, they cannot do. Paramount's motion should be denied and the works at issue, all proffered evidence and declarations presented to a jury.

Dated: June 2nd, 2009

| | | |
|---|---|---|
| | Respectfully Submitted, | *Attorneys for Plaintiff* |
| | ***s/ Clay M. Townsend*** | *The Sheldon Abend Revocable Trust* |
| | Clay M. Townsend, Esq. (FBN: 363375) | Steven M. Hayes, Esq. (NYBN: 2926) |
| | Keith R. Mitnik, Esq. (FBN:  436127) | HANLY, CONROY, BIERSTEIN, |
| | MORGAN & MORGAN, P. A. | SHERIDAN, |
| | 20 N. Orange Avenue, Suite 1600 | FISHER, HAYES, LLP |
| | Orlando, FL 32802 | 112 Madison Avenue |
| | Ph: (407) 418-2075 | New York, NY 10016-7416 |
| | Fx: (407) 425-8171 | Ph: (212) 784-6414 |
| | Email:ctownsend@forthepeople.com | Fx: (212) 784-6420 |
| | kmitnik@forthepeople.com | Email: shayes@hanlyconroy.com |