**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE SHELDON ABEND REVOCABLE TRUST, | CASE NO. 08-CIV-7810 (LTS)(JCF) <br> ECF Case |
| Plaintiff, | |
| v. | |
| STEVEN SPIELBERG; DREAMWORKS, LLC; PARAMOUNT PICTURES CORPORATION; VIACOM, INC.; NBC UNIVERSAL, INC.; UNIVERSAL PICTURES CORPORATION; and UNITED INTERNATIONAL PICTURES, B.V., | |
| Defendants. | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**

**THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ........................................................................1

II.    THE ONLY ISSUE RAISED BY THIS MOTION – SUBSTANTIAL SIMILARITY – SHOULD BE DETERMINED BY THE COURT'S OWN COMPARISON OF THE TWO WORKS ...........................................................................................2

III.   PLAINTIFF'S OPPOSITION FOCUSES ON IRRELEVANT EVIDENCE AND ERRONEOUS ARGUMENTS..........................................................................5

     A.    The Motion Picture *Rear Window* Is Irrelevant To This Motion.............................5

     B.    Plaintiff's Arguments About Defendants' Alleged Access And Actual Copying Are Irrelevant To This Motion..................................................7

     C.    Plaintiff's Purported Expert Testimony Is Irrelevant And Should Be Excluded.....8

     D.    Plaintiff's Reliance On Media Articles Is Legally Unsupportable ........................10

     E.    Prior Drafts Of *Disturbia* Are Irrelevant To This Motion .....................................11

     F.    Plaintiff's Straw-Man "Originality" Argument Is Off Point ..................................12

IV.   *DISTURBIA* IS NOT SUBSTANTIALLY SIMILAR TO THE SHORT STORY ...........14

     A.    The Basic Plot Premise Is Unprotectable And Expressed Differently In *Disturbia* and The Short Story..............................................................................14

     B.    The Sequences Of Events Of The Two Works Are Dissimilar .............................18

     C.    Plaintiff's Citation To A General Common Theme Cannot Support An Infringement Claim................................................................................................19

     D.    The Characters Are Different And Utter No Similar, Protectable Dialogue .........20

     E.    The Pace Of The Two Works Is Different..............................................................22

     F.    The Moods Are Different........................................................................................22

     G.    The Settings Are Different......................................................................................22

     H.    Plaintiff's Argument About A "Sequence and Pattern" of Unprotectable Elements is Meritless .............................................................................................23

     I.    The Works Are Substantially Different In Total Concept And Feel .....................25

V.    CONCLUSION..........................................................................................................25

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*A Slice of Pie Productions, LLC v. Wayans Bros. Entm't,*
487 F. Supp. 2d 41 (D.Conn. 2007) ............................................................ 7, 9, 14

*Aldon Accessories Ltd. v. Spiegel, Inc.,*
738 F.2d 548 (2d Cir. 1984) ........................................................................ 8

*Arc Music Corp. v. Lee,*
296 F.2d 186 (2d Cir. 1961) ........................................................................ 7

*Arden v. Columbia Pictures Indus.,*
908 F. Supp. 1248 (S.D.N.Y. 1995) .................................................... 3, 6, 15

*Arnstein v. Porter,*
154 F.2d 464 (2d Cir. 1946) ........................................................................ 8

*Berkic v. Crichton,*
761 F.2d 1289 (9th Cir. 1985) ..................................................................... 15

*Boone v. Jackson,*
2005 U.S. Dist. LEXIS 13172 (S.D.N.Y. 2005) ............................................ 12

*Boyle v. Stephens, Inc.,*
1998 U.S. Dist. LEXIS 1968 (S.D.N.Y. 1998) .............................................. 21

*Brown v. Perdue,*
2005 U.S. Dist. LEXIS 15995 (S.D.N.Y. 2005) ............................................ 14

*Business Mgmt. Int'l, Inc. v. Labyrinth Bus. Solutions, LLC,*
2009 U.S. Dist. LEXIS 24900 (S.D.N.Y. 2009) ............................................ 9

*Cano v. A World of Difference Inst.,*
1996 U.S. Dist. LEXIS 8161 (N.D. Cal. May 31, 1996) ................................ 24

*Castle Rock Ent., Inc. v. Carol Pub. Group, Inc.,*
150 F.3d 132 (2d Cir. 1998) ....................................................................... 3, 6

*CBS Broad. Inc. v. ABC, Inc.,*
2003 U.S. Dist. LEXIS 20258 (S.D.N.Y. 2003) ............................................ 23

*CK Co. v. Burger King Corp.,*
1994 U.S. Dist. LEXIS 13934 (S.D.N.Y. 1994) ............................................ 2

*Clonus Assoc. v. DreamWorks, LLC,*
417 F. Supp. 2d 248 (S.D.N.Y. 2005) .......................................................... 9

*Computer Associates Int'l. v. Altai, Inc.*,
   982 F.2d 693 (2d Cir. 1992).................................................................................................. 9

*Costello v. Loew's Inc.*,
   159 F. Supp. 782 (D.D.C. 1958) ......................................................................................... 8

*Crane v. Poetic Prods.*,
   593 F. Supp. 2d 585 (S.D.N.Y. 2009)............................................................................... 10

*Davis v. United Artists, Inc.*,
   547 F. Supp. 722 (S.D.N.Y. 1982) ....................................................................... 8, 9, 12, 15

*Denker v. Uhry*,
   820 F.Supp. 722 (S.D.N.Y. 1992 ................................................................................. 8, 17

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*,
   25 F.3d 119 (2d Cir. 1994).................................................................................................. 4

*Flaherty v. Filardi*,
   388 F. Supp. 2d 274 (S.D.N.Y. 2005).................................................................. 2, 3, 6, 23

*Fournier v. Erickson*,
   202 F. Supp. 2d 290 (S.D.N.Y. 2002)................................................................................ 4

*Fuld v. Nat'l Broad. Corp.*,
   390 F. Supp. 877 (S.D.N.Y. 1975) ................................................................................... 12

*Gal v. Viacom Int'l, Inc.*,
   518 F. Supp. 2d 526 (S.D.N.Y. 2007).............................................................................. 14

*Gilliam v. Am. Broad. Cos.*,
   538 F.2d 14 (2d Cir. 1976).................................................................................................. 6

*Green v. Lindsey*,
   885 F. Supp. 469 (S.D.N.Y. 1992) .................................................................................... 7

*Historical Truth Prods. v. Sony Pictures Entm't, Inc.*,
   1995 U.S. Dist. LEXIS 17477 (S.D.N.Y. 1995)................................................... 2, 4, 6, 12

*Hoehling v. Universal City Studios, Inc.*,
   618 F.2d 972 (2d Cir. 1980)............................................................................................... 4

*Hudson v. Universal Pictures Corp.*,
   2004 WL 1205762 (E.D.N.Y. 2004)................................................................................... 6

*Hudson v. Universal Studios, Inc.*,
   2008 U.S. Dist. LEXIS 86146 (S.D.N.Y. 2008)......................................................... 17, 18

*Identity Arts v. Best Buy Ent. Servs. Inc.*,
   2007 U.S. Dist. LEXIS 32060, 2007 WL 1149155 (N.D. Cal. 2007) .............................. 24

*Kindergartners Count, Inc. v. Demoulin*,
   249 F. Supp. 2d 1214 (D. Kan. 2003)................................................................................ 8

*Knitwaves, Inc. v. Lollytogs Ltd.*,
   71 F.3d 996 (2d Cir. 1995)..................................................................................................... 4

*Kretschmer v. Warner Bros.*,
   1994 WL 259814 (S.D.N.Y. 1994) ........................................................................................ 6

*Laureyssens v. Idea Group, Inc.*,
   964 F.2d 131 (2d Cir. 1992)........................................................................................ 7, 8, 13

*Levine v. McDonald's Corp.*,
   735 F. Supp. 92 (S.D.N.Y. 1990) .......................................................................................... 9

*Lipton v. Nature Co.*,
   71 F.3d 464 (2d Cir. 1995)............................................................................................... 6, 24

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002) ............................................................................................. 23

*Murray Hill Pubs., Inc. v. Twentieth Century Fox Film Corp.*,
   361 F.3d 312 (6th Cir. 2003) ................................................................................................. 9

