UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

THE SHELDON ABEND REVOCABLE TRUST, :    CASE NO. 08-CIV-7810 (LTS)(JCF)
                                        :    ECF Case

         Plaintiff,               :
                                          :

         - vs. -                  :
                                          :

STEVEN SPIELBERG; DW STUDIOS, LLC    :    **ORAL ARGUMENT REQUESTED**
(formerly known as DREAMWORKS, LLC);    :
PARAMOUNT PICTURES CORPORATION;     :
VIACOM, INC.; UNITED INTERNATIONAL    :
PICTURES, B.V.; PARAMOUNT HOME      :
ENTERTAINMENT, INC.; DREAMWORKS     :
HOME ENTERTAINMENT; MONTECITO      :
PICTURE COMPANY, LLC; COLD SPRING    :
PICTURES, LLC; UNIVERSAL PICTURES     :
INTERNATIONAL, GmbH, and DOES 1-10,    :
                                          :

         Defendants.             :

---------------------------------------------------------------x

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**(1) NOTICE OF FILING THE DECLARATION OF NATALIE FINN**
**AND ROBERT MAGDLEN (DKT. NO. 116);**
**(2) DECLARATION OF MATTHEW S. BROWN (DKT. NO. 119); AND**
**(3) NOTICE OF FILING OF VIACOM INC.'S RESPONSES TO**
**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS (DKT. NO. 118)**

---

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................ 1

II.  PLAINTIFF'S FILINGS MAY BE CONSIDERED ........................... 2

   A.  Affidavits May Be Filed Anytime Before Hearing ..................... 2

   B.  The Court Has Discretion To Permit The Filings ...................... 3

      1.  Good Cause Exists ...................................................... 3

      2.  Excusable Neglect Exists ............................................ 4

         a.  No Danger of Prejudice to the Defendants .............. 4

         b.  There Is No Delay Resulting From Plaintiff's Filings ........ 4

         c.  Defendants Engaged In Discovery ......................... 5

         d.  Plaintiff Acted In Good Faith .............................. 6

         e.  There Is No Delay As Discovery Continued While Parties
            Engaged In Settlement Negotiations ....................... 7

III.  PLAINTIFF'S FILINGS ARE ADMISSABLE AND
    SHOULD BE CONSIDERED ................................................. 7

   A.  Plaintiff's Filings of the Declarations Is Admissible ................. 7

      1.  The Declarations of Natalie Finn & Robert Magdlen Are Admissible ... 9

      2.  The Declaration of Matthew S. Brown Is Admissible ............. 15

   B.  Plaintiff's Filing of the Defendant's Discovery Responses Is Admissible ......... 18

IV.  DEFENDANTS' INAPPOSITE AUTHORITIES ............................ 20

V.  CONCLUSION ...................................................................... 21

# TABLE OF AUTHORITIES

<u>AUTHORITIES</u>                                                                                                                    <u>Page</u>

*Alexander v. Haley*,
    460 F.Supp. 40 (S.D.N.Y. 1978) ................................................................................................... 3

*Bleistein v. Donaldson Lithographing Co.*,
    188 U.S. 239, 23 S.Ct. 298 300 (1903) ........................................................................................... 3

*Dam v. Kirke La Shelle Co.*,
    175 F. 902 (2d Cir. 1910) ............................................................................................................. 11

*Davidson v. Keenan*,
    740 F.2d 129 (2d Cir. 1984) ........................................................................................................... 2

*Davidson v. Scully*,
    148 F.Supp.2d 249 (S.D.N.Y. May 18, 2001) ................................................................................ 4

*Davis v, United Artists, Inc.*,
    547 F.Supp. 722 (S.D.N.Y. 1982) ................................................................................................ 15

*De Acosta v. Brown*,
    146 F.2d 408 (2d Cir. 1944) ........................................................................................................... 8

*Durham Industries, Inc. v. Tomy Corp.*,
    630 F.2d 905, 909 (2d Cir. 1980) ................................................................................................. 14

*eScholar, LLC v. Otis Educational Systems, Inc.*,
    2005 WL 2977569 (S.D.N.Y.) ..................................................................................................... 14

*Filmvideo Releasing Corp. v. Hastings*,
    509 F.Supp. 60 (S.D.N.Y. 1981) ................................................................................................. 12

*Hogan v. DC Comics*,
    983 F.Supp. 82 (N.D.N.Y.1997) ................................................................................................. 11

*Hollander v. American Cyanamid Company*,
    172 F.3d 192 (2d Cir. 1999) ......................................................................................................... 20

*Imig, Inc. v. Electrolux Home Care Products, Ltd.*,
    2007 WL 900310 (E.D.N.Y. Mar 22, 2007) ............................................................................... 11

*Kroencke v. General Motors Corporation*,
    270 F.Supp.2d 441 (S.D.N.Y. 2003) ............................................................................................. 8

<u>AUTHORITIES</u>                                                                                                              <u>Page</u>

*MCA, Inc. v. Wilson,*
    425 F.Supp. 443 (S.D.N.Y. 1976) ............................................................................ 10

*MacDonald v. Du Maurier,*
    144 F.2d 696 (2d Cir. 1944) ................................................................................... 3

*Matthew Bender &o Co., Inc. v. West Publ., Co.,*
    158 F.3d 674 (2d Cir. 1998) ................................................................................... 11

*Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,*
    290 F.3d 98 (2d Cir. 2002) ...................................................................13, 14, 19, 20

*Novelty Textile Mills, Inc. v. Joan Fabrics, Corp.,*
    558 F.2d 1090 (2d Cir. 1977) ................................................................................. 14

*O.P. Solutions, Inc. v. Intellectual Property Network, Ltd.,*
    1999 WL 47191 (S.D.N.Y.) .................................................................................... 11

*Perkins v. Memorial Sloane-Kettering Cancer Center,*
    2005 WL 2453078 (S.D.N.Y.) ................................................................................ 21

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship.,*
    507 U.S. 380, 113 S.Ct. 1489 (1993) ...................................................................... 4

*Provenz v. Miller,*
    95 F.3d 1376 (9th Cir. 1996) ................................................................................. 2

