UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

THE SHELDON ABEND REVOCABLE TRUST,

    Plaintiff,

- vs. -

STEVEN SPIELBERG; DW STUDIOS, LLC (formerly known as DREAMWORKS, LLC); PARAMOUNT PICTURES CORPORATION; VIACOM, INC.; UNITED INTERNATIONAL PICTURES, B.V.; PARAMOUNT HOME ENTERTAINMENT, INC.; DREAMWORKS HOME ENTERTAINMENT; MONTECITO PICTURE COMPANY, LLC; COLD SPRING PICTURES, LLC; UNIVERSAL PICTURES INTERNATIONAL, GmbH, and DOES 1-10,

    Defendants.

------------------------------------------------------------X

CASE NO. 08-CIV-7810 (LTS)(JCF)
ECF Case

**PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

    A. Defendants' New Chart "Plot, Structure and Sequence of Events" .............. 2

    B. "*Disturbia* Beats With Notes in Italic" ........................................................ 3

    C. The Marketing and Promotion of *Disturbia* ............................................... 5

    D. "Paramount Press Information" & "*Disturbia* Trailer Test,"
       Entitled "THE WINDOW" ........................................................................ 8

II. CONCLUSION .................................................................................................. 9

## TABLE OF AUTHORITIES

AUTHORITIES                                                                                         Page

*Alexander v. Haley*,
    460 F.Supp. 40 (S.D.N.Y. 1978) ............................................................................ 1, 2

*Bleistein v. Donaldson Lithographing Co.*,
    188 U.S. 239, 23 S.Ct. 298 300 (1903) ..................................................................... 1

*Boisson v. Banian, Ltd.*,
    273 F.3d 262 (2d Cir. 2001) ....................................................................................... 2

*Clonus Associates v. Dreamworks, LLC*,
    457 F.Supp.2d 432 (S.D.N.Y. 2006) ......................................................................... 1

*Davis v. United Artists, Inc.*,
    547 F.Supp. 722 (S.D.N.Y. 1982) ............................................................................. 6

*Durham Industries, Inc. v. Tomy Corp.*,
    630 F.2d 905, 909 (2d Cir. 1980) .............................................................................. 6

*eScholar, LLC v. Otis Educational Systems, Inc.*,
    2005 WL 2977569 (S.D.N.Y.) ................................................................................... 4

*Feist Publ'ns, Inc. v. Rurual Tel. Serv. Co.*,
    499 U.S. 340, 111 S.Ct. 1282 (1991) ........................................................................ 3

*Hamil Am. Inc. v. GFI*,
    193 F.3d 92 (2d Cir. 1999) ......................................................................................... 2

*Hogan v. DC Comics*,
    983 F.Supp. 82 (N.D.N.Y.1997) ................................................................................ 9

*Horgan v. Macmillan, Inc.*,
    789 F.2d 157 (2d Cir. 1986) ....................................................................................... 4

*Imig, Inc. v. Electrolux Home Care Products, Ltd.*,
    2007 WL 900310 (E.D.N.Y. Mar 22, 2007) ............................................................. 8

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
    71 F.3d 996 (2d Cir. 1995) ..................................................................................... 2, 3

*Kroencke v. General Motors Corporation*,
    270 F.Supp.2d 441 (S.D.N.Y. 2003) ......................................................................... 3

| AUTHORITIES | Page |
|---|---|

*Lewinson v. Henry Holt and Co., LLC,*
    659 F.Supp.2d 547 (S.D.N.Y. 2009) .................................................................................. 2

*Mallery v. NBC Universal, Inc.*,
    2007 WL 4258196 (S.D.N.Y.) ........................................................................................... 1

*MCA, Inc. v. Wilson,*
    425 F.Supp. 443 (S.D.N.Y. 1976) ..................................................................................... 6

*Novelty Textile Mills, Inc. v. Joan Fabrics, Corp.,*
    558 F.2d 1090 (2d Cir. 1977) ............................................................................................ 6

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
    602 F.3d 57 (2d Cir. 2010) ................................................................................................ 2