*Nichols v. Universal Pictures Corp.*,
   45 F.2d 119 (2d Cir. 1930).............................................................................................. 9, 15

*O.P. Solutions, Inc. v. Intellectual Prop. Network Ltd.*,
   1999 U.S. Dist. LEXIS 16639 (S.D.N.Y. Oct. 19, 1999) ................................................. 24

*Pino v. Viacom Inc.*,
   2008 U.S. Dist. LEXIS 24453 (D. N.J. 2008) ................................................................... 24

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*,
   394 F.3d 357 (5th Cir. 2004) ............................................................................................... 10

*Price v. Fox Entm't Group, Inc.*,
   499 F. Supp. 2d 382 (S.D.N.Y. 2007).................................................................................... 9

*RDF Media Ltd. v. Fox Broad. Co.*,
   372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................................ 10

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ............................................................................................. 24

*Rodriguez v. Heidi Klum Co., LLC*,
   2008 U.S. Dist. LEXIS 80805 (S.D.N.Y. 2008) ................................................................. 4

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992)................................................................................................ 13

*Schoolhouse, Inc. v. Anderson*,
   275 F.3d 726 (8th Cir. 2002) ............................................................................................... 24

*Steinberg v. Columbia Pictures Indus.*,
   663 F. Supp. 706 (S.D.N.Y. 1987) ....................................................................................... 8

*Stewart v. Abend,*
     495 U.S. 207 (1990)................................................................................................ 6

*Stromback v. New Line Cinema,*
     384 F.3d 283 (6th Cir. 2004) ................................................................................ 8

*Survivor Productions LLC v. Fox Broad. Co.,*
     2001 WL 35829267 (C.D. Cal. 2001).......................................................... 10, 11

*Tienshan, Inc. v. C.C.A. Int'l (N.J.), Inc.,*
     895 F. Supp. 651 (S.D.N.Y. 1995) ........................................................................ 7

*Walker v. Time Life Films, Inc.,*
     615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd,* 784 F.2d 44  (2d Cir. 1986)........................ 2, 11

*Walker v. Time Life Films, Inc.,*
     784 F.2d 44 (2d Cir. 1986)............................................................................ 6, 13

*Warner Bros., Inc. v. Am. Broad. Co.,*
     720 F.2d 231 (2d Cir. 1983)......................................................................... 3, 11

*Warner Bros., Inc. v. Am. Broad. Cos., Inc.,*
     654 F.2d 204 (2d Cir. 1981)................................................................... 19, 20, 22

*Weissmann v. Freeman,*
     868 F.2d 1313 (2d Cir. 1989) ................................................................................ 6

*Williams v. Crichton,*
     84 F.3d 581 (2d Cir. 1996).......................................................................... 2, 6, 17

*Zella v. The E.W. Scripps Co.,*
     529 F. Supp. 2d 1124 (C.D. Cal. 2007) ............................................................... 24

## **STATUTES**

FEDERAL RULES OF EVIDENCE § 801 *et seq.* ........................................................................ 11

17 U.S.C. § 103(b) .............................................................................................................. 6

37 C.F.R. § 202.1(a)............................................................................................................ 21

## **TREATISES**

3 PATRY ON COPYRIGHT §§ 9:90, 9:162.............................................................................. 3

4 NIMMER ON COPYRIGHT § 13.03[B][1][b] ..................................................................... 19

4 NIMMER ON COPYRIGHT § 13.03[D] ............................................................................... 8

## I.   PRELIMINARY STATEMENT

The only issue raised by this motion is whether the movie *Disturbia* is substantially similar to the protectable expression in Plaintiff's Short Story.[1]  Notwithstanding Plaintiff's voluminous submission, the Court need only review the two works to decide this narrow issue. The two works are the best evidence of the lack of substantial similarity between them.

Plaintiff would have the Court read virtually anything except the Short Story and compare it to *Disturbia*, and then ignore the copyright standards that courts within the Second Circuit have applied for years.  In particular, Plaintiff submits over 1300 pages of irrelevant evidence; conflates the issue of actual copying with unlawful appropriation; insists that the Court should compare *Disturbia* to the film *Rear Window* – even though Plaintiff has dismissed all claims premised upon the *Rear Window* film; proffers inadmissible media articles, photos from the *Rear Window* film, four irrelevant and improper expert reports, DVD's containing new works that Plaintiff has created, charts and lists of random alleged similarities; and attacks straw-man arguments that the Paramount Defendants never made.  Plaintiff's arguments and submissions simply do not assist the Court's determination here.

No amount of argument, secondary evidence or irrelevant submissions can change the content of the two works before the Court.  Those works – *Disturbia* and the Short Story – are completely different in expression; the works are dissimilar in plot, sequence of events, theme, characters, dialogue, pace, mood, setting, and total concept and feel.

---

[1] In this reply memorandum, the Paramount Defendants employ the same shorthand references identified in their opening memorandum of points and authorities. *See* Dkt No. 50.

1

## II.    THE ONLY ISSUE RAISED BY THIS MOTION – SUBSTANTIAL SIMILARITY – SHOULD BE DETERMINED BY THE COURT'S OWN COMPARISON OF THE TWO WORKS

The court's "determination of substantial similarity requires a detailed examination of the works themselves." *Williams v. Crichton,* 84 F.3d 581, 583 (2d Cir. 1996) (quotation omitted). Courts within the Second Circuit conduct "a side-by-side comparison of the relevant works," examining "such aspects as the total concept and feel, theme, plot, sequence, pace and setting." *Historical Truth Prods. v. Sony Pictures Entm't, Inc.*, 1995 U.S. Dist. LEXIS 17477, *19 (S.D.N.Y. 1995); *Williams*, 84 F.3d at 588; *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 287 (S.D.N.Y. 2005) (the court must directly examine the works at issue, comparing "such aspects as the themes, total concept and feel of the two works, the characters, the plots, and the settings").

In ruling on this motion, the Court need look no further than to the two works, whose contents are undisputed.[2]  Plaintiff's characterizations of the works carry no weight because "the works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings." *Walker v. Time Life Films, Inc.,* 615 F. Supp. 430, 434 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44, 51 (2d Cir. 1986) ("comparison of secondary or descriptive materials cannot prove substantial similarity…because the works themselves, not descriptions or impressions of them, are the real test for claims of infringement"); *CK Co. v. Burger King Corp.*, 1994 U.S. Dist. LEXIS 13934, at *10 (S.D.N.Y. 1994) (refusing to consider plaintiff's declarations and charts "that purport to demonstrate that the [works are] substantially similar [because] such secondary or descriptive materials are insufficient to create a triable question of fact").  Thus, the Court's task is limited to comparing Defendants' movie to Plaintiff's Short Story, disregarding general ideas, broad themes, scenes-a-faire and other unprotectable elements.

---

[2] Plaintiff's work is the Short *Story*.  Dkt No. 52, Brenner Decl., Ex. A.  The Paramount Defendants' work is the movie *Disturbia*.  *Id.*, Ex. B.

A "court may determine non-infringement as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work...or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Warner Bros., Inc. v. Am. Broad. Co.*, 720 F.2d 231, 240 (2d Cir. 1983) (quotation marks omitted). Moreover, because "substantial similarity of protectable elements between a book and an allegedly infringing motion picture is assessed through detailed examination of the works themselves, summary judgment is frequently granted in this context." *Arden v. Columbia Pictures Indus.*, 908 F. Supp. 1248, 1259 (S.D.N.Y. 1995) (citing cases).

Apparently recognizing the absence of substantial similarity between the two works in terms of protectable expression, Plaintiff proposes several alternative tests, none of which is applicable to the fictional literary and motion picture works at issue here. First, Plaintiff proposes using the "qualitative/quantitative test," while acknowledging that this test has been applied only where the works cannot be compared using "the classic categories of analysis (*i.e.*, setting and dialogue)." Opp. at 13; *see Castle Rock Ent., Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 139-140 (2d Cir. 1998) (applying the quantitative/qualitative test to compare a trivia quiz to a television series because the two works "are incomparable in conventional terms such as plot, sequence, themes, pace, and setting"); *Flaherty*, 388 F. Supp. 2d. at 287 (rejecting the quantitative/qualitative test in favor of the ordinary observer test when comparing a written work to a motion picture). Next, Plaintiff suggests the "comprehensive non-literal similarity" test, notwithstanding that the very authority upon which Plaintiff relies actually rejected that test as "unhelpful and unnecessary to our determination" of substantial similarity. Opp. at 14-15; *Castle Rock*, 150 F.3d at 140; *see also* 3 PATRY ON COPYRIGHT §§ 9:90, 9:162 (comprehensive

nonliteral similarity test "has no relevance at the substantial similarity stage" and serves only to "obfuscate rather than illuminate").