*Rus, Inc. v. Bay Industries, Inc.,*
    322 F. Supp.2d 302 (S.D.N.Y. 2003) ...................................................................... 20

*Sobhani v. @Radical.Media Inc.,*
    257 F.Supp.2d 1234 (C.D.Cal. 2003) ..................................................................... 12

*Stewart v. Abend,*
    495 U.S. 207, 110 S. Ct. 1750 (1990) ................................................................. 7, 9

*Tin Pan Apple, Inc. v. Miller Brewing Co.,*
    30 U.S.P.Q.2d (BNA) 1791 (S.D.N.Y. 1994) .................................................. 13, 18

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,*
    338 F.3d 127 (2d Cir. 2003) ................................................................................... 12

<u>AUTHORITIES</u>                                                                                          <u>Page</u>

*Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*,
    996 F.2d 1366 (2d Cir. 1993) ....................................................................................... 1, 8

*U.S. v. Bakshinian*,
    65 F. Supp. 2d 1104 (C.D. Cal. 1999) ............................................................................ 20

*Warner Brothers, Inc. v. American Broadcasting Companies*,
    530 F.Supp. 1187 (S.D.N.Y. 1982), aff'd, 720 F.2d 231 (2d Cir. 1983) ..................... 8, 9

*Weissmann v. Freeman*,
    868 F.2d 1313 (2d Cir. 1989) ..................................................................................... 3, 11

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*,
    210 F.Supp.2d 147 (E.D.N.Y. 2002) ............................................................................. 8

<u>RULES/STATUTES</u>

Fed. R. Civ. P. Rule 6(b) ............................................................................................... 3, 4

Fed. R. Civ. P. Rule 6(c) ................................................................................................. 2

Fed. R. Civ. P. 26(a)(1) ............................................................................................... 6, 9

Fed. R. Civ. P. 56(c) ....................................................................................................... 2

Fed. R. Civ. P. 56(e) ....................................................................................................... 2

Fed. R. Evid. 401 – 402 ..................................................................................... 10, 11, 16

Fed. R. Evid. 602 ................................................................................................ 13, 18, 19

Fed. R. Evid. 701 ................................................................................... 13, 14, 17, 18, 19

Fed. R. Evid. 801 ........................................................................................................... 20

Fed. R. Evid. 803 ................................................................................... 10, 13, 18, 20

Fed. R. Evid. 901 ..................................................................................... 16, 17, 18

Fed. R. Evid. 1002 ................................................................................... 12, 19

Fed. R. Evid. 1003 ............................................................................... 12, 16, 19

Fed. R. Evid. 1004 ............................................................................... 12, 16, 19

AUTHORITIES                                                                          Page

TREATISES/ SECONDARY SOURCES

Nimmer on Copyright (2009) § 7.16 ................................................................. 8

Nimmer on Copyright (2009) § 13.03[E][2] ................................................ 11, 12

# I. INTRODUCTION

Defendants' Evidentiary Objections ("Objections") (Dkt. Nos. 121 & 121-2) To Plaintiff's Notices of Filing the Declarations of Natalie Finn and Robert Magdlen (Dkt. No. 116 – 116-6); Declaration of Matthew S. Brown (Dkt. No. 119 – 119-5); and Viacom Inc.'s Responses to Plaintiff's First Request for Admissions (Dkt. No. 118 & 118-2) (collectively "Filings") should be denied as the Plaintiff's Filings are material and relevant to the substantial similarity analysis (specifically in rebuttal to Defendants' new arguments as to sequence in their reply brief (Dkt. No. 84)). Additionally, materials in the Filings dismissed by the Defendants as "promotional material" and "several DVDs" (Dkt. No. 121-2, p. 3) are in fact contained in Defendants' own electronic press kit ("EPK") used to promote *Disturbia* to the media and film critics who authored the so-called "irrelevant" comparisons to *Rear Window's* plot and sequence. "[T]he concept of similarity embraces not only <u>global similarities in structure and sequence</u>, but localized similarity in language." *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.,* 996 F.2d 1366, 1372 (2d Cir. 1993) (emphasis added). It is obvious why Defendants seek to exclude admissions of similarity such as contained in the review by Natalie Finn which quotes *Disturbia* actor Shia LaBeouf as saying "[t]here are similar storylines, similar plot lines, similar elements" which is clearly relevant (Dkt. No. 116-3). Defendants encouraged and promoted such reviews by sending this material to film critics.

Plaintiff previously submitted material and relevant key excerpts of Defendants' marketing material (the EPK) wherein interviewers specifically asked Defendants' director D.J. Caruso and actor Shia LaBeouf about *Rear Window* (see Townsend Decl., Dkt. No. 111, Ex. E-1 which was manually filed with the court), and a proper foundation for the EPK was provided by the Magdlen Declaration (Dkt. No. 116-4).

The submissions in Plaintiff's Filings are material to the summary judgment arguments asserted by Defendants that there is no similarity as to any protectable elements of *Rear Window* and that no elements are protectable because they are not original. Any evidence (especially Defendants' own admissions and the admissions of their agents) that bears upon these issues is material, and there is ample authority for examining more than just "two works" in similar contexts.