*Price v. Fox Entertainment Group, Inc.*,
    499 F.Supp.2d 382 (S.D.N.Y. 2007) ................................................................................. 1

*Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.,*
    503 F.Supp. 1137 (S.D.N.Y.1980) .................................................................................... 5

*Stewart v. Abend,*
    495 U.S. 207, 110 S. Ct. 1750 (1990) ....................................................................... 1, 4, 10

*Tin Pan Apple, Inc. v. Miller Brewing Co.,*
    30 U.S.P.Q.2D (BNA) 1791 (S.D.N.Y. 1994) ................................................................ 10

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,*
    338 F.3d 127 (2d Cir. 2003) .............................................................................................. 2

*Twin Peaks Productions, Inc. v. Publications Intern., Ltd.,*
    996 F.2d 1366 (2d Cir. 1993) ............................................................................................ 2

*Walker v. Time Life Films, Inc.*,
    784 F.2d 44 (2d Cir. 1986) ............................................................................................ 1, 5

*Weissmann v. Freeman*,
    868 F.2d 1313 (2d Cir. 1989) ............................................................................................ 1

*Williams v. Crichton*,
    84 F.3d 581 (2d Cir. 1996) ................................................................................................ 1

TREATISES/ SECONDARY SOURCES

3 Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions* (4th ed. 1987) ............. 9

I.  INTRODUCTION

Defendants have conceded access and, for their first time in their reply, <u>actual</u> <u>copying</u> (Dkt. 84, p. 7). This Court should not grant Defendants' summary judgment motion unless Defendants can show that no similar element is protectible or that no reasonable observer could possibly find the works similar. "A district court may determine noninfringement as a matter of law on a motion for summary judgment either when the similarity concerns <u>only</u> noncopyrightable elements of plaintiff's work, or when no <u>reasonable trier of fact could find the works substantially similar</u>." (emphasis added) *Mallery v. NBC Universal, Inc.* 2007 WL 4258196 (S.D.N.Y.) at *2 citing *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986); see also *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996). (Dkt. 65, pg. 3). Considering the new evidence filed after the filing of Plaintiff's opposition papers, the findings of the Supreme Court in *Stewart v. Abend*, 495 U.S. 207, 110 S. Ct. 1750 (1990) (as to Woolrich's originality as to plot and sequence), the Defendants' admissions in their advertising, and the informed observations of film critics and *Disturbia* actors and directors, Defendants cannot meet their burden to show all elements are unprotectible. *Price v. Fox Entertainment Group, Inc.*, 499 F.Supp.2d 382, 385-386 (S.D.N.Y. 2007)*; Clonus Associates v. Dreamworks, LLC,* 457 F.Supp.2d 432, 438-439 (S.D.N.Y. 2006).

Evidence of actual and intentional copying obtained in discovery is probative of originality (and thus protectability) for the purposes of substantial similarity analysis as "copying without regard to a plaintiff's rights is probative on the issue of the originality of a work." *Weissmann v. Freeman*, 868 F.2d 1313, 1323 (2d Cir. 1989) citing *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 252, 23 S.Ct. 298 300 (1903) (Holmes, J.) ("that works have worth is sufficiently shown by the desire to copy them 'without regard to the plaintiff's rights'") [1]; *see also Alexander v.*

---

[1] Defendants' Evidentiary Objections claim *Weissman* is "wholly inapplicable" and "not conducting any substantial similarity test," but the court found that copied portions of prior works were protectable as "the statutory scheme [that] expressly protects the selection of subject matter and content from underlying works, as well as the rearrangement of preexisting material taken from those works," a holding on point as to Defendants' argument as to lack of protectability of any of Plaintiff's alleged similarities and/or their combination, pattern, and sequence.

*Haley*, 460 F.Supp. 40, 43 (S.D.N.Y. 1978). There is new compelling evidence of Defendants' indirect copying via the *Rear Window* film. Copying the *Rear Window* film is the "<u>functional equivalent</u>" of copying the *Rear Window* story. See *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993).