Finally, Plaintiff takes issue with what some courts have called the "more discerning observer test," arguing that this test risks dissecting the Short Story to the point where nothing protectable would remain.  Opp. at 15-16.  In their actual application, the ordinary observer and the discerning observer "tests substantially overlap in their analyses." *Fournier v. Erickson*, 202 F. Supp. 2d 290, 295 n.12 (S.D.N.Y. 2002).  Regardless of whether the observer is called "ordinary" or "more discerning," Plaintiff does not (and cannot) disagree with the fundamental proposition that similarities based only on the unprotectable aspects of Plaintiff's work must be filtered out and excluded from the Court's analysis. *See Knitwaves, Inc.  v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995) (applying the "more discerning" test "to extract the unprotectible elements from our consideration and ask whether the *protectible elements, standing alone*, are substantially similar").[3]  Where, as here, there is no substantial similarity in the works' protectable elements, summary judgment should be granted in order to put "a swift end to meritless litigation and to avoid lengthy and costly trials." *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980).

---

[3] *See also Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994) ("Parrotry does not always mean piracy, however. The plaintiff must also show . . . that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea."; applying the "more discerning" test); *Rodriguez v. Heidi Klum Co., LLC*, 2008 U.S. Dist. LEXIS 80805, *16-*18 (S.D.N.Y. 2008) (applying the "more discerning observer test" to filter out unprotectable elements of reality television series); *Historical Truth Prods.*, 1995 U.S. Dist. LEXIS 17477 at *19 ("infringement allegations must be premised on something more than similarity involving 'stock' elements," scenes-a-faire, and unprotectable ideas).

## III.    PLAINTIFF'S OPPOSITION FOCUSES ON IRRELEVANT EVIDENCE AND ERRONEOUS ARGUMENTS

### A.    The Motion Picture *Rear Window* Is Irrelevant To This Motion

The *Rear Window* film by Alfred Hitchcock is irrelevant to this motion. Indeed,

Plaintiff's reliance on the *Rear Window* film is a tacit concession that *Disturbia* is not

substantially similar to the Short Story, the only work which is at issue.

By stipulation and Court Order, Plaintiff's claims based upon the film *Rear Window* have

been dismissed. *See* Dkt No. 61 ("by this Stipulation Plaintiff is expressly dismissing ... any

claim based upon the motion picture *Rear Window*"). Plaintiff also no longer claims any

copyright interest in the film. *See* Opp. at 1, n.2 (acknowledging dismissal of claim of beneficial

ownership of *Rear Window* film). Moreover, as the moving papers made clear, the only issue

raised is substantial similarity between *Disturbia* and the Short Story. *See* Dkt No. 49, Par.

Defs.' Notice of Motion; Dkt No. 50, Par. Defs' Mem. at 1 & n.1.[4]

Plaintiff's attempt to use the *Rear Window* film for comparison purposes is also contrary

to well established law. Plaintiff alleges that the *Rear Window* film is a derivative work based

upon the Short Story. *See* First Am. Compl. at ¶¶ 1, 33; Opp. at 8 ¶ 2. Implicit in Plaintiff's

argument is the notion that the existence of the derivative work (the *Rear Window* film)

somehow expands the copyright protection accorded to the underlying work (the Short Story).

However, derivative works are distinct from the underlying works upon which they are based,

and the copyright protection accorded to a derivative work "is independent of, and does not

affect or enlarge the scope [or] ownership...of...any copyright protection in the preexisting

_____

[4] In support of its argument that a similarity analysis of the *Rear Window* film is "unavoidable and essential," Plaintiff asserts that with respect to the Short Story and the *Rear Window* film, "defendants could not possibly separate out the 'new matter' from the underlying work." Opp. at 1 n.2 & 3, ¶ 1. However, separating out the Short Story from the *Rear Window* film is quite easy: a review the Short Story alone suffices.

material." 17 U.S.C. § 103(b); *Stewart v. Abend*, 495 U.S. 207, 224, 234-35 (1990) (the creation

of a derivative work does not extend or affect the scope of copyright protection for the original

work); *Weissmann v. Freeman*, 868 F.2d 1313, 1317-18 (2d Cir. 1989) (same); *Gilliam v. Am.

Broad. Cos.*, 538 F.2d 14, 19-20 (2d Cir. 1976) (a derivative program, such "as a dramatization

of [a] script," "would not affect the scope...of the copyright in the underlying script.").

      Finally, Plaintiff argues that the Court should compare the *Rear Window* film to

*Disturbia* because the Short Story is "in a different media than *Disturbia*." Opp. at 8, ¶ 2.

However, courts in the Second Circuit have compared written works to movies for years. *See

Flaherty*, 388 F. Supp. 2d at 274 (comparing screenplay with movie *Bringing Down the House*);

*Williams*, 84 F.3d 581 (comparing series of books with movie *Jurassic Park*); *Walker v. Time

Life Films, Inc.*, 784 F.2d 44 (2d Cir. 1986) (comparing book *Fort Apache* and movie *Fort

Apache: The Bronx*).[5] Here, the Short Story and *Disturbia* – a written story and a finished

motion picture – both contain fundamental elements (plots, characters, themes, dialogue, etc.)

that can be readily compared and contrasted.[6]

---

[5] *See also Historical Truth Prods.*, 1995 U.S. Dist LEXIS 17477, at *1-13, *19-35 (comparing
script *The Last Boxer* with movie *Universal Soldier*); *Arden*, 908 F. Supp. 1248 (comparing
novel *One Fine Day* with movie *Groundhog Day*); *Hudson v. Universal Pictures Corp.*, 2004
WL 1205762 *4 (E.D.N.Y. 2004) (comparing script *No Harm, No Foul* with movie *Life*);
*Kretschmer v. Warner Bros.*, 1994 WL 259814 *11 (S.D.N.Y. 1994) (comparing novella *The
Last Tribunal* with movie *Defending Your Life*).

[6] Neither of Plaintiff's citations support the notion that the Court should compare the *Rear
Window* film to *Disturbia*. Opp. at 8; *Castle Rock*, 150 F.3d 132 (not addressing the issue of
whether the Court should also compare a derivative work which the Plaintiff did not own);
*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995) (reviewing work, a scarf, which was an
unauthorized derivative of the plaintiff's work for the purpose of evaluating questions of access
and independent creation; not comparing the derivative work to the defendant's work).

**B.    Plaintiff's Arguments About Defendants' Alleged Access And Actual Copying Are Irrelevant To This Motion**

Plaintiff devotes much of its opposition to the issues of access and "actual copying," which are irrelevant to this motion. *See* Opp. at 4-6, 9-13, 16-18, 20.  For purposes of this motion, Defendants do not contest the issues of access and actual copying.  Rather, as is clear from the pleadings filed in connection with this motion, the only issue is whether Plaintiff can establish "unlawful appropriation" by demonstrating that the two works are substantially similar in terms of protectable expression.  *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir. 1992); *see also* Dkt No. 49, Notice of Motion at 1; Dkt No. 50, Par. Defs' Mem. at 1, 10 & 13; Dkt No. 51, Par. Defs. Sep. Stmt at ¶¶ 6-7 & n.1;  *see also* Dkt No. 79, Plaintiff's Stmt of Facts at ¶ No. 23 (page 5) (Plaintiff's express recognition of the narrow scope of this motion).[7] Copyright infringement defendants routinely do not contest access or copying, while seeking (and obtaining) summary judgment on the issue of substantial similarity alone.  *See* Dkt No. 50, Par. Defs' Mem. at 10 n.3 (listing cases where courts, assuming access and actual copying, granted summary judgment based upon finding of no substantial similarity).[8]

---

[7] The Paramount Defendants object to "Plaintiff's Statement of Material Facts" (Dkt No. 79).  Not only is this submission not authorized by any of the Federal Rules of Civil Procedure or by this Court's Local Rules, the alleged "facts" contained therein are either irrelevant to this motion (nos. 4-22, 24-85, 90-94, 98-99) or simply constitute further argument (nos. 86-89, 95-97).