## II. <u>PLAINTIFF'S FILINGS MAY BE CONSIDERED</u>

### A.    Affidavits May Be Filed Anytime Before Hearing

This Court has discretion to permit the Filings. Fed. R. Civ. P. 56(e) provides that "the court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits," and Fed. R. Civ. P. 56(c) provides that "an opposing party may serve opposing affidavits before the hearing day." Additionally, Fed. R. Civ. P. 6(c)(2) provides that "any opposing affidavit must be served at least one day before the hearing, unless the court permits service at another time." Plaintiff's Filings have been filed before any scheduled hearing. Defendants' authority is inapposite in that discovery had concluded and affidavits were filed after the close of discovery. *Davidson v. Keenan,* 740 F.2d 129, 130 (2d Cir. 1984). This is not the case here. See also *Provenz v. Miller*, 95 F.3d 1376 (9th Cir. 1996) (holding that the district court erred in not considering plaintiff's supplemental declaration and that an opportunity to respond to new evidence in a reply brief should be afforded). Here, the Court ordered discovery at the pretrial conference (Dkt. No. 88-2). Defendants agreed and discovery proceeded as to material issues relevant to substantial similarity and protectibility of similar elements, with a fact discovery deadline of May 31 2010, and an expert discovery deadline of July 23, 2010. Evidence of actual and intentional copying obtained in discovery is

material to the issue of originality for the purposes of the substantial similarity analysis as "copying without regard to a plaintiff's rights is probative on the issue of the originality of a work." *Weissmann v. Freeman*, 868 F.2d 1313, 1323 (2d Cir. 1989) citing *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 252, 23 S.Ct. 298 300 (1903) (Holmes, J.) ("that works have worth is sufficiently shown by the desire to copy them 'without regard to the plaintiff's rights'") [1]; see also *Alexander v. Haley*, 460 F.Supp. 40, 43 (S.D.N.Y. 1978) (stating "the court was nonetheless reluctant to decide the motion [for summary judgment on substantial similarity grounds] solely on the papers concerning the question of similarity, doubting that this question is necessarily sealed off hermetically from the question of copying on which defendants offered to concede Arguendo"); *cf. MacDonald v. Du Maurier*, 144 F.2d 696, 701 (2d Cir. 1944) (holding that "[i]n an infringement suit coming up in this way we believe that a judge unconsciously tends to make a summary judgment which disregards the concession of copying"). Defendants conceded copying in their reply brief, but such does not seal off the relevance of copying.

### B.    The Court Has Discretion To Permit the Filings

Fed. R. Civ. P. 6(b)(1)(B) provides this Court with discretion to admit additional materials where good cause is present and there is excusable neglect.  Supplemental evidence presented in the Filings regarding similar plot lines rebuts Defendants' new evidence contained in their reply brief[2] (Dkt. No. 84), which attacked Plaintiff's alleged sequence, pattern, and/or combination of allegedly unprotectible elements[3].

### 1.  <u>Good Cause Exists</u>

---

[1] In *Weissman* the court found that copied portions of prior works were protectable as "the statutory scheme [that] expressly protects the selection of subject matter and content from underlying works, as well as the rearrangement of preexisting material taken from those works" a holding on point as to Defendants' argument as to lack of protectability of any of Plaintiff's alleged similarities and/or their combination, pattern, and sequence.  *Weissmann v. Freeman*, 868 F.2d 1313, 1322 (2d Cir. 1989).

[2] Plaintiff has also filed a motion for leave to file a sur-reply (Dkt. No. 109).

[3] This is an issue presented by Defendants in the new chart attached to their reply brief entitled "Plot Structure and Sequence of Events" (Dkt. No. 84-2).

Material evidence was obtained in discovery after summary judgment briefing, but before any discovery deadline. Both parties engaged in discovery and Plaintiff has expended time and money in compliance with Judge Swain's discovery Order to obtain evidence presented in the Filings. Defendants agreed to the discovery schedule and Court ordered discovery after the summary judgment motion and briefs were filed, after the Pre-Trial Statement was filed, and after a pretrial conference was held. Additionally, this Court ordered that any motions to stay discovery be filed with dispositive motions, and Defendants filed no such motion at that time.

2. **Excusable Neglect Exists**

"[E]xcusable neglect under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (internal quotations omitted). The "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489. Relevant circumstances include "'the danger of prejudice' to the non-moving party, 'the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith'." *Davidson v. Scully*, 148 F.Supp.2d 249, 252 (S.D.N.Y., May 18, 2001) citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship.,* 507 U.S. at 392.

a) No Danger of Prejudice to the Defendants

There is no prejudice to the Defendants as the Filings contain evidence: (i) in Defendants' possession (i.e. EPK); (ii) produced by the Defendants in discovery after Plaintiff's summary judgment response (i.e. the admissions); (iii) supporting materials previously filed by the Plaintiff in its opposition papers to the Defendants' summary judgment motion (i.e. the Natalie

Finn review); and/or (iv) publicly available and obtained from Defendants' own distributors (i.e.
the Brown Declaration exhibits).

        b)     There Is No Delay Resulting From Plaintiff's Filings

There is no delay because: (i) discovery is, by Order of this Court, to continue until May
31, 2010 for all non-expert witnesses and until July 23, 2010 for all expert witnesses; (ii) the
final pre-trial conference is not until October 29, 2010; and (iii) no additional briefing is
required, with the exception of the requested sur-reply.[4]

        c)     Defendants Engaged In Discovery

It is reasonable for Defendants to expect that evidence obtained in discovery would be
filed.  Defendants only recently produced documents in response to Plaintiff's discovery requests
on January 14, 2010, and responses to Plaintiff's further discovery requests on February 8, 2010.
Defendants have propounded voluminous discovery upon the Plaintiff, including: depositions of
the Plaintiff's experts for early February 2010, in excess of 209 requests on behalf of all eight
Defendants, including in excess of 223 interrogatories collectively, and Plaintiff answered three
more sets of interrogatories on January 25, 2010.  Defendants have moved for a stay of discovery
(Dkt. No. 102), yet Defendants vigorously pursued discovery and then waited six months from
the pretrial conference before filing their motion asserting "judicial economy" (days before the
first live testimony of a key witness – the *Disturbia* screenwriter). On March 26, 2009,
Defendants filed their summary judgment motion and moving papers, exhibits, and declaration
(Dkt. Nos. 49-52). No motion to stay discovery was filed contemporaneously as required by
Judge Swain's Pretrial Scheduling Order dated August 7, 2009 (Dkt. No. 88-2, p. 2, ¶ 3), or at
any time until, January 11, 2010.  On August 7, 2009, at the Pretrial Conference, this Court
ordered discovery to commence and scheduled the same with the approval and input from

---

[4] Plaintiff has moved the Court for leave to file a sur-reply to new argument and exhibits in Defendants' reply brief.