### A. <u>Defendants' New Chart "Plot, Structure and Sequence of Events"</u>

Defendants' Chart (Dkt. 84-2) is legally insufficient to meet their burden for summary judgment. The Chart is merely a list of random dissimilarities and scenes mislabeled as "Plot Structure and Sequence of Events." [2] Secondly, Defendants' Chart does not address the plot and sequence in Plaintiff's Similarity Analysis (Dkt. 67-1), but attacks similarities presented in the expert report of Dr. Thomas Renzi (Dkt. 71-2). An infringer cannot point to dissimilarities to escape liability. *Lewinson v. Henry Holt and Co., LLC,* 659 F.Supp.2d 547, 565 (S.D.N.Y. 2009). The Chart also improperly dissects the works (like individual colors in a Picasso painting). The Second Circuit has consistently and recently confirmed that dissection is inappropriate. See *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) stating:

> No matter which test we apply, however, we have disavowed any notion that "we are required to dissect [the work] into their separate components, and compare only those elements which are in themselves copyrightable." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),* 71 F.3d 996, 1003 (2d Cir. 1995); see *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272-273 (2d Cir. 2001). Instead, we are principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003); see *Boisson*, 273 F.3d at 272; *Knitwaves, Inc.*, 71 F.3d at 1003, as instructed by our "good eyes and common sense," *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 102 (2d Cir. 1999) (alteration omitted). This is so because "the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art - the excerpting, modifying, and arranging of [unprotectible components]…- are considered in relation to one another." *Tufenkian Import/ Export Ventures, Inc.,* 338 F.3d at 134. Thus, in the end, our inquiry necessarily focuses on whether the

---

*Weissmann v. Freeman*, 868 F.2d 1313, 1322 (2d Cir. 1989).
[2] Plaintiff's responses to each element/event are incorporated in Defendants' Chart attached hereto as Exhibit B.

alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Knitwaves, Inc.*, 71 F.3d at 1004 (quoting *Feist Publ'ns, Inc. v. Rurual Tel. Serv. Co.*, 499 U.S. 340, 358, 111 S.Ct. 1282 (1991).

An overlay of key plot elements that comprise the structure of the works shows the sequence of these elements is substantially similar (*see* Dkt. 67-1, Similarity Analysis #s 1-28, 36 as to Plot and Sequence of Events). Plaintiff has briefed that a 13 point pattern may be sufficiently concrete for substantial similarity (i.e., *West Side Story* can infringe *Romeo and Juliet*). (Dkt. 65, pp. 13-15).

**B.   *"Disturbia* Beats [3] With Notes in Italic"**

Defendants' "Disturbia Beats With Notes in Italic" ("Disturbia Beats" Dkt. 111-1) is probative of the originality and protectability of elements of the *Rear Window* story which also appear in the *Rear Window* film (i.e. screenplay revisions and creative notes for *Disturbia* showing the creative choices that made *Disturbia* more "Hitchcockian"[4] and more similar to *Rear Window* than the first screenplay). Discovery of evidence of Defendants' willful copying ("homage", "updating" and "revamping")[5] of pattern and sequence reveals similar creative choices including "play the neighborhood as a character" and the sequence "Kale calls cops. They find nothing. Giles sees Kale spying." This evidence rebuts Defendants' Chart (Dkt. 84-2) and describes the scene strikingly similar to that in the *Rear Window* story and film (Dkt. No. 67-1, Similarity Analysis #16): "It had hit dead center at my bay window."  Contrary to Defendants' assertion that only two works should be considered[6], the Court may consider these materials (i.e. *Disturbia's* interconnection with the relevant *Rear Window* film). See *Kroencke v. General Motors Corporation*, 270 F. Supp. 2d 441, 443 (S.D.N.Y. 2003). The *Rear Window* film is clearly connected and relevant as the U.S. Supreme Court found that "the [*Rear Window*] story was a