[8] Plaintiff further argues that the Paramount Defendants' concessions of access and actual copying somehow "justify a lessened standard of...substantial similarity."  Dkt No. 65, Opp. at 4-5.  The theory Plaintiff postulates is called the "inverse ratio rule," and the Second Circuit has squarely rejected it.  *Arc Music Corp. v. Lee*, 296 F.2d 186, 187 (2d Cir. 1961); *Green v. Lindsey*, 885 F. Supp. 469, 480 (S.D.N.Y. 1992) (noting the Second Circuit's rejection of the inverse ratio rule, and stating that when the court assumes copying, the inverse ratio rule "is irrelevant"); *A Slice of Pie Productions, LLC v. Wayans Bros. Entm't*, 487 F. Supp. 2d 41, 47 n.4 (D.Conn. 2007) (noting Second Circuit's rejection of inverse ratio rule).  The cases Plaintiff relies upon for invocation of this theory relate to actual copying, rather than unlawful appropriation.  *See* Opp. at 5; *Tienshan, Inc. v. C.C.A. Int'l (N.J.), Inc.*, 895 F. Supp. 651, 656 (S.D.N.Y. 1995) (discussing how access can relate to the issue of actual copying, but not substantial similarity/unlawful appropriation); *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d (footnote continued)

C.    **Plaintiff's Purported Expert Testimony Is Irrelevant And Should Be Excluded**

In the Second Circuit, expert testimony is irrelevant and improper where, as here, the

only issue is whether unlawful appropriation occurred. *Laureyssens*, 964 F.2d at 140 (expert

testimony may be proper to show actual copying, but is "irrelevant when the issue turns to

unlawful appropriation"); *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946) (on the issue of

unlawful appropriation, "the test is the response of the ordinary lay hearer; accordingly, on that

issue,...expert testimony [is] irrelevant."); *Denker v. Uhry*, 820 F.Supp. 722, 723, 729 (S.D.N.Y.

1992 ("when improper appropriation is only at issue, in works such as these [novel v. movie]

expert testimony, such as that introduced by plaintiff, is irrelevant."); *Davis v. United Artists,*

*Inc.*, 547 F. Supp. 722, 724 & n.8 (S.D.N.Y. 1982) (expert affidavit regarding substantial

similarity "not properly considered"; listing cases).

Even courts outside the Second Circuit have recognized that expert testimony has no role

where, as here, the works at issue are literary works, expressed in plain English. *Stromback v.*

*New Line Cinema*, 384 F.3d 283, 295 (6th Cir. 2004) (where "the subject matter is not complex

or technical,...but instead involves a literary work aimed at a general audience, expert testimony

will seldom be necessary to determine substantial similarity"); *Kindergartners Count, Inc. v.*

*Demoulin*, 249 F. Supp. 2d 1214, 1232 (D. Kan. 2003) (expert testimony not needed "to compare

two literary works that are expressed in simple English" and an "expert opinion will not change

what each work is on its face"); *Costello v. Loew's Inc.*, 159 F. Supp. 782, 789 (D.D.C. 1958)

("No amount of expert...testimony could change the obvious content of the exhibits before the

---

548, 553-54 (2d Cir. 1984) (relating to actual copying).  Plaintiff's remaining authorities are
equally unavailing. *See Steinberg v. Columbia Pictures Indus.*, 663 F. Supp. 706, 714 (S.D.N.Y.
1987) (citing to inverse ratio principle in *dicta*, and relying upon NIMMER ON COPYRIGHT, which
now recognizes that the inverse ratio rule has been "completely rejected by the Second Circuit");
*see* 4 NIMMER ON COPYRIGHT § 13.03[D].

court."); *Murray Hill Pubs., Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 321 (6th Cir. 2003) ("while judges may not be qualified literary critics, [they] are fitted by training and experience to compare literary works and determine whether they evidence substantial similarity") (quotation omitted).[9]

The Court should evaluate the issue of substantial similarity based upon "its considered impressions upon its own perusal" of the two works, rather than the interpretations of the four "experts" retained by Plaintiff. *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930); *Davis*, 547 F. Supp. at 724-25 (refusing to consider an expert's opinion; finding no substantial similarity based upon the court's own "word-by-word reading of plaintiff's novel and a critical view of defendant's motion picture").[10] A review of the Short Story and *Disturbia*

---

[9] The cases cited by Plaintiff do not support its submission of any of its four (4) so-called "expert" opinions. Opp. at 3 n.4, 11 & 18; *see Computer Associates Int'l. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992) ("Since the test for illicit copying is based upon the response of ordinary lay observers, expert testimony is thus 'irrelevant' and not permitted."); *A Slice of Pie Productions*, 487 F. Supp. 2d at 48-50 (granting summary judgment due to lack of substantial similarity; rejecting Kenneth Dancyger's opinion of similarities between the two works); *Levine v. McDonald's Corp.*, 735 F. Supp. 92, 95-97 (S.D.N.Y. 1990) (propriety of expert testimony not raised; not relating to literary works, but rather relating to the "pitch," "rhythm", "harmony", "melody", "'patter' sections", "tempo" and "meter" of songs); *Business Mgmt. Int'l, Inc. v. Labyrinth Bus. Solutions, LLC*, 2009 U.S. Dist. LEXIS 24900 (S.D.N.Y. 2009) (not relating to literary works, but rather to complex computer codes and programs; propriety of expert testimony not raised); *Clonus Assoc. v. DreamWorks, LLC*, 417 F. Supp. 2d 248 (S.D.N.Y. 2005) (not discussing propriety of expert testimony, much less "consider[ing] the reports of Hunter and Dancyger," as Plaintiff claims, *see* Opp. at 3 n.4).

[10] Plaintiff's "experts" are particularly ill-suited to assist the Court with respect to this motion. Francis Nevins (alleged expert no. 1) does not address the issue of substantial similarity. A federal court recently excluded Kenneth Dancyger (alleged expert no. 2) on the grounds that he "is not competent to testify" as to the issue of substantial similarity; he "admitted to not knowing the difference between expression and ideas as those terms apply to copyright law" and that he did not know "what the term scenes a faire means". *Price v. Fox Entm't Group, Inc.*, 499 F. Supp. 2d 382, 389 (S.D.N.Y. 2007). Both Thomas Renzi (alleged expert no. 3) and Lewis Hunter (alleged expert no. 4) draw upon the *Rear Window* film in order to increase the alleged similarities, and Mr. Hunter's alleged relationship with (and odd channeling of) Alfred

(footnote continued)

resolves the question of substantial similarity: they are radically different stories.

**D.    Plaintiff's Reliance On Media Articles Is Legally Unsupportable**

Plaintiff also relies heavily upon media articles reciting so-called "spontaneous reactions" of film critics. Opp. at 1, 6, 10, 12, 16-17; Townsend Decl. at Exs. I 1- I 14, J1-J22, Ex. R 1 – R 7. Such articles and the purported views of such critics are not only hearsay, but also irrelevant to this motion.

Courts have found such articles to be entirely without relevance in copyright cases. *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 378 (5th Cir. 2004) (excluding newspaper articles offered as alleged proof that audience members believed the two works were substantially similar); *Survivor Productions LLC v. Fox Broad. Co.*, 2001 WL 35829267, at ** 3-4 (C.D. Cal. 2001) (opinions of similarity in trade publications and newspapers stricken as immaterial to copyright infringement); *Crane v. Poetic Prods.*, 593 F. Supp. 2d 585, 595 (S.D.N.Y. 2009) ("[T]he opinions of third parties in secondary materials are irrelevant, as comparison of secondary or descriptive materials cannot prove substantial similarity."); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 567 (C.D. Cal. 2005) (striking alleged media quotes that one television program was a "rip off" of a prior program because such quotes "are legally irrelevant to the issue of substantial similarity").