Defendants' counsel (Pretrial Scheduling Order, Dkt. No. 88-2). Judge Swain stated that she had reviewed the jointly prepared Pretrial Statement (Dkt. No. 87) detailing the legal and factual issues, including the disputed facts, then ordered discovery to proceed according to a schedule agreed to by Defendants. This Court exercised its discretion to order discovery and Rule 26(a)(1) disclosures before resolution of the summary judgment motion:

> The Court: "I've received and reviewed your joint preliminary pretrial statement, for which I thank you. That was very detailed and very helpful to me in getting a sense of where things are and the perspectives on the issues." (Townsend Decl., Ex. A, Hr'g. Tr. at 4:5-8).

> The Court: "All right. Now, your proposed discovery cutoff date of May 31, 2010 is acceptable to the Court. I'll incorporate that in my order. And the expert cutoff of July 23rd I will also incorporate into the scheduling order that I will prepare. You had proposed in your timetable to defer the automatic disclosures until after the resolution of the summary judgment motion. **I am not inclined to put in any stay of discovery**, and so will you tell me what is the earliest feasible date[5] for you all to make those 26(a)(1) disclosures? (emphasis added)
> (Dkt. No. 111, Townsend Decl., Ex. A, Hr'g. Tr. at 7:22 - 8:9).

In the Pretrial Statement, filed after summary judgment briefing, the parties jointly presented legal and factual issues to be determined which are affected by the Declarations (i.e. protectibility and similarity) (Dkt. No. 87, p. 5 ¶¶ 1, 5). Evidence material to these issues, and others asserted in the summary judgment papers, has been discovered and provided in the Filings.

      d)     <u>Plaintiff Acted In Good Faith</u>

Plaintiff has acted in good faith in proceeding with court ordered discovery and in accordance with the local and federal rules and the orders issued by this Court. Pursuant to Rule 45(b)(1) Fed. R. Civ. P. Plaintiff's counsel issued subpoenas for the production of documents and things from non-parties believed to be in possession of relevant documents only after this Court's order to engage in discovery (Dkt. No. 88-2) at the initial pretrial conference. There is

---

[5] The parties agreed upon September 15, 2009.

no delay in Plaintiff's Filings of evidence obtained from non-parties and/or their declarations authenticating the same.

        e)      <u>There Is No Delay As Discovery Continued While The Parties Engaged In Settlement Negotiations</u>

Settlement negotiations began on November 20, 2009 with Judge Francis pursuant to this Court's order and continued with a conference held as recently as March 2010. While the parties engaged in months of settlement discussions, discovery proceeded as ordered and Defendants continued to provide responses such as the admissions that Plaintiff has filed.

### III.  <u>PLAINTIFF'S FILINGS ARE ADMISSABLE AND SHOULD BE CONSIDERED</u>

**A.**      <u>Plaintiff's Filings of the Declarations Are Admissible</u>

Newly discovered comparisons to the *Rear Window* film by Defendants and their agents are relevant to the key issue in the substantial similarities analysis - the originality and protectability of similar elements.  In an effort to prevent the Court's consideration of the compelling evidence of Defendants' indirect copying via the *Rear Window* film, the Defendants have mischaracterized the relevance of the *Rear Window* film and Plaintiff's limited dismissal of Plaintiff's beneficial interest claim. Plaintiff previously asserted a claim based upon beneficial ownership of the *Rear Window* film (copyrighted by Plaintiff's licensee).  A Stipulation of Dismissal (Dkt. No. 61) disposed only of a claim based upon Plaintiff's standing to sue premised upon beneficial ownership of the copyright in the *Rear Window* film. Plaintiff continues to own all elements of the *Rear Window* story as embodied in the *Rear Window* film which states on every display "Based on the Short Story by Cornell Woolrich" whether or not it is a beneficial owner.  *Stewart v. Abend,* 495 U.S. 207, 255, 110 S. Ct. 1750, 1778 (1990). The relevance of the *Rear Window* film is clear as the Filings contain Defendants' admissions of direct copying of the

*Rear Window* film, which is the equivalent of copying the *Rear Window* story. "[I]t is no defense even if the defendant did copy from a third work rather than from the plaintiff if such third work was itself an unauthorized copy of the plaintiff's work." In the words of Judge Learned Hand, "when one copies a copy, he copies the original." *Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.,* 210 F.Supp.2d 147, 165 (E.D.N.Y. 2002) quoting *De Acosta v. Brown*, 146 F.2d 408, 413 (2d Cir. 1944) (L. Hand, J., concurring). "So long as the infringement relates to material common to both the underlying and derivative work, the copyright owner can simply allege violation of the former" (citation omitted). Nimmer on Copyright (2009) § 7.16. Copying the *Rear Window* film is the "<u>functional equivalent</u>" of copying the *Rear Window* story. See *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993) (holding "[i]n the circumstances of this case, we hold that PIL's access to the televised programs [derivative works] serves as the functional equivalent of access to the protectable content of the teleplays [the underlying work].")

The parties expressly stipulated that "Plaintiff reserves the right to argue that the 1954 motion picture *Rear Window* should be considered as evidence in opposition to the Paramount Defendants' pending motion for partial summary judgment (Dkt. No. 49). In particular, Plaintiff expressly reserves the right to argue in this action that the 1942 short story by Cornell Woolrich finds expression in the 1954 motion picture *Rear Window* and is incorporated into that motion picture, and accordingly that the 1954 motion picture can be used as evidence that the 1942 short story has been infringed." (Dkt. No. 61 at pp. 2-3).

Contrary to Defendants' assertion, the Court may consider materials other than the "two works" (i.e. *Disturbia's* interconnection with the relevant *Rear Window* film). *Kroencke v. General Motors Corporation*, 270 F.Supp.2d 441, 443 (S.D.N.Y. 2003) stating "In *Warner*

*Brothers*, the district court determined that in deciding whether a television series infringed copyrighted works relating to the character "Superman," it was appropriate to look at the common interconnections between the various copyrighted films, television series, and comic books relating to the character. But this, of course, was because all these works relating to Superman were expressly connected to one another by common themes, concepts, characters, and plots that formed part of their very meaning, context, and expression." *Id.* at 443 quoting *Warner Brothers, Inc. v. American Broadcasting Companies*, 530 F.Supp. 1187, 1193 (S.D.N.Y. 1982), aff'd, 720 F.2d 231 (2d Cir. 1983). The *Rear Window* film is clearly connected and relevant as the U.S. Supreme Court found that "the [*Rear Window*] story was a substantial portion of the [*Rear Window*] film, which expressly used its unique setting, characters, plot, and sequence of events." *Stewart v. Abend*, 495 U.S. 207, 210 (1990) (emphasis added).