---

[3] "Beats" is film industry jargon used to describe the timing or sequence of a film or play referring to events or key plot points that drive the story.
[4] Defendants' screenwriters' description is an obvious reference to *Rear Window*.
[5] Defendants' choice of words included "homage," "updating," and "revamping" in interviews.
[6] It is Defendants who in their motion for summary judgment asked the Court to consider "extraneous" "prior works," yet inconsistently asked the Court to ignore the film work they admit to copying - *Rear Window*.

substantial portion of the [*Rear Window*] film, which expressly used its unique setting, characters, plot, and sequence of events." *Stewart v. Abend*, 495 U.S. 207, 210 (1990) (emphasis added). "Disturbia Beats" (Dkt. 111-1) reveals similar artistic choices made by the Defendants which defeats their scenes-a-faire argument. See *eScholar, LLC v. Otis Educational Systems, Inc.,* 2005 WL 2977569 (S.D.N.Y.) at *16 (the court in denying summary judgment found a disputed question of fact as to whether *eScholar's* decisions regarding the selection, coordination, and arrangement "transcended the obvious"). "The Break-In!" in Parts I through IV of "Disturbia Beats" states "*This set piece needs to be redesigned so that it all plays from Kale's POV*" (exactly like Woolrich) and "*Giles comes home early*," and "*Have more fun with the idea of Kale using his omniscient POV of the house… watching helplessly*" (Dkt. 111-1, #s21-24, CE02568). This POV and scene was compared as substantially similar in Plaintiff's Similarity #20 "Protagonist sends Assistant on dangerous mission at the risk of getting caught, including climbing fences, etc." (Dkt. 67-1, pp. 48-53) and Similarity #21 "Protagonist has a grand stand seat, etc."  (Id., pp. 54-55). Woolrich wrote, "A three alarm fire couldn't have pulled my eyes off those windows." Id. at 54. It is uncanny that Woolrich writes "You've got 25 minutes" and "I was twice as tense" (Id. at 48) whereas the *Disturbia* screenplay reads "[h]e takes 21 minutes" and "[t]hat was intense."  Id. at 49. While Defendants assert that their break-in scenes (obviously copied from the *Rear Window* film) have no equivalent in the *Rear Window* story, the best authority on this issue is *Rear Window* screenwriter John Michael Hayes: "Question: did you attribute to Cornell Woolrich, for example, the scene in which Grace Kelly breaks into Thorwald's apartment?" Hayes: "Yes, indeed." (Dkt. 66-17 p. 63; Dkt. 79, ¶ 27(h), p. 6). Steven Spielberg, at the AFI awards, narrated the similar dramatic *Rear Window* scene that is clearly copied in *Disturbia* (see Ex. B (H 043)). This element is protectable, qualitatively significant, and alone is sufficient (even if a small amount of the original) to defeat summary judgment.  See *Horgan v. McMillan, Inc.,* 789 F.2d 157, 163 (2d Cir.

1986) stating: "Indeed the trial judge in *Roy Export* said "I would think there would be a substantial taking of *Gone With The Wind* if someone just took the burning of Atlanta… ten or fifteen minutes of a three or four hour movie." *Id.* quoting *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.,* 503 F.Supp. 1137, 1145 (S.D.N.Y.1980). "You can't beat that [the assistant's investigation] for suspense" Mr. Spielberg says (Ex. B (H043); Dkt. No. 67-17 AFI DVD). This scene is clearly not a scene-a-faire, like "the familiar figure of the Irish cop" in *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 50 (2d Cir. 1987). Defendants' "Disturbia Beats" is a roadmap to how the *Disturbia* film ultimately combines or tracks important plot points and dramatic scenes, whether "stock" or not, (i.e. where to place the moment when the murderer realizes he is being watched and stares directly back at the protagonist; where to place the "Kale was right moment;" where to place the "Aha!" moment). The assistant investigation scenes (Dkt. 111-1, #s 21-24, "The Break-In!" CE02568) were not inevitable, and *Disturbia* could have been easily made without them, but was not.