In *Survivor Productions*, the court granted a motion to strike media quotes which were virtually identical to those proffered by Plaintiff here. The producers and broadcasters of the *Survivor* television series alleged that the television series *Boot Camp* infringed the copyright in *Survivor. Survivor Productions*, 2001 WL 35829267, at *1. The complaint included "extensive

---

Hitchcock is patently irrelevant. To the extent any of these purported experts compare the characteristics of the works at issue, they fail to apply the controlling legal standards.

quotations from various entertainment industry trade publications and newspapers, which describe[d] the two programs and detail[ed] the purported similarities between them." *Id.* The plaintiffs also attached to the complaint articles that described *Boot Camp* as "a 'ripoff' of *Survivor.*" *Id.* The district court struck the articles from the record, because they "amount to nothing more than a post-hoc analysis of similarities between the programs by news reporters, unguided by the legal standards that govern the comparison of the two works under copyright law." *Id.* at *3-4.

The articles submitted by Plaintiff – frequently discussing the film *Rear Window,* as opposed to the Short Story – also "amount to nothing more than a post-hoc analysis" by persons unguided by copyright law.[11]  Thus, articles quoting third-party critics applying their own standards of similarity have no bearing on this motion.[12]

### E.    Prior Drafts Of *Disturbia* Are Irrelevant To This Motion

Federal courts have repeatedly held that only the final version of a work, as presented to the public, is to be considered in evaluating whether an allegedly infringing work is substantially similar to a plaintiff's work. *Walker,* 615 F. Supp. at 434 n.2 & 436 (refusing to consider draft scripts of a movie, stating that "[i]n determining substantial similarity, the court must only

---

[11] As the Second Circuit has explained, the copyright concept of "substantial similarity"

is not a concept familiar to the public at large. It is a term to be used in a courtroom to strike a delicate balance between the protection to which authors are entitled under an act of Congress and the freedom that exists for all others to create their works outside the area protected against infringement.

*Warner Bros. Inc.*, 720 F.2d at 245.

[12] A few of Plaintiff's articles purport to quote from persons involved with the making of the movie *Disturbia. See, e.g.,* Opp. at 1, 10-12 (quoting article which, in turn, purported to quote actor Shia LaBouef). Like the other articles, such articles are irrelevant to the issue of substantial similarity. They also constitute inadmissible hearsay. FED. R. EVID. 801 *et seq.*

consider the works in their entirety and final form as presented to the pubic" and, thus, "the court

need consider only the final version of the film as presented to the viewing public"); *Davis*, 547

F. Supp. 722, 724 n.9 & 724-25 (S.D.N.Y. 1982) ("Since the ultimate test of infringement must

be the film as produced and broadcast, we do not consider the preliminary scripts"; reviewing

only plaintiff's novel and defendants' movie); *Fuld v. Nat'l Broad. Corp.*, 390 F. Supp. 877, 882

n.4 (S.D.N.Y. 1975) (refusing to consider defendant's preliminary scripts because "the ultimate

test of infringement must be the television film...as broadcast – and not the preliminary scripts").

　　　In an attempt to bolster its claim of similarity, Plaintiff relies upon alleged preliminary

draft screenplays for the movie *Disturbia*. Opp. at 12, 20-21; Townsend Decl. at Exs. G & Z

(citing to unauthenticated draft screenplays). Such drafts are not relevant to the substantial

similarity analysis with respect to the movie *Disturbia*.

**F.    Plaintiff's Straw-Man "Originality" Argument Is Off Point**

　　　Plaintiff attacks several straw-man arguments, including whether Woolrich copied

elements of the Short Story from prior literary works (*e.g.*, *Through A Window* by H.G. Wells),

and whether the Short Story's copyright could be invalidated for lack of originality. Opp. at 6-7,

27-30. The Paramount Defendants, however, did not raise either of those issues in their motion.

　　　Plaintiff fails to understand the significance of the prior works mentioned in the

Paramount Defendants' motion. *See* Docket No. 50, Par. Defs' Mem. at 2-3. The previously

published works are cited to demonstrate that Plaintiff's alleged similarities are nothing more

than general ideas, stock situations, scenes-a-faire, and other non-protectable elements

commonly found in other works. *See, e.g., Boone v. Jackson*, 2005 U.S. Dist. LEXIS 13172, at

\*12-\*13 (S.D.N.Y. 2005) (summary judgment granted where allegedly similar elements were

also found in other works, thus demonstrating the "unprotectable nature" of the alleged

similarities); *Historical Truth Prods.*, 1995 U.S. Dist. LEXIS 17477, \*21, \*27, \*34 (considering

prior works such as Superman and James Bond in determining that alleged similarities were nothing more than formulaic, "unoriginal and uncopyrightable stock elements of the action-adventure and science fiction film genres").

While the Paramount Defendants' motion did not dispute the validity of Plaintiff's copyright in the Short Story, the fact "that a whole work is copyrighted does not mean that every element of it is copyrighted; copyright protection extends only to those components of the work that are original to the creator." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992). Plaintiff's copyright cannot protect *ideas* embodied in the Short Story, but protects only "the original or unique way that an author expresses those ideas." *Id.* at 308. Where the alleged similarities in two works do not pertain to the author's unique concrete expression, but only to commonplace ideas, concepts, story premises, stock situations, and scenes-a-faire, there is no infringement. *Id.*

Because Plaintiff's alleged similarities are story ideas, plot concepts, and stock literary devices appearing in preexisting works, these elements remain unprotectable regardless of whether Woolrich used those prior works as source material or created the Short Story independently. *See Laureyssens*, 964 F.2d at 141 (excluding from the substantial similarity analysis elements of plaintiff's copyrighted works that had appeared in previously published works; explaining that even if plaintiff independently created his work, the "copyright extends only to his particular expression of the idea" but not to elements commonly found in other works in the genre). Where the allegedly similar elements are nothing more than "venerable and often-recurring themes of [the genre], they are not copyrightable except to the extent they are given unique – and therefore protectible – expression in an original creation." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986).[13] The fact that the plot ideas and stock situations

---

[13] Courts routinely examine prior works to evaluate whether alleged similarities relate to (footnote continued)

found in Plaintiff's Short Story are also found in H.G. Wells' *Through A Window* and other

works published decades earlier, shows that these elements are too generic or common to qualify

as Plaintiff's exclusive protectable expression.[14]

## IV.    *DISTURBIA* IS NOT SUBSTANTIALLY SIMILAR TO THE SHORT STORY

### A.    **The Basic Plot Premise Is Unprotectable And Expressed Differently In *Disturbia* and The Short Story**

The basic plot premise of the Short Story, as described by Plaintiff itself, is not

protectable as a matter of law.  Plaintiff's opposition papers describe the basic plot premise of

the Short Story in two ways: (1) "The binding concept/core/root" is "[a] homebound voyeur

suspects his neighbor across the way to be a murderer of women"; and (2) the "basic concept [is]

a man sees what he thinks is circumstantial evidence of murder.  And having nothing else to do,

because of his incapacity, he begins to speculate on the possibilities of murder.  He tries to

---

nonprotectable elements.  For example, in *A Slice of Pie Productions*, the court examined several previously released films that used the very same plot and character concepts found in both parties' works to point out that such commonly used themes and characters are unprotectable. 487 F. Supp. 2d at 48 ("the overall concepts underlying both works – FBI agents working undercover, African American characters disguising themselves as Caucasian characters, and men disguising themselves as women, were non-novel concepts used in the film industry long before plaintiff's authors drafted the screenplay (*e.g.*, in, respectively, *Miss Congeniality*, *The Associate* and *True Identity*, and *Some Like It Hot*, *Tootsie*, and *Mrs. Doubtfire*).").  Similarly, in *Brown v. Perdue*, the alleged similarities consisted entirely of "unprotectible ideas…and general themes that do not represent any original elements of [plaintiff's] work," including "unprotectible stock themes common to the genre" and elements that "find their origin in…preexisting works."  2005 U.S. Dist. LEXIS 15995, *22 & *27 (S.D.N.Y. 2005); *Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 546-47 (S.D.N.Y. 2007) (alleged similarities also found in "a number of third party works" were unprotectable "stock elements…, or general elements of the…genre, or plot elements that naturally flow from the similar idea of the two works").