### 1.    The  Declarations of Natalie Finn and Robert Magdlen Are Admissible

Defendants object to Plaintiff's filing sworn executed Declarations (Dkt. No. 116 – 116-6) regarding evidence previously filed as a composite exhibit (Dkt. No. 111, Exs. E1-E11) of true and correct copies of the EPK, promotional DVDs, Press Junket DVDs, and reviews of *Disturbia* [6] with the approved unexecuted declarations of Natalie Finn and Robert Magdlen of which Plaintiff noted that the executed Declarations were in transit (Dkt. No. 111, p. 7 fn 5). Natalie Finn was also disclosed in Plaintiff's witness list on the Rule 26(a)(1) Disclosures (Dkt. No. 90) as possibly having knowledge and information of facts related to similarities between the works, willful copying, and the reactions of the ordinary observer.  Exhibit A to the Finn Declaration (Dkt. No. 116-3) is a true and correct copy of the film critic's review of *Disturbia* in which she quoted actor Shia LaBeouf as saying "[t]here are similar storylines, similar plot lines,

---

[6] Plaintiff received the production of these materials from E! Entertainment Television pursuant to a subpoena issued on film critic Natalie Finn of E! Entertainment Television (Bates nos. UIP0001733- UIP0001758).

similar elements" (Dkt. No. 116-3).

The Magdlen Declaration and respective exhibits (Dkt. Nos. 116-4 - 116-6) consist of evidence provided by Defendants to the Declarants probative of originality, and includes Defendants' marketing materials and EPK promoting *Disturbia*. The EPK (Dkt. No. 116-5) includes a four page index and DVDs containing interviews with *Disturbia* director D.J. Caruso and actor Shia LaBeouf that include relevant and admissible comparisons between *Rear Window* and *Disturbia* (for example, D.J. Caruso: "It's [*Rear Window*] definitely something you want to pay homage"… "Spielberg wanted to pay respect"; and Shia LaBeouf: "Comparing us to *Rear Window*, yes, I understand it…").

Plaintiff's Filings of the Finn Declaration, Magdlen Declaration, and the attached exhibits (Dkt. Nos. 116 – 116-6) are relevant to the pending summary judgment motion pursuant to Fed. R. Evid. 401 - 402 as probative of the spontaneous reactions of ordinary observers to the similarity of elements, and is probative of the originality and protectability of elements of the *Rear Window* story and the *Rear Window* film. In *MCA, Inc. v. Wilson*, 425 F.Supp. 443, 450 (S.D.N.Y. 1976), the court held "[s]ince one of the crucial tests in a copyright infringement case is whether the allegedly infringing work is recognizable by ordinary observation as having been pirated from the copyrighted source, any evidence directly bearing on the observations of the audience…is clearly relevant. *MCA* upheld the admission of evidence as to the public's reaction to the similarities of two songs, reasoning:

> "Defendants urge that such evidence, even if relevant, must be ruled inadmissible on hearsay grounds. We disagree and overrule defendants' objections to the proffered evidence. Federal Rule of Evidence 803(1) excerpts from hearsay present sense impressions. The spontaneous reactions of cast and audience to the playing of Champion are sense impressions of weight; their spontaneity provides their reliability and cures any hearsay infirmities."

Discovery of evidence of Defendants' willful copying is "probative on the issue of the originality of a work." *Weissmann v. Freeman*, 868 F.2d at 1323; see also *Imig, Inc. v. Electrolux Home Care Products, Ltd.,* 2007 WL 900310 (E.D.N.Y., Mar 22, 2007) ("admitted 'substantial similarity' between the two works has probative value as a proxy for direct evidence of actual copying - by negating the possibility that the purported infringer independently developed the challenged work - as well as establishing a threshold level of similarity for purposes of assessing liability" at *16, citing *Hogan v. DC Comics*, 983 F.Supp. 82, 85-87 (N.D.N.Y.1997) (emphasis added). Actor Shia LaBeouf's statement that "[t]here are similar storylines, similar plot lines, similar elements" is clearly relevant (Dkt. No. 116-3).

The definition of relevance in Rule 401 Fed. R. Evid. implies a liberal standard of admissibility. "[C]reativity in selection and arrangement therefore is a function of (i) the total number of options available, (ii) external factors that limit the viability of certain options and render others noncreative, and (iii) prior uses that render certain selections 'garden variety.'" *O.P. Solutions, Inc. v. Intellectual Property Network, Ltd.,* 1999 WL 47191 (S.D.N.Y.) at *10, citing *Matthew Bender &o Co., Inc. v. West Publ., Co.,* 158 F.3d 674, 682-83 (2d Cir. 1998) (citations omitted). Translation of a literary work by screenwriters and directors into a different medium necessarily involves changes. 3 Nimmer on Copyright § 13.03[E][2] citing *Dam v. Kirke La Shelle Co.,* 175 F. 902 (2d Cir. 1910) ("where it was claimed that a play infringed a short story, the court stated well the problem of transformation into a different medium…[b]ut the right given to the author to dramatize his work includes the right to adapt it for representation upon the stage which must necessarily involve changes, additions and omission.  Thus, in this important area, the immediate and spontaneous observations of a person untrained in the special requirements and techniques of the play, the novel, the short story, the motion picture, and most

especially, the computer, may fail to note the similarities that, if analyzed and dissected, would be only too apparent." 3 Nimmer on Copyright § 13.03[E][2] citing *Filmvideo Releasing Corp. v. Hastings*, 509 F.Supp. 60 (S.D.N.Y. 1981)(citations omitted). Defendants' aesthetic decisions in creating *Disturbia* are relevant to the substantial similarity analysis because "[w]here we have described possible infringement in terms of whether two designs have or do not have a substantially similar 'total concept and feel,' we generally have taken care to identify precisely the particular aesthetic decisions - original to the plaintiff and copied by the defendant - that might be thought to make the designs similar in the aggregate." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 134 (2d Cir. 2003). "Relevance" is circumscribed by the definition of derivative works. "A 'derivative work' is a work based upon one or more preexisting works, such as… motion picture version… or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. §101; *Sobhani v. @Radical.Media Inc.,* 257 F.Supp.2d 1234, 1238 (C.D.Cal. 2003). Any evidence bearing on the transformation of *Rear Window* elements into a motion picture version is probative of whether or not *Disturbia* is a derivative work (i.e. substantially similar).