### C. The Marketing and Promotion of *Disturbia*

Defendants' distributor's websites, Universal Pictures International Germany, GmbH, Taramount Film, and Paramount Home Entertainment, GmbH (Dkt. 119-3, 4, 5) evidence Defendants' intentional copying of similar elements in *Rear Window* which is not a coincidental use of stock scenes, public domain ideas and scenes a faire, but calculated artistic choices probative of originality. Defendants' distributor advertised *Disturbia* as "an update of the *Rear Window* motif" (UIP0000094); Taramount Films features "Editorial Reviews" advertising *Disturbia* by comparing it to *Rear Window* and stating that *Disturbia* "use[s] *Rear Window* as a jumping off point," (UIP0000117) and "Customer Reviews" stated "the film [*Disturbia*] has a similar premise as the one in *Rear Window*," "seemingly based on *Rear Window*", and "every critic in America

said was *Rear Window* with teens" (UIP0000119)[7]; and Paramount Home Entertainment Germany, GmbH, features "Editorial Reviews" advertising *Disturbia* by comparing it to *Rear Window* and stating that *Disturbia* contains "some elements of *Rear Window*" (UIP0000078). The declarations of film critics (Dkt. 111-4-13) are spontaneous reactions of ordinary observers demonstrating similarity. In *MCA, Inc. v. Wilson,* 425 F.Supp. 443, 450 (S.D.N.Y. 1976), the court held "[s]ince one of the crucial tests in a copyright infringement case is whether the allegedly infringing work is recognizable by ordinary observation as having been pirated from the copyrighted source, any evidence directly bearing on the observations of the audience…is clearly relevant." The ordinary observer is better described as "the fact-finder's prediction of the probable reaction of a hypothetical 'ordinary observer' (i.e., not a judge's personal reaction). *Durham Industries, Inc. v. Tomy Corporation,* 630 F.2d 905, 911 (2d Cir. 1980) citing *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090 (2d Cir. 1977). Defendants must show (but cannot) that NO reasonable ordinary observer could ever find the works similar, and this evidence is in sharp contrast to that in Defendants' summary judgment authority, *Davis v. United Artists, Inc.,* 547 F.Supp. 722 (S.D.N.Y. 1982), where the court found "it never would have dawned upon it, as an average observer, that there was the slightest connection between the two works." *Id*. at 725. Here, the immediate public outcry over the obvious connections cannot be ignored: Joe Morgenstern[8]: "shameless rip off of *Rear Window*." (Dkt. 111-10). Dennis Lim: "[t]he teen thriller *Disturbia*, in which a housebound voyeur stumbles upon a possible murderer across the way, is basically an uncredited remake of the 1954 Alfred Hitchcock classic *Rear Window* (which was in turn based on a 1942 Cornell Woolrich story)." (Dkt. 111-12). "*Disturbia* is so clearly a remake of *Rear Window* that it's appalling to see it released without at least a nod to the people who actually created it.

---

[7] This exhibit was attached to Plaintiff's requests for admissions propounded on Defendant Viacom, Inc. who admitted on December 23, 2009 that Amazon.com distributed *Disturbia*. (Response to Request for Admission No. 6) (Dkt. No. 118, p. 9).
[8] Morgenstern is a Pulitzer Prize winning film critic from the Wall Street Journal.