[14] Alleged similarities that also appear in the H.G. Wells story include the protagonist's incapacitation due to a leg injury; confinement to his home resulting in boredom, which prompts him to watch the activities outside his window for entertainment; seeing a murderer; learning information about the murderer from another character (servant/housekeeper); being threatened when the murderer invades the protagonist's home; and ultimately defeating the murderer with outside assistance.  Docket No. 52, Brenner Decl., Ex. C.  Other prior works include watching a potential murderer out of a window and also feature the general theme of voyeurism.  *Id.* at Exs. C-F.

interest other people in his search for truth.  And eventually, comes upon a real murder which

now threatens his life." *See, e.g.,* Dkt No. 69, Hunter Decl. at 14, ¶ 2 & 6, ¶ 1, 7 ¶ 1.  Even

assuming, *arguendo*, that Plaintiff accurately described the Short Story's basic plot concept, that

"basic concept" is not protectable as a matter of law.  *Nichols*, 45 F.2d at 122 (a plaintiff can

have no "monopoly" over a general plot idea); *Arden*, 908 F. Supp. at 1259-60 (generalized plot

ideas are not protected); *Davis*, 547 F. Supp. at 726 (general plot idea for a story not protectable);

*Berkic v. Crichton*, 761 F.2d 1289, 1299 (9th Cir. 1985) ("[n]o one can own the basic idea for a

story").

      Moreover, reviewing the elements that Plaintiff identifies as the "basic concept" of the

Short Story, it also becomes clear that the expression of that basic concept in the Short Story and

*Disturbia* is dramatically dissimilar:

      (a) "homebound": In the Short Story, Jeffries cannot walk.  He can move only from the
bed to a chair in his bedroom because his leg is in a cast.  He cannot even "get up out of [his]
chair" by himself.  Brenner Decl., Ex. A, Short Story at 23.  The apartment in the city where he
is staying is not his "home"; it still has the belongings of others, and he does not even know what
some of them are (e.g., the bust).  Jeffries is physically stuck in a corner of an apartment with
only one window to the world.  In contrast, Kale in *Disturbia* has great mobility and is not bound
to his suburban, multi-level home or even to his property – although there are legal consequences
when he strays too far from his house.  Kale moves freely from room to room and from window
to window, chases kids down the street, goes outside by the hedges, jumps into Ashley's pool
and runs next door into a serial killer's house.

      (b) "voyeur": Although the protagonists of each work are radically dissimilar, Plaintiff
argues that each generally is a voyeur.  Even with respect to this purported voyeurism, the
characters are different.  The protagonist in *Disturbia* (Kale) is a typical 17-year-old boy with a
great deal of sexual interest.  Kale remarks about the physique of a maid and another woman
walking down the street (Dkt No. 52, Brenner Decl., Ex. B, 23:30 – 23:36), observes a neighbor
having an affair, watches longingly while Ashley swims and undresses, and sees young boys
viewing adult content on television.  In the Short Story, by contrast, Jeffries is a completely
different type of "voyeur," showing no interest in sexual matters at all.  Instead, he carefully
observes and methodically analyzes his surroundings.

      (c) "suspects his neighbor across the way":  As expressed in the Short Story, Jeffries is
initially drawn to observe Thorwald out of empathy for the man and his sick wife.  Jeffries does
not even know Thorwald's name.  Nor is Thorwald a real "neighbor," since Thorwald is merely
one tenant in a wall of apartments across a courtyard in a city.  On the other hand, in *Disturbia*,
Kale and Turner are true neighbors; Turner's house is right next door to Kale's house.  In

contrast to Jeffries' initial empathetic interest in Thorwald, Kale's attention is not drawn to Turner until he sees a news report about a serial killer and notices that Turner's car matches the description of the killer's car.

(d) "murderer of women": In the Short Story, Thorwald murders *one woman* – his sickly wife – both because he has a mistress/accomplice and because he wants the life insurance money. He is a one-time killer, and an amateur one at that. The killer in *Disturbia*, in contrast, is a seasoned serial killer who has killed numerous women (usually redheads, plus one male policeman), who has eluded capture in several states, and who maintains a gory museum of souvenirs from his many victims.

(e) "circumstantial evidence of murder": There is no similarity between the Short Story's expression that Thorwald has killed his wife and the expression in *Disturbia* that Turner is a serial killer. In the Short Story, Jeffries' suspicions are based entirely upon his keen observations of Thorwald's most minute behavior (*e.g.*, not removing his hat when entering his apartment, the particular way he scans the surrounding area, the meaning of his lighting a cigarette or having a drink). In contrast to these very subtle clues, *Disturbia* shows blood splattering on a window as Turner kills a woman he lured to his house, a decomposing human head, and other blatant events. A man's killing of his sickly wife is different from the multiple murders in *Disturbia*: serial killing, a human dissection chamber and dead bodies floating around in a watery basement repository.

(f) "having nothing else to do": This concept is true of the Short Story, but not of *Disturbia*. Unlike Jeffries, Kale is expressed doing many other things besides spying on Turner: he watches TV, plays video games, listens to music, talks to his friend Ronnie on the telephone, looks at the newspaper, chases after kids down the street, plots revenge against the kids, cooks for himself, does his own laundry, surfs the Internet, and woos Ashley. Jeffries engages in none of these activities and is physically incapable of doing many of them.

(g) "because of his incapacity, he begins to speculate on the possibilities of murder": Jeffries is immobile because of his leg cast – he cannot get out of his chair. This physical incapacity provokes his reflective, cerebral analysis of his surroundings. After watching and analyzing Thorwald carefully for some time, Jeffries – completely on his own – begins to suspect that a murder has occurred. This expression finds no parallel in *Disturbia*, where Kale is a very mobile teenager, not physically incapacitated, who moves (often running) from place to place. The suspicion of murder enters Kale's mind not from his own reflective analysis of his surroundings, but from a newscast – which describes the serial killer's car as a Mustang.

(h) "He tries to interest other people in his search for truth": In the Short Story, Jeffries contacts police detective Boyne (an old friend) in order to spur an official police investigation. Jeffries does not try to "interest" anyone else in the "search," and pointedly refuses to tell his houseman Sam why he is being asked to do anything. In contrast, Ronnie and Ashley in *Disturbia* are both heavily involved in Kale's "investigation," which starts out as a fun-and-games stake-out of Turner.

(i) "eventually, comes upon a real murder": Jeffries never sees the deceased Mrs. Thorwald, and only circumstantial evidence suggests that a murder has occurred. Kale, by contrast, sees a dead woman's face in a vent, investigates Turner's secret human dissection room, and comes upon dead bodies floating in a subterranean pool.

(j) "which now threatens his life": The murderer's threat to the protagonist is expressed in very dissimilar manners in the two works. In the Short Story, Thorwald acts rashly and impulsively in attacking Jeffries at the end of the story. He is an amateur, one-time killer who is trying to stop Jeffries from "blackmailing" him. Because Jeffries is largely immobile, he puts a bust on his head to give Thorwald a false target to shoot at in a darkened room. The police arrive, shoot Thorwald, and save Jeffries. In *Disturbia*, Turner sets up an elaborate plan to frame Kale for killing his own mother, and then to make Kale look like a victim of suicide. Kale escapes due to the timely arrival of Ashley, and in scenes with no parallels in the Short Story, Kale rushes into Turner's house, walks through the secret human dissection room, and attempts to free his mother (who has been tied up). Kale and his mother then fight off Turner, who may or may not end up dead. Throughout this final struggle, the police never help Kale in any way.

Where, as in this case, two works are markedly dissimilar beyond the level of generalization, the works are not substantially similar as a matter of law. *See Denker*, 820 F.Supp. at 730 (finding no infringement even where both works shared general plot idea "about an elderly, white Jewish person, who, in the face of advancing age and resulting loss of independence, requires the assistance of a black helper, and after initial resistance, develops a friendship with the helper," but were different beyond that "level of abstraction"); *Hudson v. Universal Studios, Inc.*, 2008 U.S. Dist. LEXIS 86146 *6 (S.D.N.Y. 2008) ("If the similarity between two works rests solely on a shared underlying idea, rather than the particular way in which that idea has been portrayed, there is no 'substantial similarity.'"). For example, in *Williams*, the author of the book series *Dinosaur World* sued the author of *Jurassic Park* for copyright infringement. 84 F.3d at 584. The two works shared many similar ideas. Both works were about a dinosaur zoo, and both stories centered on a small group of individuals, including a knowledgeable adult guide and young dinosaur enthusiasts. *Id.* at 589. Both depicted harrowing encounters with carnivorous dinosaurs from which the human characters escaped, via helicopter, through the combined wit of the children and adults. *Id.* However, "those scenes that appear[ed] similar in their abstract description prove[d] to be quite dissimilar once examined in any detail." *Id.* at 590. There were also "many differences" in the characters "beyond the superficial

similarities" such as their age, gender, and the fact that the children were siblings. *Id.* at 589. Because the two works "were similar only with respect to the general ideas they depicted and not the way they expressed those ideas, there was no substantial similarity as a matter of law." *Hudson*, 2008 U.S. Dist. LEXIS 86146 at *7. The same is true of the Short Story and *Disturbia* – the two works tell different stories.