Best Evidence Rule: Defendants do not deny that the EPK and promotional materials filed with the Finn Declaration and Magdlen Declaration (Dkt. Nos. 116 – 116-6) are authentic. The exhibits are true and correct copies received from non-parties in discovery and authenticated by sworn declarations and do not violate Fed. R. Evid. 1002. The originals of the EPKs and marketing materials are either not available or in the Defendants' possession. Fed. R. Evid. 1004(2)(3). Fed. R. Evid. 1003 allows a duplicate to be admitted to the same extent as the original where there is no genuine issue as to authenticity and it is not unfair to admit it.

Not Conclusory: The Finn Declaration, Magdlen Declaration, and their respective

exhibits (Dkt. Nos. 116 – 116-6) are admissible pursuant to Fed. R. Evid. 701 as the opinions and inferences therein are (a) rationally based on the perception of ordinary observers, (b) are helpful to a clear understanding of Defendants' admissions of similarity of elements probative in the substantial similarity analysis between the works, and (c) are not based on scientific, technical or other specialized knowledge.

Foundation: Personal knowledge of the subject matter at issue pursuant to Fed. R. Evid. 602 is supported by sworn declarations.  Defendants' marketing materials were obviously sent to E! Entertainment to advertise and promote *Disturbia*.

Hearsay:  The contested reviews, critiques, and marketing and promotional materials filed with the Finn Declaration and Magdlen Declaration may also be admitted under Fed. R. Evid. 803(3): "A statement of the declarant's then existing state of mind." *Tin Pan Apple, Inc. v. Miller Brewing Co.*, 30 U.S.P.Q.2D 1791 at *21. The contested statements made in the reviews, critiques, and marketing and promotional materials may also be offered under Fed. R. Evid. 803 (1) as a "present sense impression."  Further, Fed. R. Evid. 701 permits the non-expert opinions of lay observers based on factual information they personally perceived where no specialized knowledge is required.  In fact, the perception of the ordinary person is the summary judgment standard.  The personal observations of film critics are "rationally based on the witnesses' own perception," and are helpful. Fed. R. Evid. 701(b).  The occupational experience of film critics may serve as a basis for lay opinion testimony, even though it may be characterized as "specialized" knowledge and therefore a proper basis for expert, rather than lay, opinion testimony. *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 111 (2d Cir. 2002) (opinions concerning significance of individual's having worked on both copyrighted and allegedly infringing computer program and meaning of term "program" in copyright registrations

were based on witness' everyday experience as computer programmer and not on "specialized" knowledge, and were properly admitted as lay opinion under Rule 701(b)).  In *Medforms*, the admitted opinion related to a "central issue of fact with regard to defining the copyrightable works," and "highlights the similarities and differences." *Id.* at 111. Here, the opinions of film critics "highlights the similarities" between the works. The Finn Declaration, Magdlen Declaration, and their respective exhibits (Dkt. No. 116) contain Defendants' admissions, which is an exception to the hearsay rule.

The *Disturbia* film director's and actor's quotes in the exhibits to the Finn Declaration and Magdlen Declaration (Dkt. Nos. 116 – 116-6) reflect artistic choices made by the Defendants which provide evidence of whether or not similar elements are inevitable choices, unavoidable scenes-a-faire (as Defendants assert with no experts or testimony), or whether Plaintiff's experts are correct that these elements are NOT scenes a faire, but the result of creative selection. See *eScholar, LLC v. Otis Educational Systems, Inc.,* 2005 WL 2977569 (S.D.N.Y.) at *16 (the court in denying summary judgment found a disputed question of fact as to whether *eScholar's* decisions regarding the selection, coordination, and arrangements "transcended the obvious"). The creative expression in *Rear Window* and *Disturbia* is demonstrated by discovery of the director's choices as to sequence and interplay of characterization that transcend the obvious. (Magdlen Decl., Dkt. No. 116-4 – 116-6).

The ordinary observer is better described as "the fact-finder's prediction of the probable reaction of a hypothetical 'ordinary observer' (i.e., not a judge's personal reaction).  *Durham Industries, Inc. v. Tomy Corporation,* 630 F.2d 905, 911 (2d Cir. 1980) citing *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090 (2d Cir. 1977). Declarations of film critics' who interviewed Defendants' agents are material and relevant as similarities found by ordinary

observers. Defendants must show that NO reasonable ordinary observer could ever find the works similar, and this evidence is in sharp contrast to the facts noted in Defendants' summary judgment authority, *Davis v. United Artists, Inc.,* 547 F.Supp. 722 (S.D.N.Y. 1982), where the court found "it never would have dawned upon it, as an average observer, that there was the slightest connection between the two works." *Id*. at 725. Here, the immediate public outcry over the obvious connections cannot be ignored, much less Defendants' agents' own observations about similarity.