Perhaps the legal issues are blurred because both *Rear Window* and *Disturbia* have business ties to Paramount Pictures."…"For the record, *Rear Window* and, effectively, *Disturbia*, were written by Cornell Woolrich and John Michael Hayes. Alas, it is Christopher B. Landon and Carl Ellsworth who are credited for the latter film." "…the movie's best moments are those that were stolen." (Dkt. 111-16). Rob Mackie: "[a]ctually and naughtily, there doesn't seem to be any credit for the director, or Cornell Woolrich, who wrote the story he loosely adapted (in which the Grace Kelly character was the protagonist's male servant)." (Dkt. 111-4). Maxamillion Foizey[9]: "[d]on't let the studio spin fool you, this is more-or-less a straight re-make of Alfred Hitchcock's "*Rear Window*"… There's not even a story credit for Cornell Woolrich…" (Dkt. 111-5). Molly Woulfe quoting Shia LaBeouf: "we asked everyone 25 and under, '[h]ave you ever seen or heard of 'Rear Window?' And 99.9 percent of people had not heard of 'Rear Window.' Not even seen it, but not heard of it. So that's a pretty good figure for us!" and "[t]he creation of this movie came from a conversation between (director) Caruso and (Steven) Spielberg. Caruso wanted to skew toward a younger audience and Spielberg wanted to revamp 'Rear Window.'" (Dkt. 111-6). Mark Dujsik: "…in no way does *Disturbi*a acknowledge the fact that it is clearly, indisputably inspired by *Rear Window*… no credit is given to Hitchcock, screenwriter John Michael Hayes, or even Cornell Woolrich, who wrote the short story on which *Rear Window* was based." (Dkt. 111-9). Sheila Roberts quoting DJ Caruso: "I got a call from Steven [Spielberg] at DreamWorks, 'we'd like you to do this movie.'… Steven said, 'Look, make it what you want to make it'…. I said, 'I'd like to take… Rear Window… and make this that movie.' And he went 'Great. Go do it.'" (Dkt. 111-13, p. 6).

Defendants' Electronic Press Kit (EPK) DVDs and Press Junket DVDs (Dkt. 111-15 - 25) included reviews of *Disturbia* and promotional interviews distributed by DreamWorks Pictures to

---

[9] Foizey has sworn that in preparing for his interview with *Disturbia* actor Shia LaBeouf he researched the *Rear Window* story by Cornell Woolrich and the *Rear Window* film by Alfred Hitchcock.

the media: (a) <u>D.J. Caruso</u>: "My phone rang and it was Steven Spielberg and he said he had a script for me to read." (Ex. B (C036)): Interviewer: "You know you're sitting there watching the movie (*Disturbia*) you can't help but think of *Rear Window* – the Alfred Hitchcock classic." D.J. Caruso (laughing nervously): "What movie is that?" Interviewer: "Exactly right. Did you think of *Rear Window* when you were putting this thing together?" D.J. Caruso: "Yeah. No. No definitely. I mean it's definitely something you want to pay homage to and sort of take the idea or voyeuristic experience and sort of make it contemporary and update it. So, you know we didn't want to remake *Rear Window* we just sort of wanted to sort of pay homage and when Spielberg called with the idea said "Look this thing is a great idea that I think the young audience is gonna respond to, we don't want to step on Hitchcock's toes, we just want to pay respect." So then you kind of embrace it and you make it work for you." (Ex. B (E040)). "That's what Hitchcock did. The best is what you don't see is what's scarier… other filmmakers might have made a different choice." (Ex. B (F041)); (b) <u>Shia LaBeouf</u>: Interviewer: "It's like a *Rear Window* – a Hitchcock kind of suspense." Shia LaBeouf: "Comparing us to *Rear Window*, yes, I understand it." (Ex. B (G042)); (c) <u>Selected Feature Clips</u> provided to media: "I'm not a stalker. These are just simple observations – natural side effects of chronic boredom" (Ex. B (A029)), obviously a key plot point used to advertise. (See Dkt. 67-1, #3). "When a teenage boy takes to spying on his neighbors, chronic boredom turns into a dangerous game" (Ex. B. (B030)). The visual here is of the antagonist's fixed stare clearly lifted from the *Rear Window* story and the *Rear Window* film. Id. at #16. "Are you spying on the neighbors, Kale?... Actually he is and he's got this neighbor who may in point of fact be a cold-blooded killer" (Ex. B (D038)) is similar. Id. at #8. "Stalking" is a commonly used word throughout the works and theme. Id. at #29; (d) <u>Shia LaBeouf admitted similarity</u>: "[t]here are similar storylines, similar plot lines, similar elements." (Dkt. No. 116-3). See *Imig, Inc. v. Electrolux Home Care Products, Ltd.*, 2007 WL 900310 (E.D.N.Y., Mar 22, 2007) ("admitted

'substantial similarity' between the two works has probative value as a proxy for direct evidence of actual copying-by negating the possibility that the purported infringer independently developed the challenged work- <u>as well as establishing a threshold level of similarity for purposes of assessing liability</u>" at *16, citing *Hogan v. DC Comics,* 983 F.Supp. 82, 85-87 (N.D.N.Y.1997) (emphasis added).