## B.      The Sequences Of Events Of The Two Works Are Dissimilar

Plaintiff's assertion that the two works contain a similar sequence of events is belied by the two works themselves and by Plaintiff's own admissions. Plaintiff concedes that:

> *Disturbia* contains numerous subplots and moving parts, including: Kale's relationships with his father, his mother and teacher; Kales' depression and crushing sadness over the loss of his beloved father; his new romance with Ashley; Ashley's minefield existence with her parents who have their own problem with infidelity; the tentative friendship of Turner and Kale's mother; the punitive actions of Officer Gutierrez; Kale's feud with young neighbors; and Turner's serial killing.

*See* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at page 36. These subplots are not only events that drive the storyline in *Disturbia*, they also demonstrate that the sequences of events between the two works are starkly dissimilar. No similar events occur in the Short Story (which has no subplots in the first place), much less in a similar order.[15]

Acknowledging the difference in the sequences of events between *Disturbia* and the *Short Story*, Plaintiff asserts that "[t]his pattern and sequence is calculated to be dissimilar to that of the *Rear Window Story* as they 'update' the story for the 'youtube generation.'" *See* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at page 36. Whether "calculated" or not, the numerous subplots featured in *Disturbia* (but wholly lacking from the Short Story) reveal that the

---

[15] Plaintiff attempts to contest the fact that the Short Story has no subplots by claiming that the Short Story has one "minor" subplot – "the newlyweds." *See* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at page 19. Plaintiff's argument is unavailing because no similar event or subplot occurs in *Disturbia*.

sequence of events in the two works is dissimilar. *Warner Bros., Inc. v. Am. Broad. Cos., Inc.*, 654 F.2d 204, 210-11 (2d Cir. 1981) ("numerous differences tend to undercut substantial similarity" and, as such, "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work that would otherwise be regarded as substantially similar to plaintiff's"); 4 NIMMER ON COPYRIGHT § 13.03[B][1][b] (same).[16]

**C.    Plaintiff's Citation To A General Common Theme Cannot Support An Infringement Claim**

Plaintiff does not dispute that general themes, and themes which flow from a basic plot situation, are not protectable. *See* Dkt No. 50, Par. Defs' Mem. at 17. Plaintiff also does not dispute that the theme of generational rift and youthful rebellion runs throughout *Disturbia*, but not the Short Story. *Id.; c.f.* Opp.; *see also* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at pages 36-37 & 61 (Plaintiff's admission that *Disturbia* exhibits a "teenage attitude of disrespect to a parent(s) and authority figures").

Nevertheless, Plaintiff argues that the two works both contain the "themes" of "voyeurism and stalking". Opp. at 9, ¶ 2; *see also* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at pages 20-21 (stating that the common theme is "voyeurism"). Such themes, however, are "too common and general ... to even approach the degree of concreteness and

---

[16] In an attempt to create the appearance of a similar sequence of events, Plaintiff offers several lists and DVD's of alleged "sequential similarities." *See* Townsend Decl., Ex. A, Ex. B, BB, CC; Renzi Decl., Ex. A at 1 (Plaintiff's "sequence of events" list, which Plaintiff acknowledges is offered "despite some dissimilarity in the details"). Plaintiff's lists and DVD's are precisely the sort of lists of purported similarities which courts have long been discredited and consistently disregarded. *See* Dkt No. 50, Par. Defs' Mem. at 24-25 (listing cases). Indeed, in order to create these lists and DVD's, Plaintiff dismisses substantial sections of *Disturbia*'s plot and numerous significant events as "detail," ignores plot points essential to the Short Story that are missing from *Disturbia*, juxtaposes generalization upon generalization about the works taken out of context, provides misleading descriptions and outright misstatements of the works' contents, and then repeats them over and over again. Although Plaintiff's lists and charts should not be considered, out of an abundance of caution, the Paramount Defendants submit a chart responding to Plaintiff's alleged "sequence of events" list. *See* Attachment, Responsive Chart.

particularity deserving of copyright protection." *Warner Bros.*, Inc., 654 F.2d at 209.[17]  In

support of its argument about the theme of voyeurism, Plaintiff cites to the following exchange

from *Disturbia* where Kale and his father talk about catching a fish – "Kale: 'Do you think he

sees us?' Father: 'No. He can't see us. But trust me, he can feel us watching.'" Opp. at 9, ¶ 2.

However, nothing remotely similar to this exchange occurs in the Short Story.

**D.      The Characters Are Different And Utter No Similar, Protectable Dialogue**

Plaintiff does not (and cannot) argue that the antagonists of the two works are similar.

*See* Opp.  Plaintiff also concedes that Kale's parents (each of whom drives the plot forward in

*Disturbia*) have no counterparts in the Short Story.  Dkt No. 77, Plaintiff's Stmt In Opp. to L.R.

56.1 Stmt at page 35.

Instead, Plaintiff argues that Kale is like Jeffries because each is a "single male

confined." Opp. at 24; *see also* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at page

20.  Other than at the most generalized level (gender, marital status and so-called "confined"

status), Plaintiff could locate no identifiable similarities between these two characters.  Even

their "confinement" is highly dissimilar.  *See* Dkt No. 50, Par. Defs' Mem. at 19-20.  Such a

general trait between two characters cannot support an infringement claim.  *See* Dkt No. 50, Par.

Defs' Mem. at 18-19; *c.f.* Opp.

Plaintiff also argues that Ashley and Ronnie "are equivalent to the houseman, Sam".

Opp. at 24; *see also* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at page 19 & 23.

---

[17] Prior art makes clear that the alleged "voyeurism" theme identified by Plaintiff is too generic
to be protectable.  Like Plaintiff's Short Story, H.G. Wells' story *Through A Window* features a
protagonist who is confined to his home because his legs are bandaged.  Brenner Decl., Ex. C at
59, 55, 70 & 72.  Although it can be "dull," H.G. Wells' protagonist watches people from his
window in order to pass the time, and has developed "a wonderful eye for details" about the
world outside his window.  *Id.* at 59-61.  Voyeurism (including watching a neighbor) was also
previously featured in *The Sand Man. Id.*, Ex. F at 202-03.

However, Sam bears no resemblance whatsoever to either Ashley or Ronnie, and certainly does not equate to both of them. The Short Story expresses the character of Sam as follows: he is Jeffries' "day houseman" of 10 years who serves Jeffries "eggs and morning paper"; he carries out Jeffries' tray of food; he is superstitious that the sound of crickets is a "sign of death"; he accepts a firm "None of your business" as an answer to a question; and he is told not to ask any questions. Dkt No. 52, Brenner Decl., Ex. A at 3-5, 7, 9-10, 14-15, 18-19.

The use of Sam to gather information (Thorwald's address), and the use of Ronnie and Ashley to investigate is no more than an unprotectable scene-a-faire.[18] Moreover, the expression in the two works is quite different. In *Disturbia*, Ronnie and Ashley are both deeply involved in Kale's investigation of Turner, which Ashley suggests be done as a fun stake-out with food. Ashley follows Turner through a store, and Ronnie sneaks into Turner's home to investigate a bloody blue bag and retrieve his cell phone. In contrast, Sam simply does as he is told, and is never given any information as to why he is told to do the three specific acts which he performs: (1) get an address, (2) slip a note under Thorwald's door and (2) mess up Thorwald's apartment — none of which happen in *Disturbia*.