2.    **The Declaration of Matthew S. Brown Is Admissible**

In their Objections (Dkt. Nos. 121 & 121-2), nowhere do the Defendants dispute the fact that the websites exist which use *Rear Window* to promote *Disturbia*. The Declaration of Matthew S. Brown consists of true and correct copies of the navigation and print outs from Defendants' distributors' websites, Universal Pictures International Germany, GmbH ("UPI"), Taramount Film, and Paramount Home Entertainment, GmbH (Dkt. No. 119 – 119-5). UPI advertised *Disturbia* as "an update of the *Rear Window* motif" (Bates no. UIP0000094); Taramount Films features "Editorial Reviews" advertising *Disturbia* by comparing it to *Rear Window* and stating that *Disturbia* "use[s] *Rear Window* as a jumping off point," (UIP 0000117) and "Customer Reviews" stating "the film [*Disturbia*] has a similar premise as the one in *Rear Window*," "seemingly based on *Rear Window*", and "every critic in America said was *Rear Window* with teens" (UIP 0000119)[7]; and Paramount Home Entertainment Germany, GmbH, features "Editorial Reviews" advertising *Disturbia* by comparing it to *Rear Window* and stating that *Disturbia* contains "some elements of *Rear Window*" (UIP 0000078). This evidences Defendants' intentional copying of similar elements in *Rear Window* which is not a coincidental

---

[7] This exhibit was attached to Plaintiff's requests for admissions propounded on Defendant Viacom, Inc. who admitted on December 23, 2009 that Amazon.com distributed *Disturbia*. (Response to Request for Admission No. 6) (Dkt. No. 118, p. 9).

use of stock scenes, public domain ideas and scenes a faire, but a calculated artistic choice probative of originality. Defendants' Objections to the Brown Declaration note that it was filed months after it was obtained, but Defendants had months to depose the declarant and instead moved to stay all discovery.  Contrary to Defendants' assertion, the translations are coherent. Even if Defendants' definition of "motif" as an unprotectible "central theme" is accepted, this invokes or begs the questions as to Defendants' own admission of actual copying.

Relevance: The Brown Declaration and respective exhibits (Dkt. Nos. 119 – 119-5) are relevant to the pending summary judgment motion pursuant to Fed. R. Evid. 401 - 402 as probative of similarity of elements which are not a coincidental use of stock scenes, public domain ideas and scenes a faire, but calculated artistic choices probative of originality. The Brown Declaration and respective exhibits (Dkt. Nos. 119 – 119-5) are admissible evidence of Defendants' copying and should be considered by the Court.  *Harvey Barnett, Inc. v. Shidler,* 338 F.3d 1125, 1129- 1130, fn. 4 (10th Cir. 2003) (information downloaded from the internet held admissible because "these pieces of evidence were not admitted for the truth of the matter asserted therein, but rather for the very fact of their existence").

Best Evidence Rule: The Brown Declaration and respective exhibits (Dkt. Nos. 119 – 119-5) are true and correct copies of Defendants' distributors' websites authenticated under Rule 901(b)(9) Fed. R. Evid. by the declarant. The originals are either not available or are in Defendants' possession. Fed. R. Evid. 1004(2)(3). Fed. R. Evid. Rule 1003 allows a duplicate to be admitted to the same extent as the original where there is no genuine issue as to authenticity and it is not unfair to admit it.  Again, Defendants do not dispute the fact that the websites exist. *Harvey Barnett, Inc. v. Shidler,* 338 F.3d  at 1129-1130.

Not Conclusory: The Brown Declaration and respective exhibits (Dkt. Nos. 119 – 119-5)

are admissible pursuant to Fed. R. Evid. 701 as any inferences contained therein are (a) rationally based on the perception of the Defendants' own agents and distributors, (b) are helpful to the determination of Defendants' copying of similar elements in *Rear Window* which is not a coincidental use of stock scenes, public domain ideas and scenes a faire, but a calculated artistic choice probative of originality, and (c) are not based on scientific, technical or other specialized knowledge, but as evidence of the fact that marketing materials promoting *Disturbia* as similar to *Rear Window* exist.

Authentication: The Brown Declaration submits true and correct copies of Defendants' distributor's websites as authenticated under Fed. R. Evid. 901(b)(9) given the declarant's use of the Camtasia Studio Screen Recorder. To address Defendants' Objection as to the translation of text quoted in the Brown Declaration exhibit (Dkt. No. 119-3), Plaintiff hereby attaches as Exhibit A, the Declaration of Mirco Jovanovic, a German translator, setting forth the credentials of the translator, and the providing an alternative translation of what Defendants refer to in their Objections as "incoherent translation" (Dkt. No. 121-2, p. 8). The translation is not incoherent. The attached Declaration of Mirco Jovanovic executed under oath provides an alternative translation offered as a true translation pursuant to Fed. R. Evid. 604. Defendants could have provided their own translation of the German text published on their website. Regardless, any differences in the translations would apply to the weight of the evidence, not its admissibility. Furthermore, the opportunity to impeach the coherence of any translation is a matter for discovery, which Defendants moved to stay. Defendants also incorrectly assert that "motifs" are mere unprotectible themes and irrelevant. But, similarity in theme is one of the considerations in the substantial similarity analysis (along with total concept and feel, plot, and sequence of events). See *Flaherty v. Filardi*, 2009 WL 749570 (SDNY) * 6-7. Additionally, Plaintiff has

propounded discovery on Defendants as to the authors and control of the websites, but have received no substantive responses.

Foundation: Personal knowledge of the process or system used to generate the exhibits to the Brown Declaration (Dkt. No. 119-1 – 119-5) pursuant to Fed. R. Evid. 901 (b)(9) is supported by the declarant and does not violate Fed. R. Evid. 602.

Hearsay:  The contested similarity statements made by Defendants' agents contained in the Brown Declaration exhibits (Dkt. 119-1 – 1195-5) may be admitted under Fed. R. Evid. 803(3); See *Tin Pan Apple, Inc. v. Miller Brewing Co.,* 30 U.S.P.Q.2d (BNA) 1791, *21 (S.D.N.Y. 1994) (band manager's statement that fans thought an infringing commercial included the band's music was not hearsay, as "a witness is entitled to describe an out-of-court declarant's statement of a 'then existing state of mind'"). The contested statements may also be offered under Fed. R. Evid. 701.  Defendants' statements as to similarity also constitute admissions, an exception to the hearsay rule, as well as Defendants' own business records which admit Amazon.com is Defendants' distributor. Fed. R. Evid. 803 (7).