**D. <u>"Paramount Press Information" & "*Disturbia* Trailer Test," Entitled "THE WINDOW"</u>**

"Paramount Press Information" references the *Rear Window* film: "there are some great ones that are actually about people observing, looking at things…Hitchcock's *Rear Window*…" (Dkt. 111-26, DEF 003495), and "moviegoers gain a good grasp of the story premise about LaBeouf's character witnessing a murder committed by his neighbor while he is under house arrest and secretly watching the neighbors. It is also communicated to some that no one believes his discovery and that he and his friends then decide to investigate the murder by themselves." (DEF 001596). The list of *Disturbia's* "Best and Least Liked Scenes," #10 from "<u>The Window V.8</u>" trailer are similar in expression and sequence and track with those in the *Rear Window* story and the *Rear Window* film (corresponding elements in Plaintiff's Similarity Analysis "Synopsis of Substantial Similar Sequence of Events" (Dkt. 67-1, pp. 80-81, ¶ 36). The shocking irony of Defendants' trailer title for *Disturbia*, "<u>The Window,</u>" is that this is the same title of a famous film released in 1947 based upon another Cornell Woolrich work, *The Boy Cried Murder*, written in 1947, which was directed by one of Alfred Hitchcock's cinematographers, Ted Tetzlaff.

**II. CONCLUSION**

The *Rear Window* film is relevant and indispensible. This issue has been extensively briefed by Plaintiff (see Dkts. 105, pp. 14-18; 109, pp. 3-4; 117, pp. 5-7). Defendants "copied the copy" and cannot escape liability while admitting copying the *Rear Window* film. The threshold issue in copyright infringement cases is originality not copying… it is a question of fact for the

jury.[10] This fact question is withheld from the jury only if the accused infringer persuades the trial court that, as a matter of law, plaintiff's work which defendant allegedly copied was not original and hence not protectable. *Tin Pan Apple, Inc. v. Miller Brewing Co.,* 30 U.S.P.Q.2D (BNA) 1791, 1793-94 (S.D.N.Y. 1994). Material issues of fact exist pertaining to the originality and protectability of clearly (and admittedly) similar sequence. The new evidence is appropriately considered on this issue – does Woolrich's story contain at least one similar qualitatively original or unique element or sequence of elements which is protectable? The Supreme Court has already found Woolrich's plot, sequence, and other elements to be original and unique (see *Stewart v. Abend*, 495 U.S. at 210). Defendants' advertising, admissions, and the sheer quantity of reputable reviews easily demonstrate that Defendants cannot succeed in meeting their burden to show that no reasonable observer could possibly find the works similar. Plaintiff respectfully submits that a jury should decide the fate of the iconic *Rear Window*'s protectability. Defendants should not escape liability for infringement by justifying their illicit copying as "homage."

Dated: May 26, 2010

Respectfully Submitted,

*Attorneys for Plaintiff*
*The Sheldon Abend Revocable Trust*

**s/ Clay M. Townsend**

Clay M. Townsend, Esq.
(FBN: 363375)
Keith R. Mitnik, Esq.
(FBN: 436127)
MORGAN & MORGAN, P. A.
20 N. Orange Avenue, Suite 1600
Orlando, FL 32802
Ph: (407) 418-2075
Fx: (407) 425-8171
Email: ctownsend@forthepeople.com
       kmitnik@forthepeople.com

Steven M. Hayes, Esq.
(NYBN: 2926)
HANLY, CONROY, BIERSTEIN,
SHERIDAN,
FISHER, HAYES, LLP
112 Madison Avenue
New York, NY 10016-7416
Ph: (212) 784-6414
Fx: (212) 784-6420
Email: shayes@hanlyconroy.com

---

[10] See the jury charge appearing in 3 Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions (4th ed. 1987) at Section 99.04, p. 808.