In addition to these character differences, Plaintiff cannot point to any dialogue that would indicate a protectable similarity between the works. Plaintiff identifies one alleged similarity in dialogue: each protagonist is allegedly told that he has "gone too far." Opp. at 25, ¶ 2. Such common phrases are not protectable under copyright. *Boyle v. Stephens, Inc.*, 1998 U.S. Dist. LEXIS 1968 at *7 (S.D.N.Y. 1998); 37 C.F.R. § 202.1(a). In any event, Plaintiff has

---

[18] It naturally follows that if the protagonist is confined within his residence, then he will need assistance from the outside to gather information. Even H.G. Wells had the confined protagonist's housekeeper, Mrs. Green, report to him news of a murderer from outside the residence in *Through A Window*. Dkt No. 52, Brenner Decl., Ex. C at 61-69.

misquoted the dialogue in both works. In *Disturbia*, Ashley complains, "This has gone way too far" after Turner has cornered her in her car and scared her. Dkt No. 52, Brenner Decl., Ex. B, *Disturbia* at 1:08:24. In the Short Story, Inspector Boyne warns "There's such a thing as going too far." *Id.*, Ex. A, Short Story at 13-14. Further, these different unprotectable phrases are stated by two very different characters (Ashley v. Boyne). Finally, any overlap in the dialogue "gone way too far" versus "going too far" is *de minimis*, at most.

**E.     The Pace Of The Two Works Is Different**

Plaintiff does not dispute or otherwise respond to the Paramount Defendants' opening brief regarding the different pace of the two works. *See* Dkt No. 50 at 21-22; *c.f.* Opp.

**F.     The Moods Are Different**

Plaintiff does not dispute that "the works are in different genres" and that "*Disturbia* is a blend of a 'teen angst' melodrama …along with genres of a thriller, teen romance, and teen comedy," in contrast to the Short Story's "unplugged and claustrophobic world." Opp. at 13; *c.f.* Dkt No. 50 at 22. Plaintiff further concedes that it is "[u]ndisputed that the *Disturbia* film has a youthful feel." *See* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at page 37; *see also* Opp. at 14. Notwithstanding these concessions, Plaintiff argues that these major differences between the two works should not count because "[t]his constitutes a calculated dissimilarity for a different audience." *See* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at page 37. Whether calculated or not, calculated dissimilarities are dissimilarities as a matter of law. *Warner Bros.*, 654 F.2d at 210-11.

**G.     The Settings Are Different**

Plaintiff does not dispute the Paramount Defendants' description of the substantially different settings of the two works. Dkt No. 50 at 23 (describing *Disturbia's* numerous settings, such as the street, Kale's multi-level suburban house, Ashley's pool, a courtroom, a classroom, a river, a mountain road, a store, a parking garage, Turner's human dissection room, Kale's

father's office in contrast to the Short Story's stoop house apartment); *c.f.* Opp. at 25. Plaintiff further concedes that there is a difference in "geographical location – 1942 Manhattan versus 2007 suburbia" (although the Short Story does not mention Manhattan). Opp. at 25, ¶ 3.

Despite these concessions, Plaintiff argues that the setting is "the upstairs window of the protagonist." *Id.* Even if Plaintiff's argument was accurate (it is not), such a setting is far too general to be protectable. *Flaherty*, 388 F. Supp. 2d at 288-89 ("Any similarity in the settings of the two movies, such as the fact that both contain scenes set in a law office, are too general to be protectable."). The general, unprotectable nature of the "upstairs window" of the protagonist is demonstrated by the fact that the H.G. Wells' story *Through A Window* has the same setting.

## H.  Plaintiff's Argument About A "Sequence and Pattern" of Unprotectable Elements is Meritless

Plaintiff argues that the Paramount Defendants copied "the pattern or sequence [or] compilation" of unprotectable elements in the Short Story. Opp. at p. 19 (citing *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002)). Plaintiffs' reliance on this sequence and pattern argument (and on *Metcalf*) is misplaced.

Plaintiff cannot cite one Second Circuit decision holding that a sequence or pattern of unprotectable elements in a literary work can support a claim for copyright infringement. *See* Opp. Courts in this and other circuits have repeatedly rejected *Metcalf*'s notion that copyright protection extends to a sequence of unprotectable elements in literary works, essentially limiting that Ninth Circuit case to its peculiar facts — where the works exhibited numerous common unprotectable elements, "striking[ly]" similar in their detail, as well as "common patterns" among those "striking" similarities. *Metcalf*, 294 F.3d at 1073-74; *see also CBS Broad. Inc. v. ABC, Inc.*, 2003 U.S. Dist. LEXIS 20258, at *24-25 (S.D.N.Y. 2003) ("providing protection to a combination of generic elements without more…would stifle innovation and would stifle the creative process that spawned the two [works] at issue here"); *Rice v. Fox Broad. Co.*, 330 F.3d

1170, 1178-79 (9th Cir. 2003) (rejecting plaintiff's *Metcalf* claim because the case did not

present "the same pattern of generic similarities"); *Pino v. Viacom Inc.*, 2008 U.S. Dist. LEXIS

24453, at \*22 (D. N.J. 2008) ("Here, Plaintiff does not allege or identify any sequence of

uncopyrightable elements in [defendant's work] that is similar to any in [plaintiff's work] so as

to approach the extent of similarity and identity in *Metcalf*. At best, Plaintiff lists random

similarities."); *Zella v. The E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1138 (C.D. Cal. 2007)

("Many courts have been reluctant to expand this concept [of copyright protection for a sequence

of unprotectable elements] beyond the clear-cut case presented in *Metcalf*."); *Identity Arts v. Best

Buy Ent. Servs. Inc.*, 2007 U.S. Dist. LEXIS 32060, 2007 WL 1149155, at \*5 (N.D. Cal. 2007)

(rejecting *Metcalf* claim because "in *Metcalf*, the 'many' generic similarities and patterns present

in the works in question were much more voluminous and specific than in this case").

    In order to prove infringement by relying upon a pattern of unprotectable similarities, a

plaintiff must show that the defendant's work copied the entire unique selection and arrangement

with "no more than trivial differences" between the works. *O.P. Solutions, Inc. v. Intellectual

Prop. Network Ltd.*, 1999 U.S. Dist. LEXIS 16639 \* 20 (S.D.N.Y. Oct. 19, 1999) (quoting *Key

Publ'ns, Inc.*, 945 F.2d 509, 514 (2d Cir. 1991)); *see also Lipton*, 71 F.3d at 474 (2d Cir. 1995)

(finding infringement of compilation of unprotectable elements based on defendant's having

copied "virtually plaintiff's entire compilation"); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726,

728-29 (8th Cir. 2002) (where a plaintiff relies upon unprotectable elements, "it takes virtually

extensive verbatim copying to constitute infringement") (quotations omitted); *Cano v. A World

of Difference Inst.*, 1996 U.S. Dist. LEXIS 8161 at \*11 (N.D. Cal. May 31, 1996) (a combination

of unprotectable elements warrants "only the thinnest protection against virtually identical

copying of the selection, arrangement and expression" of those elements).

Plaintiff cannot show that *Disturbia* appropriates the entire selection and arrangement of the Short Story "with no more than trivial differences," or that it represents "virtually identical copying of the selection, arrangement and expression." Unlike the *Metcalf* case, Plaintiff has identified not one "striking" similarity between *Disturbia* and the Short Story.

**I.     The Works Are Substantially Different In Total Concept And Feel**

*Disturbia* is substantially dissimilar from Plaintiff's Short Story in its total concept and feel. Even accepting, *arguendo*, Plaintiff's characterization that the two works share the unprotectable "basic concept" of "[a] homebound voyeur suspects his neighbor across the way to be a murderer of women," the two works' expressions of that concept are vastly different. Every aspect of Plaintiff's so-labeled "basic concept" is treated differently in the two works with different stories, different characters and different dialogue. In addition, Plaintiff concedes that *Disturbia* has numerous subplots and moving parts, while the Short Story does not. Finally, the adult, serious "feel" of the Short Story bears no resemblance to the youthful, teenage feel of *Disturbia*. *See* Dkt No. 77, Plaintiff's Stmt in Opp. to L. R. 56.1 Stmt at page 37; Opp. at 14 (it is "[u]ndisputed that the *Disturbia* film has a youthful feel"). The two works are dissimilar.

## V.     CONCLUSION

For all the foregoing reasons, as well as those previously advanced, the Paramount Defendants respectfully request that their motion for partial summary judgment be granted.

LAW OFFICES OF SCOTT GOLDFINGER        WHITE O'CONNOR FINK & BRENNER LLP

Dated: July 7, 2009                              By:      s/Lee S. Brenner
                                                                 Attorneys for the Paramount Defendants