## B.  Plaintiff's Filing of the Defendants' Discovery Responses Is Admissible

The Defendant Viacom, Inc.'s Responses to Plaintiff's Request for Admissions was produced by Defendants and contains Defendants' distributor's admissions[8] of similarity, but are marketing statements admitting similarities to *Rear Window* to advertise *Disturbia* and are relevant.

Relevant: The so-called "unspecified third party" who makes *Rear Window* references is Defendants' admitted internet distributor Amazon.com.  As stated, the *Rear Window* film (and Defendants' admissions of copying and similarity) is relevant and pertinent.

---

[8] "Editorial Reviews, Amazon.com… director DJ Caruso (The Salton Sea) and co-writer Carl Ellsworth (Red Eye) use Rear Window as a jumping off point…"

Best Evidence Rule: Viacom's Discovery Responses are a true and correct copy of Defendants' admissions to Plaintiff and do not violate Fed. R. Evid. 1002 as the "original" of this exhibit is already in Defendants' possession or Defendants' agent and distributor Amazon.com. Fed. R. Evid. Rule 1003 allows a duplicate to be admitted to the same extent as the original where there is no genuine issue as to authenticity and it is not unfair to admit it. Additionally, originals are either not available or in Defendants' possession. Fed. R. Evid. 1004(2)(3).

Not Conclusory: Plaintiff does not offer this submission as expert testimony. The lay witnesses' opinions in the internet marketing of *Disturbia* are based upon the witnesses' perception, are helpful to a factual determination on the threshold issue of similarity, are not a legal conclusion as to protectibility of every similar element, and are not based on specialized knowledge. Fed. R. Evid. 701 permits the non-expert opinions of lay observers based on factual information they personally perceived where no specialized knowledge is required, particularly where perception of the ordinary person is the summary judgment standard. The personal observations of Defendants' distributor's editor are "rationally based on the witnesses' own perception," and are helpful. Fed. R. Evid. 701(b). The occupational experience of Amazon.com's editor may serve as a basis for lay opinion testimony, even though it may be characterized as "specialized" knowledge and therefore a proper basis for expert, rather than lay, opinion testimony. *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 111 (2d Cir. 2002). In *Medforms*, the admitted opinion related to a "central issue of fact with regard to defining the copyrightable works," and "highlights the similarities and differences." *Id.* at 111. Here, the opinions in editorial reviews "highlights the similarities" between the works.

Foundation: Defendants' Fed. R. Evid. 602 objection is untenable as Defendants' own admissions provide that they "may testify only about matters of which they have first hand

knowledge," and a jury could reasonably find that the witnesses and their agents (the Amazon.com editors) perceived the events. Defendants' distributor's "Editorial" reviewers have occupational experience and a basis for lay opinion testimony. See *Medforms, Inc. v. Healthcare Management Solutions, Inc.,* 290 F.3d at 111.

Hearsay: Viacom's discovery responses and admissions may be admitted under Fed. R. Evid. 803(7) as a business record, prepared by the Defendants who constitute "a person with knowledge if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity." Defendants' statements constitute admissions, which is an exception to the hearsay rule. Fed. R. Evid. 801(d)(2)(A) provides that a statement of a party made in either an individual or representative capacity is not hearsay when offered as evidence against a party. The statement need not have been against the party's interest at the time made. Nor do party admissions under Fed. R. Evid. 801(d)(2) have to be made on personal knowledge. *U.S. v. Bakshinian,* 65 F. Supp. 2d 1104, 1109 (C.D. Cal. 1999). Statements by Defendants' agents (i.e. D.J. Caruso and Shia LaBeouf comparing *Disturbia* to *Rear Window* similarities or Amazon.com editors) are also admissible admissions made in the scope of their agency and employment under Fed. R. Evid. 801(d)(2)(D).

## IV. DEFENDANTS' INAPPOSITE AUTHORITIES

Lastly, Defendants' authorities are inapposite. In *Hollander v. American Cyanamid Company,* 172 F.3d 192 (2d Cir. 1999), the affidavits in question were not based on personal knowledge and "more resembled adversarial memorandum than a bona fide affidavit." The *Hollander* court did not strike everything and "separately considered" portions which quoted or paraphrased other evidence properly before the court. *Id.* at 198. In *Rus, Inc. v. Bay Industries, Inc.,* 322 F. Supp.2d 302, 307 (S.D.N.Y. 2003) the stricken affidavit was a "sham" that

contradicted prior testimony. Such is not the case here. In *Perkins v. Memorial Sloane-Kettering Cancer Center*, 2005 WL 2453078 (S.D.N.Y.) *14, the court struck portions of an affidavit that contained conclusory factual and legal statements, but not those based on personal knowledge. Plaintiff has not submitted its Filings as unsupported legal conclusions, but evidence (much of which was prepared by Defendants) which demonstrates a factual dispute which should defeat summary judgment.

## **CONCLUSION**

Plaintiff should be permitted an opportunity to file additional evidence obtained in Court-ordered discovery prior to the discovery deadline, or a hearing or ruling on summary judgment, and where such evidence is relevant and material which may circumvent the granting of summary judgment.

Dated: April 2, 2010

Respectfully Submitted,                    *Attorneys for Plaintiff*
                                           *The Sheldon Abend Revocable Trust*

**s/ Clay M. Townsend**
Clay M. Townsend, Esq.                     Steven M. Hayes, Esq.
(FBN: 363375)                              (NYBN: 2926)
Keith R. Mitnik, Esq.                      HANLY, CONROY, BIERSTEIN,
(FBN: 436127)                              SHERIDAN,
MORGAN & MORGAN, P. A.                      FISHER, HAYES, LLP
20 N. Orange Avenue, Suite 1600            112 Madison Avenue
Orlando, FL 32802                          New York, NY 10016-7416
Ph: (407) 418-2075                         Ph: (212) 784-6414
Fx: (407) 425-8171                         Fx: (212) 784-6420
Email: ctownsend@forthepeople.com          Email: shayes@hanlyconroy.com
        kmitnik@forthepeople.com